## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; CENGAGE LEARNING, INC.; ELSEVIER INC.; ELSEVIER B.V.; MCGRAW HILL LLC; and PEARSON EDUCATION, INC., | Case No. |
| Plaintiffs, | COMPLAINT AND JURY DEMAND |
| v. | |
| SHOPIFY INC., | |
| Defendant. | |

Plaintiffs Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"), Cengage Learning, Inc. ("Cengage"), Elsevier Inc. ("Elsevier"), McGraw Hill LLC ("McGraw Hill"), and Pearson Education, Inc. ("Pearson") (collectively, the "Publishers"), and Macmillan Holdings, LLC and Elsevier B.V. (collectively, with the Publishers, "Plaintiffs"), by and through their undersigned counsel, hereby file their Complaint against Shopify Inc. ("Shopify"), asserting claims of contributory and vicarious copyright infringement and contributory trademark infringement. Plaintiffs allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters.

### INTRODUCTION

1. The Publishers are leading educational publishers committed to creating, publishing, marketing, and selling high-quality copyrighted works that advance learning. Shopify is among the world's largest providers of "one-stop" e-commerce solutions. Shopify provides its

subscribers—including known infringers—with a complete online business toolbox that includes, among other things, storefront building, webhosting, product fulfillment, marketing, customer support, business expertise, business analytics, capital investment, and payment processing.

2.      Shopify plays host, enabler, and protector to a world of digital textbook pirates. Shopify has received detailed notices virtually every week for years identifying specific Shopify subscribers using Shopify's services for piracy.  Yet, Shopify routinely ignores illegal activity by the identified subscribers, putting its corporate finances over its legal obligations.  Shopify knows that it is assisting subscribers to infringe, but it does not care.

3.      Shopify's President describes Shopify's one-strike policy towards infringement as follows: "If we see a store that is infringing on any type of intellectual property, either on a trademark or a copyright or anything of that nature, it's gone.  We don't allow it."  Nilay Patel, *How Shopify's Network of Sellers Can Take On Amazon*, The Verge (May 4, 2021, 9:30 AM), https://www.theverge.com/22417825/shopify-harley-finkelstein-interview-online-shopping-amazon-apple.  Unfortunately, Shopify's actions do not match its words.  Shopify does not enforce its own policies, merely giving lip service to the protection of others' intellectual property rights while profiting from the infringement of those rights.

4.      When Shopify learns of specific instances of copyright and trademark infringement, Shopify shirks its legal obligations by continuing to assist repeat infringers in their infringement.  Shopify not only provides its repeat-infringer subscribers with the tools they need to run their illegal businesses, but also provides them with anonymity, a false veneer of legitimacy, and a safe haven from which to break the law.  When Shopify becomes aware that one of its subscribers is using its services to infringe, Shopify must do something about it.  Blindly ignoring piracy in order to make more money, as Shopify does here, is not a lawful option.

5.      Shopify has a Trust and Security team that is charged with the responsibility of monitoring Shopify stores (i.e., websites) for compliance with its Acceptable Use Policy, which expressly prohibits copyright and trademark infringement.  *See* Shopify Acceptable Use Policy ¶ 6 (Apr. 15, 2020), https://www.shopify.com/legal/aup ("Acceptable Use Policy").  Shopify also claims to use artificial intelligence ("AI") to monitor Shopify stores.  Notwithstanding Shopify's policies and claimed practices, Shopify routinely allows subscribers to sell infringing goods, even after Shopify knows that they are engaged in illegal behavior.

6.      Beginning in 2017, and continuing over the successive years, Plaintiffs and/or their authorized agents have regularly and repeatedly sent infringement notices to Shopify identifying specific subscribers engaged in piracy ("Pirate Subscribers") by store name and store URL ("Notices").  These Notices identify representative examples of specific infringing works sold on the Pirate Subscribers' websites ("Pirate Websites") by providing the URL of the product pages advertising and selling such infringing works.  The Notices also make clear that the Pirate Subscribers are not authorized to sell digital copies of the Publishers' works on Shopify.  The Notices identify hundreds of Pirate Websites and many thousands of specific instances of copyright and trademark infringement on Shopify.  Yet, despite receiving Notice after Notice, Shopify has continued to assist known Pirate Subscribers to infringe.

7.      Without court intervention, Shopify will continue to facilitate and assist in the infringement of Plaintiffs' copyright and trademark rights as complained of herein, causing significant financial damage and reputational harm.  Accordingly, to address and remedy Shopify's persistent and pervasive willful infringement, Plaintiffs bring this action.

## JURISDICTION AND VENUE

8.      The claims herein arise under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, as amended, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as amended.  The Court thus has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121(a).

9.      The Court has specific personal jurisdiction over Shopify pursuant to Va. Code Ann. § 8.01-328.1.  Shopify has engaged in substantial activities purposefully directed at the Commonwealth of Virginia, and the claims asserted herein arise from and relate to those extensive activities and Shopify's contacts therefrom.  Shopify engages in a persistent course of conduct and derives substantial revenue from services rendered and products used in Virginia.  Shopify regularly transacts and solicits business, knowingly and intentionally markets, and contracts to supply and supplies its services and products in Virginia, including services and products that relate to the infringement complained of herein.  Shopify has caused tortious injury to Plaintiffs by acts of copyright and trademark infringement occurring within Virginia.

10.     In particular, and without limitation, Shopify operates and/or controls computer servers in Ashburn, Virginia to, among other things, store and deliver infringing digital copies of the Publishers' textbooks, test banks, and/or ISMs, which often bear infringing copies of trademarks, to the consuming public.  Accordingly, the infringing activities complained of herein occur in part through Shopify-controlled servers located in Virginia.  Further, the Pirate Websites, which exist and operate solely on Shopify's platform, and which Shopify monitors and controls, are highly interactive, continuously accessible to Virginia customers, and sell infringing digital content to Virginia consumers, among others.  When that infringing content is sold on the Pirate Websites, it is often delivered from computers in Virginia.  Plaintiffs' injuries complained of herein arise out of these interactions.

11.     Alternatively, the Court has personal jurisdiction over Shopify pursuant to Federal Rule of Civil Procedure 4(k)(2)—the so-called "federal long-arm statute."  The copyright and trademark infringement claims herein arise under federal law.  Shopify has extensive contacts with the United States as a whole.  Shopify overwhelmingly directs its business into the United States, including with respect to the matters giving rise to this lawsuit.  For instance, and without limitation:

a.   Shopify is a publicly traded company on the New York Stock Exchange, trading under the symbol "SHOP" since 2015.

b.   Shopify's founder and CEO has acknowledged in the press that "Shopify was a company initially [built] for American customers."  Sriram Krishnan, *Tobi Lütke*, The Observer Effect (Dec. 16, 2020), https://www.theobservereffect.org/tobi.html.

c.   Shopify maintains a substantial U.S. workforce and regularly hires employees in the United States, including those with responsibility for Shopify's handling of, and response to, infringement notices, as well as members of Shopify's Trust and Security team.  While Shopify has announced that its workforce will work remotely on a permanent basis with certain exceptions, it has employees in multiple states across the United States, including Arizona, California, Michigan, New York, Pennsylvania, and Virginia.

d.   Shopify's in-house legal counsel includes numerous U.S. lawyers who are active members of various bars in the United States.  Shopify's newly appointed General Counsel is also located in Washington, D.C.

e.   Shopify lobbies the U.S. Congress, including with respect to the sale of counterfeit goods online, and has retained lobbyists in the United States for that purpose.

f.  Shopify uses data centers—including for hosting and distributing infringing content—in the United States, including in Virginia.

g.  According to Shopify's securities filings, at the end of 2020, half of Shopify's subscriber base was in the United States.  *See* Shopify Inc., S.E.C. Form 40-F ex. 1.1, at 11 (Feb. 17, 2021), https://d18rn0p25nwr6d.cloudfront.net/_CIK-0001594805/c3898d01-52b6-4d9b-87dc-21744e8ba90d.pdf.  As set forth herein, Shopify's subscriber base includes subscribers who use Shopify services to operate pirate stores and sell infringing content.  No other country could claim a double-digit percentage of Shopify's subscriber base, including Canada.  *See id.*  Similarly, Shopify obtained 68.4% and 66.7% of its revenues from the United States in 2019 and 2020, respectively.  *See id.*, ex. 1.2, at 41.  The countries or geographic locations outside of the United States with the next highest percentages of revenues in 2019 and 2020 were responsible for 7.7% and 8.7%, respectively.  *See id.*

h.  Shopify has commercial relationships with a variety of U.S. companies that relate to the operation of the Pirate Websites, including Amazon Web Services, Google, Microsoft, Stripe, and others.

i.  Shopify also partners with Facebook, Instagram, and other social media outlets to enable Shopify subscribers in the United States, including Pirate Subscribers, to create and run marketing campaigns.

j.  Shopify has at least one physical location in the United States where Shopify subscribers, including the operators of Pirate Websites, can, among other things, make in-person appointments for customer support.

k.   Shopify owns at least three subsidiaries incorporated in the United States: Shopify LLC, Shopify Holdings (USA) Inc., and Shopify Payments (USA) Inc.   In particular, Shopify Payments (USA) Inc. handles payment processing for U.S. subscribers, including pirates, who are located in the United States and use Shopify Payments.

12.   The injuries suffered by each of the Plaintiffs arise out of Shopify's contacts with the United States, which include Shopify distributing infringing copies of the Publishers' textbooks, test banks, and ISMs, including the Works, to consumers throughout the United States, and promoting, maintaining, monitoring, and supporting websites on Shopify, including Pirate Websites, that sell such content and use in commerce infringing copies of the Marks.   Plaintiffs suffer the effects of this infringement across the United States.

13.   Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the acts of infringement and other events and omissions complained of herein occur, or have occurred, in this District, and this is a District in which Shopify may be found.

## THE PARTIES

14.   Macmillan Learning is a New York limited liability company with its principal place of business in New York, New York.   Macmillan Learning is a wholly owned subsidiary of Macmillan Holdings, LLC.   Macmillan Learning asserts copyright claims herein.

15.   Macmillan Holdings, LLC is a New York limited liability company with its principal place of business in New York, New York.   Macmillan Holdings, LLC is a holding company and the parent company of Macmillan Learning.   Macmillan Holdings, LLC asserts a trademark claim herein.

16.     Cengage is a Delaware corporation with its principal place of business in Boston, Massachusetts.  Cengage asserts copyright and trademark claims herein.

17.     Elsevier is a Delaware corporation with its principal place of business in New York, New York.  Elsevier asserts copyright and trademark claims herein.

18.     Elsevier B.V. is a corporation organized under the laws of the Netherlands with its registered office in Amsterdam.  Elsevier and Elsevier B.V. are affiliated companies that share a parent company.  Elsevier B.V. asserts a trademark infringement claim herein.

19.     McGraw Hill is a Delaware limited liability company with its principal place of business in New York, New York.  McGraw Hill asserts copyright and trademark claims herein.

20.     Pearson is a Delaware corporation with its principal place of business in Hoboken, New Jersey.  Pearson asserts copyright and trademark claims herein.

21.     Shopify is a Canadian corporation, with its headquarters in Ottawa, Canada.

### PLAINTIFFS' COPYRIGHTS AND TRADEMARKS AND THEIR BUSINESSES

22.     The Publishers work with authors who are experts in their fields to create and publish valuable, highly regarded, and quality educational textbooks.  The Publishers and their respective authors engage in an ongoing creative process, collaborating closely to select, plan, create, write, edit, organize, and arrange the content within each of their textbooks.  The Publishers and their respective authors also actively review and update the content based on their expertise, research, and analysis, and the needs of the scholastic community.

23.     The Publishers' publications include physical and digital textbooks that are widely available for sale in the United States.  The Publishers' textbooks are sold through direct sales channels and via third-party distributors and stores, including through online sales.  The Publishers' textbooks are among the most popular and widely used titles in their fields.  The

Publishers invest significant time and monies into publishing their textbooks, including in content creation and in the support, advertisement, marketing, and promotion of their textbooks in the United States.  The Publishers' textbooks contain copyright notice pages pursuant to 17 U.S.C. § 401.

24.     The Publishers also publish test banks and instructors' solutions manuals ("ISMs"), which are important supplemental materials to textbooks.  Test banks are sets of questions (and, in some instances, corresponding answers) to be used by the professor or instructor who assigned the textbook for his or her course.  ISMs are guides that provide answers and solutions to questions contained within the textbook.  Professors and instructors use these supplemental materials to create lesson plans, homework assignments, and exams, and for grading purposes.  Accordingly, to preserve their pedagogical value, these supplemental materials are not generally distributed to the public.

25.     Test banks and ISMs are tailored to the pedagogical approach of the textbooks to which they correspond.  Test banks and ISMs contain additional protected expression beyond what is in the textbook.  Myriad creative efforts go into creating and selecting questions, whether for inclusion in the textbook or its corresponding test bank, and into creating the answers and solutions in the test banks and ISMs.  Countless decisions are made concerning wording, examples, approach, depth, and other substantive details.

26.     The Publishers' works are published under trademarks that are well-known and highly respected.  The trademarks and the goodwill of the businesses associated with them have become associated in the public mind with Plaintiffs' rich histories and reputations for quality in the publishing industry.  Plaintiffs and their predecessors have invested decades of effort in building a trusted reputation in the publishing industry, which consumers associate with the

Publishers, their works, and the trademarks under which these works are published and educational products and services are provided.

27.     The Publishers are the copyright owners of, or the owners of exclusive rights under copyright in, the works or derivative works, consisting of textbooks, test banks, and ISMs, described in Exhibit A hereto (the "Works").  The Works are registered with the U.S. Copyright Office.  The thousands of Works described in Exhibit A constitute a non-exhaustive, representative list of textbooks, test banks, and ISMs infringed because of Shopify's infringing activities complained of herein.

28.     Macmillan Holdings, LLC, Cengage, Elsevier, Elsevier B.V., McGraw Hill, and Pearson (the "Trademark Plaintiffs") are the registrants under 15 U.S.C. § 1127 of the trademarks and service marks described in Exhibit B (the "Marks").  The Marks are duly registered on the Principal Register of the U.S. Patent and Trademark Office.  The Marks are distinctive indications of origin and may also be incontestable under 15 U.S.C. § 1065.  The Marks described in Exhibit B constitute a non-exhaustive list of trademarks infringed because of Shopify's infringing activities complained of herein.

## SHOPIFY AND ITS INFRINGING ACTIVITIES

29.     Shopify is a paid subscription ecommerce service that enables and assists individuals and companies to set up online stores to sell products.  Shopify acts as a "one-stop shop" for online sellers, including the Pirate Subscribers, to run their businesses.  Shopify provides these sellers with an online storefront, a payment processor, a front and back office, a customer service team, and a marketing headquarters, all in one.

30.     Shopify advertises that it is the "platform commerce is built on."  Shopify, https://www.shopify.com (last visited Nov. 30, 2021).  Shopify tells sellers that it "gives [them]

everything [they] need to run a successful online store"; they can take advantage of Shopify's free trial and "[s]tart an online retail business today" (for as low as "$1 a day"); and, with Shopify, they can "[c]reate an ecommerce website backed by powerful tools that help [them] find customers, drive sales, and manage [their] day-to-day." *Id.*; Shopify Tour, https://www.shopify.com/tour (last visited Nov. 30, 2021).

31.     Shopify provides its subscribers, including the Pirate Subscribers, with a comprehensive platform to manage their businesses and customers across multiple sales channels, which enables them to manage products and inventory, process orders and payments, fulfill and deliver orders, connect with customers, and leverage analytics and reporting, all from one integrated system.

32.     For instance, many Shopify subscribers, including Pirate Subscribers, use Shopify's website-building tools and templates to create their online stores, and use Shopify's content management system to develop and display the product pages that advertise and describe their products, including infringing copies of the Works.  Shopify assists subscribers in finding and selling to customers by providing a marketing platform with search engine optimization, online advertising assistance, analytics, reporting, and other tools.  Shopify provides its merchants with a system for effectuating and processing orders, including by storing and sending digital files and, in the case of Pirate Subscribers, infringing digital files.  In doing this, Shopify often reproduces and distributes infringing copies of the Works.  Shopify also provides payment processing services, either through Shopify's system (Shopify Payments) or a variety of third-party payment gateways. In addition, Shopify offers extensive customer support to its subscribers, including via one-on-one communications.

33.     Shopify also serves as the webhost for the Pirate Websites.  Indeed, "[u]nlimited web hosting, worldwide" is included with every Shopify plan.  Shopify Website Hosting, https://www.shopify.com/website/hosting (last visited Nov. 30, 2021).  Shopify tells sellers that, on its platform, there is "[n]othing to set up":  "We set up and host your ecommerce website and also take care of all software upgrades."  Shopify Ecommerce Hosting, https://www.shopify.com/tour/ecommerce-hosting (last visited Nov. 30, 2021).  Shopify provides servers that ensure its sellers' websites are up and running with administrator, dashboard, content delivery, reporting, checkout, and other functions.

34.     Shopify actively encourages sellers to sell ebooks on Shopify.  Shopify provides specific systems and applications to its subscribers for selling digital products, including digital copies of textbooks.  Shopify promotes "[e]ducational products like ebooks" as one of the most "in demand" types of products to sell on its platform.  Braveen Kumar, *The Most Profitable Digital Products to Sell in 2021 (and How to Promote Them)*, Shopify Blog (Feb. 17, 2021), https://www.shopify.com/blog/digital-products#2.  Shopify also markets to its subscribers that, with digital products, "[t]here's no limit to how many products you can sell.  No inventory.  No manufacturers.  No shipping or logistics.  Just market the products.  When a customer purchases a digital product, it's delivered instantly, without your help."  Michael Keenan, *Want to Make Money Online? Here Are 25 Easy Ways to Earn Money from Home*, Shopify Blog (Oct. 8, 2021), https://www.shopify.com/blog/make-money-online.  Yet, with respect to the Publishers and others, none of the Pirate Subscribers are authorized to copy or sell the digital copies of the textbooks, test banks, and ISMs that they are selling on Shopify.  The Publishers have repeatedly given Shopify explicit notice of this fact.

35.     Shopify assists the sale of "ebooks" that are PDF copies of the Publishers' textbooks, including copies that are missing important features of the legitimate digital textbooks, such as display and accessibility options.  Further, although the Publishers often use Digital Rights Management or other digital security to protect their works, the Pirate Subscribers unlawfully circumvent these protections and, using Shopify, market and sell the infringing files with no way to prevent their downstream dissemination.

36.     Shopify claims that it "supports the protection of intellectual property and asks Shopify merchants to do the same."   Shopify Terms of Service ¶ 20 (Oct. 12, 2021), https://www.shopify.com/legal/terms ("Terms of Service").  Shopify also claims that upon receipt of notices of infringement, "we may remove or disable access to the [m]aterials."  *Id.*

37.     However, in practice, Shopify's response to notices of infringement shows that Shopify does not follow its own policies or the law.  Shopify routinely fails to act on notices and terminate Pirate Subscribers and instead routinely continues to provide its comprehensive services to known repeat infringers.  Shopify assists and profits from the online sale of infringing copies of the Works by the Pirate Subscribers, who it knows are using Shopify's services for infringement. Shopify furthers its business model—and bottom line—by enabling known repeat infringers in their continued infringement.

### *Pirate Subscribers on Shopify*

38.     Shopify assists, supports, and profits from numerous illegal websites on its platform that reproduce and sell infringing digital copies of the Works, many of which bear identical or substantially indistinguishable reproductions of the Marks.  The objective of the Pirate Websites is to make money from infringement.  The owners of those websites are not authorized to reproduce or distribute digital copies of the Publishers' textbooks, test banks, or ISMs, including

the Works, nor are they authorized to use the Marks in any way.  Nonetheless, as anyone, including Shopify, can see from glancing at the Pirate Websites, such websites not only sell pirated digital copies of the Publishers' textbooks, test banks, and ISMs—they are devoted to infringing conduct.

39.     The Pirate Websites, which depend on Shopify to operate and exist in whole or in part on Shopify's computers or web servers, are highly interactive.  Purchasers or prospective purchasers can interact with the Pirate Websites, including to communicate with the sellers via Shopify's tools, and, at the touch of a few keystrokes, purchase infringing copies of the Works. The Pirate Websites receive a significant number of visitors from consumers and prospective consumers located throughout the United States, including in the Commonwealth of Virginia.

40.     Shopify tools enable the creation and display of the product pages on the Pirate Websites, which are designed to entice customers to buy the infringing products.  The product pages typically include images of the covers of the Publishers' textbooks, which often display unauthorized reproductions of the Marks, and which are used to suggest, falsely, that the infringing products come from or are authorized or approved by Plaintiffs.  The Pirate Subscribers use Shopify tools to upload these images to their stores, and, as Shopify explains, there is "[n]o need to worry about resizing or optimization - we do that for you."  Shopify Ecommerce Website, https://www.shopify.com/tour/ecommerce-website (last visited Nov. 30, 2021).  In addition, the product pages often specifically tout that the pirated digital copies of the Works can be downloaded or will be delivered instantly and that the files are compatible with any e-reader, tablet, or similar device.

41.     The Pirate Subscribers also use Shopify tools to upload the infringing copies of the Works to the Pirate Websites and do so via Shopify-controlled servers.  The Pirate Subscribers can

also use Shopify tools to distribute the infringing files by enabling their direct download from the Pirate Websites.

42.     Plaintiffs have purchased infringing copies of the Works, including those that bear copies of the Marks, from many of the Pirate Websites.  Plaintiffs made a number of these purchases by direct digital download on the product page or checkout page.  In these instances, the infringing files were hosted on and transmitted to Plaintiffs from servers in Ashburn, Virginia.

43.     As described below, Shopify received repeated notices of infringement regarding the Pirate Subscribers using its services to infringe the Works and the Marks.  These notices gave Shopify the *specific identities* of the Pirate Subscribers, referred to by their unique online storefront name, and the URLs pointing to representative samples of their infringing products.  Thus, at all pertinent times, Shopify not only knew that the Pirate Subscribers were using its services to illegally copy, upload, sell, and distribute digital copies of the Works and illegally use the Marks, Shopify knew which specific subscribers were infringing.

44.     Yet Shopify persistently turned a blind eye toward the massive infringement. Shopify condoned the illegal activity because it was popular with Shopify subscribers and acted as a draw in attracting and retaining subscribers who pay a monthly subscription fee to Shopify. Shopify subscribers, including Pirate Subscribers, also pay transaction fees or charges, including those that constitute a percentage of each infringing sale.  If Shopify prevents its repeat infringer subscribers from using its services or makes its services less attractive for infringing uses, Shopify will enroll fewer new subscribers, lose existing subscribers, and lose revenue.  With each additional infringing subscriber and each additional infringing sale, Shopify grows its revenues.

45.     Plaintiffs are not compensated for the illegal copying and sale of the Works on Shopify.  Such illegal sales displace the lawful acquisition of the Publishers' textbooks.  That harm

has a ripple effect impacting the authors of the Works as well as the Publishers' ability to continue to invest in their publications and the creation of new works and scholarly contributions that benefit education as a whole.  Further, the Pirate Subscribers advertise and sell infringing, digital copies of the Publishers' textbooks at a fraction of the price of the legitimate digital textbooks, thus diminishing their perceived value and resulting in lost sales.

46.     In addition, the Pirate Subscribers' sale of infringing copies of the Publishers' test banks and ISMs encourages and facilitates academic cheating and undermines the integrity of the educational process.  Moreover, the unauthorized access to these supplemental materials on Shopify compromises the value of the supplemental materials and, as a result, teaching professionals' adoption of the textbooks themselves.

47.     Plaintiffs also suffer reputational injury when the Marks are unlawfully used in connection with the sale and offering for sale of illegitimate copies of the Works.  Consumers who see a copy of the Marks on infringing products or in connection with the sale and offering for sale of the same are also likely to be confused and believe that the infringing products originate from Plaintiffs and that Plaintiffs authorized their copying and distribution through the Pirate Websites, which they did not.

### *Shopify Obstructs Submission of Infringement Notices*

48.     Shopify imposes improper and unreasonable obstacles on rights owners who wish to submit infringement notices to protect their intellectual property from piracy.

49.     Shopify has refused to process valid infringement notices that it receives at the email address that it provided to the U.S. Copyright Office for its designated agent to receive infringement notices pursuant to Digital Millennium Copyright Act ("DMCA") requirements. Shopify has rejected those notices and allowed them to fall into the abyss, even though they contain

the information required for a notice to be effective under the law.  Shopify concocts various reasons that the notices are not "proper" when, in fact, they are valid.

50.     For instance, Shopify has refused to process an infringement notice unless the copyright owner provided a URL to where the copyrighted work being infringed is lawfully commercialized.   Shopify also has refused to process an infringement notice if it identifies infringements by two or more Shopify pirate stores or is not prepared and submitted using Shopify's multi-part online form.  Shopify's practices are improper under the law.  Shopify is not permitted to blind itself from notices concerning infringers and infringements on the grounds that they fail to include superfluous information or accede to Shopify's burdensome, formalistic submission requirements.

51.     Shopify does not post on its website in a location reasonably accessible to the public the email address of its designated agent to receive notifications of infringement.  The Shopify homepage (www.shopify.com) does not contain the email address of Shopify's designated agent. Nor does Shopify's homepage have any kind of search interface that could be used to find the email address of Shopify's DMCA agent.

52.     Shopify's homepage includes hyperlinks to Shopify's Terms of Service, as well as a "Sitemap" that outlines and has hyperlinks to various pages on the Shopify site.  *See generally* Terms of Service; Shopify Sitemap, https://www.shopify.com/sitemap (last visited Nov. 30, 2021). But neither the Terms of Service nor the Sitemap contain the email address of Shopify's designated agent.

53.     The Terms of Service indicate that there is an online form to send a notice of infringement to Shopify's designated agent.  *See* Terms of Service ¶ 20.  That form is not publicly accessible.  *See* DMCA Notice and Takedown Procedure, https://help.shopify.com/en/legal/dmca

17

(last visited Nov. 30, 2021).  To access and submit that form, Shopify requires the copyright owner to create an account with Shopify and agree to Shopify's extensive Terms of Service (over 10,000 words and 18 hyperlinked documents).

54.     A person can find the contact information of Shopify's designated agent only if they visit a section of Shopify's website that is referred to as the "Shopify Help Center."  *See* Shopify Help Center,  https://help.shopify.com/en (last visited Nov. 30, 2021).  At that page, Shopify points the user in various directions—including how to "Start," "Sell," "Manage," "Market," and "Expand" with Shopify.  The page has a search interface for querying what Shopify calls "documentation."  If a visitor knows to input "DMCA" into the search interface, selects the "Copyright and Trademark" webpage result, and scrolls to the seventh section of the webpage, only then will the user find the designated agent.  *See Copyright and Trademark*, Shopify Help Center,  https://help.shopify.com/en/manual/your-account/copyright-and-trademark (last visited Nov. 30, 2021).  Hiding the contact information of its DMCA designated agent behind layers of pages, links, and searches is improper.

55.     Shopify's above-described practices discourage the submission of infringement notices.

### *Plaintiffs' Infringement Notices to Shopify*

56.     Even when Shopify receives and does not reject a given infringement notice, Shopify routinely continues to provide services to specific, identified repeat infringers who are subscribers of Shopify to further aid and support their ongoing infringement.  Shopify also sometimes fails to remove or disable access to specific infringing files identified in infringement notices.

57.     With respect to the Works and the Marks, between 2017 and 2021, Shopify received more than 32,000 unique URLs pointing to infringing works across hundreds of separate Notices, provided under penalty of perjury, detailing specific instances of particular Pirate Subscribers using Shopify services to infringe.  Each infringement Notice identified the Pirate Website as well as the location on the Pirate Website of infringing Works and/or Marks.

58.     These Notices to Shopify were written communications, directed to Shopify's designated agent to receive infringement notices, containing a physical or electronic signature of a person authorized to act on behalf of Plaintiffs.  Because multiple copyrighted works and trademarks were being infringed on each Pirate Website, the Works and Marks listed in the Notices served only as representative examples.  The Notices stated that the Shopify subscribers at issue were not authorized to reproduce or distribute any of the infringing files they sell.  Indeed, the Notices represented only a fraction of the Pirate Subscribers' infringements that occurred on Shopify in the same time frame.

59.     In addition, the Notices identified the infringing content that was to be removed or access to which was to be disabled and provided precise information for Shopify to locate such content, including URLs pointing to specific product pages (and to a specific location on Shopify's servers).  The Notices also contained information for Shopify to contact the complaining party, including an email address, telephone number, and physical address.  In addition, the Notices contained a statement that the complaining party had a good faith belief that use of the content in the manner complained of was not authorized by the copyright or trademark owner, its agent, or the law.

60.     The Notices concerned clear and unambiguous infringing activity on Shopify by Pirate Subscribers via their Pirate Websites—that is, the unauthorized reproduction, sale, and

distribution of digital copies of the Works and the unauthorized use of the Marks in connection with the advertising, sale, offering for sale, and distribution of the Works. There is no plausible legal justification for Shopify's subscribers to engage in that activity, or for Shopify to continue to enable, assist, and profit from it.

61.     Shopify was in a unique position to prevent further infringement by the Pirate Subscribers. While pirates often attempt to conceal their real identities, Shopify's business records contain critical information about the Pirate Subscribers. Shopify also has financial information for its subscribers and the ability to verify the identity of its subscribers. Shopify knows the IP addresses from which the Pirate Subscribers are operating the Pirate Websites, as well as the email addresses the Pirate Subscribers use. Shopify has the means to communicate directly with the Pirate Subscribers to notify them of infringement notices, as well as determine if a particular Pirate Subscriber is operating other infringing websites using Shopify's services. And when a Shopify subscriber is caught infringing, Shopify is in the unique position to terminate the subscriber's Shopify account and cease providing services to that Pirate Subscriber, halting the infringement.

62.     Apart from attesting to a glimpse of the sheer volume of infringing activity on Shopify's platform, the Notices have identified hundreds of specific Pirate Websites engaged in flagrant and serial infringement, without Shopify terminating their accounts. Moreover, each of the Notices mentioned below included a representative list of URLs to infringing product pages through which the Works were sold and/or the Marks were used. To cite a few examples:

- Beginning on September 9, 2020, Shopify received Notices relating to a Pirate Subscriber with a Pirate Website at dexdwall.myshopify.com. Despite receiving at least 33 separate Notices over a 20-month period, with at least 408 unique URLs

pointing to infringing works across those Notices, Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.

- Beginning on June 17, 2020, Shopify received Notices relating to a Pirate Subscriber with a Pirate Website at mosac.club.  Despite receiving at least 14 separate Notices over a 4-month period, with at least 184 unique URLs pointing to infringing works across those Notices, Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.  That same Pirate Subscriber operated an additional Pirate Website at atiso.club, with respect to which Shopify received Notices on at least 14 different days during a 4-month period, commencing on June 17, 2020, with at least 155 unique URLs pointing to infringing works across those Notices.  Yet Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.

- Beginning on May 15, 2020, Shopify received Notices relating to a Pirate Subscriber with a Pirate Website at panend.myshopify.com.  Despite receiving at least 41 separate Notices concerning this Pirate Subscriber over a 13-month period, with at least 458 unique URLs pointing to infringing works across those Notices, Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.

- Beginning on May 15, 2020, Shopify received Notices relating to a Pirate Subscriber with a Pirate Website at prolium.myshopify.com.  Despite receiving at least 25 separate Notices over a 10-month period, with at least 230 unique URLs pointing to infringing works across those Notices, Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.

- Beginning on June 4, 2018, Shopify received Notices relating to a Pirate Subscriber with a Pirate Website at tys-cheap-audiobook.myshopify.com.  Despite receiving at least 19 separate Notices during a greater than 3-year period, with at least 87 unique representative URLs pointing to infringing works across those Notices, Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.

- Beginning on March 10, 2021, Shopify received Notices indicating that a Pirate Subscriber with a Pirate Website at batches88.myshopify.com was infringing certain Marks.  Despite receiving at least 17 separate Notices over a 4-month period, with at least 150 unique representative URLs pointing to infringing uses of the Marks across those Notices, Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.

- Beginning on June 9, 2021, Shopify received Notices indicating that a Pirate Subscriber with a Pirate Website at jedelstore.com was infringing certain Marks. Despite receiving at least 15 separate Notices over a 4-month period, with at least 110 unique representative URLs pointing to infringing uses of the Marks across those Notices, Shopify continued to provide its services to assist and support this Pirate Subscriber's infringement.

63.    The examples in the foregoing paragraphs are just a snapshot of widespread infringing activity and repeat infringement by the Pirate Subscribers via their Pirate Websites. These examples amply illustrate that repeat infringers have not faced a realistic prospect of Shopify terminating their accounts.   Rather than lose revenue by terminating the accounts of repeat infringers, Shopify routinely looks the other way.

64.     The Notices to Shopify are just the tip of the iceberg.  The universe of infringement notices to Shopify includes notices from other copyright and trademark rights holders across multiple industries.  Shopify learns about the infringing activities of specific Shopify subscribers in multiple ways, including, *inter alia*, the Notices described herein as well as infringement notices from other rights holders.

65.     Shopify also does not prevent the Pirate Subscribers from starting and operating new websites using Shopify services and selling the same infringing works, even after Shopify takes belated action as to the original infringing website using its services.  For example, there have been Pirate Websites at emedbooks.com, emedbooks.net, emedbooks.myshopify.com, and emedbooks.org.   On October 7 and 14, 2020, after receiving Notices of infringement by emedbooks.com concerning *HESI Comprehensive Review for the NCLEX-RN Examination*, 4th edition, Shopify removed the infringing copy of the Work.   But by August 25, 2021, emedbooks.myshopify.com was listing an infringing copy of the same Work, and on September 1, 2021, emedbooks.org also began listing an infringing copy of the same Work.  On the face of it, these Pirate Websites are operated by the same Pirate Subscriber.  Shopify has a wealth of information that it obtains via account activity—including registration, payments, IP logs, and email communications—that could be used to identify and prevent Pirate Subscribers from simply starting new infringing websites after getting caught on their original websites.

66.     Apart from Shopify's failure to act as to repeat infringers, Shopify has failed to remove or disable access to the files of the infringing Works and specific URLs leading to product pages on which the infringing Works are sold, as specified in the Notices.  Hundreds or more of such specific URLs, each pointing to a particular infringing Work, appeared in three or more separate Notices.  Some such specific URLs were included in at least five separate Notices.

67.     For example, Shopify received Notices of infringement of the Work *Hole's Human Anatomy & Physiology*, 14th edition, at the same specific URL on the following dates: June 25, 2019, July 21, 2019, May 15 and 21, 2020, and February 17, 2021.  Shopify ignored the first four Notices.

68.     Similarly, Shopify received Notices of infringement of the Work *Chemistry: The Molecular Nature of Matter and Change with Advanced Topics*, 8th edition, at the same specific URL on the following dates: June 25, 2019, July 21, 2019, May 21 and 27, 2020, and February 17, 2021.  Again, Shopify ignored the first four Notices.

### The Infringement and Repeat Infringers Are No Accident

69.     Shopify has the full legal right and technical ability to prevent or limit the infringements occurring on its platform.  Shopify is a "closed system" in terms of who can become a Shopify merchant.  Shopify controls which persons it will permit as merchants on its platform. To become a Shopify merchant, merchants must apply on the Shopify website and provide identifying and financial information, and after an initial 14-day trial period merchants must begin paying Shopify a monthly fee as a subscriber.  Shopify regulates what its merchants are permitted to sell and what they are prohibited from selling.  Shopify actively monitors and controls what its merchants sell on its platform and monitors and controls the Shopify online stores themselves.

70.     Shopify requires any subscriber with a Shopify account to agree to Shopify's Terms of Service, which incorporate Shopify's Acceptable Use Policy.  *See generally* Terms of Service; Acceptable Use Policy.  Shopify's Terms of Service provide Shopify with the legal right to suspend or terminate accounts of merchants for any reason, including those merchants who use Shopify's services for infringement.  *See* Terms of Service ¶¶ 5.3, 15.5, 20.  Shopify's Terms of Service also make clear that Shopify has the right and ability to remove "materials," which include digital files

and images, and suspend or terminate accounts, if the products sold on a Shopify store or the "[m]aterials uploaded or posted to a [s]tore" violate the Terms of Service or the Acceptable Use Policy. *See id.* ¶¶ 5.3, 20. Notwithstanding these policies, rights, and abilities, Shopify consistently neglects its responsibility to prevent or limit infringement. Instead, Shopify deliberately facilitates, supports, and profits from the infringing activities complained of herein.

71. Shopify proclaims that its Trust and Security team actively monitors Shopify's platform for compliance with its Acceptable Use Policy, which expressly prohibits merchants from offering goods or services that "infringe on the copyright or trademarks of others." Acceptable Use Policy ¶ 6. Shopify also states that it uses AI algorithms to actively monitor and police the platform for compliance. Shopify's President has explained that "moderation" of Shopify is a "critical part" of the company, and that, over time, Shopify's AI algorithms are improving. Nilay Patel, *How Shopify's Network of Sellers Can Take On Amazon*, The Verge (May 4, 2021, 9:30 AM), https://www.theverge.com/22417825/shopify-harley-finkelstein-interview-online-shopping-amazon-apple.

72. Furthermore, Shopify supports and promotes its subscribers' websites, including the Pirate Websites. In addition to the marketing and advertising services described above, in its Terms of Service, Shopify reserves the right to "use the names, trademarks, service marks and logos associated with [a subscriber's website]" to promote its platform. Terms of Service ¶ 9.4.

73. Shopify specifically encourages subscribers to sell digital copies of books on Shopify. Shopify tells prospective and existing Shopify subscribers that they "can sell [their] ebooks online" and "[g]et all the training and tools [they] need to start [their] ebook business." Shopify Ebooks, https://www.shopify.com/sell/ebooks (last visited Nov. 30, 2021). Indeed,

Shopify attempts to retain its current subscribers and attract new subscribers by touting that "Shopify is an excellent ecommerce platform for selling ebooks and other digital products." *Id.*

74.     Not only does Shopify specifically invite this high-risk activity, but instead of effectively mitigating the risks it has created, it engages in practices that encourage infringement. With a wink and a nod, Shopify may tell subscribers that they must legally own the rights to the ebook that they are selling.  But existing or prospective Shopify subscribers are enticed by the lure of fast, easy money through illegal ebook sales, without regard to any fine-print Shopify prohibitions against infringement.  Shopify does nothing to authenticate the subscriber's legal right to sell copyrighted works published by others, despite maintaining its team of individuals in the Trust and Security department who claim to actively monitor Shopify's online marketplace for compliance with its purported rules.  Moreover, when Shopify receives the Notices, Shopify is put on notice that the Pirate Subscriber is operating a Pirate Website, not someone lawfully selling an ebook, test bank, or ISM.

75.     Shopify's practices encouraging infringement and its reluctance to terminate repeat infringers allow Shopify to have as many subscribers as possible on its platform and to profit from those subscribers and sales of infringing works.  Indeed, Shopify has stated in public securities filings that "[t]he more a merchant sells on our platform, the more revenue we generate as they process more transactions, upgrade plans, sell through new sales channels, ship more products, and use additional solutions."  *See* Shopify Inc., S.E.C. Form 40-F ex. 1.1, at 17 (Feb. 17, 2021), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001594805/c3898d01-52b6-4d9b-87dc-21744e8ba90d.pdf.  Shopify has a clear, obvious, and direct financial interest in the infringing activities of the Pirate Websites.

76.     Shopify has two major revenue streams: "subscription solutions" and "merchant solutions."  Subscription solutions include the monthly fees that the merchants remit to Shopify, currently ranging from $29 ("Basic Shopify") to $299 ("Advanced Shopify"), depending on the features the merchants require.  *See* Shopify Pricing, https://www.shopify.com/pricing (last visited Nov. 30, 2021).  Shopify also offers an additional plan called "Shopify Plus," which has more complex features and additional benefits and which Shopify sells at a starting rate that is several times that of Advanced Shopify.  *See id.*  Some of these subscription agreements also have pricing with a variable component based on the merchant's volume of sales.

77.     "Merchant solutions" are largely transaction-based and include non-recurring fees or charges, which vary based on the merchant's particular subscription plan with Shopify, as well as the method of payment used.  For example, online sales paid with credit cards and processed through Shopify Payments incur a charge of 2.4% to 2.9% of the sale price, plus another 30 cents. *See id.*  For online transactions processed via third-party payment processor services, Shopify charges a transaction fee that is between 0.5% and 2% of the sale price.  *See id.*  Thus, the more infringing ebooks, test banks, and ISMs Shopify subscribers sell online, the more money Shopify makes.

78.     As highlighted above, despite its alleged policies, and despite receiving numerous infringement notices concerning blatantly illegal commercial piracy by repeat infringers, Shopify knowingly and routinely permitted numerous identified repeat infringers to continue to use Shopify's platform and related services to infringe.   Shopify had the right, ability, and responsibility to curtail the infringement, including by suspending or terminating the hosting and other services that Shopify provides to these egregious repeat infringers.   Instead, Shopify knowingly and intentionally continued to assist the Pirate Subscribers with their infringement of

the Works and the Marks.  Shopify's continued provision of services to these known repeat infringers materially contributed to the direct infringement taking place via the Pirate Websites, with Shopify profiting directly from those infringements.

79.    Shopify also deliberately hinders Plaintiffs' efforts to enforce their rights against Pirate Subscribers who are using Shopify to infringe.  Shopify's Terms of Service and Privacy Policies permit Shopify to disclose the identities of the operators of the Pirate Websites.  But Shopify has not done so.  Instead, Shopify opts to provide an anonymous, perceived safe haven for subscribers to commit further infringement.  Even when the Publishers serve Shopify with injunctions and discovery orders issued by federal courts, which call for information regarding subscribers who operate enjoined infringing websites on Shopify, Shopify refuses to comply.

80.    The Publishers have sued the operators of certain infringing websites on several occasions in U.S. District Courts.  In those cases, the Publishers obtained temporary restraining orders that included a requirement that service providers immediately identify the operators of the defendants' websites and provide information about their infringing sales, other websites, and financial accounts.  In each instance that this occurred, Shopify steadfastly refused to disclose the defendants' identities, as well as their financial information linked to their Shopify accounts (which were subject to court-ordered asset freezes in addition to the discovery orders), and the other information called for by the court orders—even though Shopify's Terms of Service with its subscribers gave it the unequivocal right to do so, and the court orders clearly and unequivocally applied to Shopify.  By refusing to respond to the court orders and hiding the identities of the defendant pirates, Shopify protected their infringing activities.

## CLAIMS FOR RELIEF

### Count I – Contributory Copyright Infringement
### Asserted by the Publishers

81.     The Publishers repeat and reallege every allegation contained in paragraphs 1 through 80 as if fully set forth herein.

82.     The Pirate Subscribers do not have any authorization, permission, license, or consent to exploit the copyrighted Works at issue.

83.     The Pirate Subscribers, using services provided by Shopify, have unlawfully reproduced, sold, and distributed thousands of copyrighted Works for which the Publishers are the legal or beneficial copyright owners or exclusive licensees, as set forth in Exhibit A. The Works are protected by valid registrations duly issued by the U.S. Copyright Office. The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501 *et seq.*

84.     Shopify is liable as a contributory copyright infringer for the direct infringements described herein. Through the Notices and other means, Shopify knew that its services were being used for copyright infringement on a massive scale, and Shopify knew of specific Pirate Subscribers engaged in repeated and flagrant infringement. Nevertheless, Shopify facilitated, encouraged, and materially contributed to such infringement by continuing to provide the services necessary for the Pirate Subscribers to commit additional infringements. Shopify had the means to withhold that assistance upon learning of specific infringing activity by the Pirate Subscribers but refused to do so. As a result, Shopify financially benefitted.

85.     Each infringement of the Works constitutes a separate and distinct act of infringement.

86.     The foregoing acts of infringement by Shopify have been willful, intentional, and purposeful, in disregard of the Publishers' rights. Indeed, the thousands of Works listed in Exhibit

A represent copyrights infringed by Shopify's subscribers *after* Shopify received multiple Notices concerning their infringement.

87.     Shopify's actions described above, which are ongoing, have caused and will continue to cause irreparable damage to the Publishers, for which the Publishers have no remedy at law.   Unless Shopify is restrained by this Court from continuing its infringement of the Publishers' copyrights, these injuries will continue to occur in the future.   The Publishers are accordingly entitled to injunctive relief restraining Shopify from further infringement.

### Count II – Vicarious Copyright Infringement
### Asserted by the Publishers

88.     The Publishers repeat and reallege every allegation contained in paragraphs 1 through 80 as if fully set forth herein.

89.     The Pirate Subscribers do not have any authorization, permission, license, or consent to exploit the copyrighted Works at issue.

90.     The Pirate Subscribers, using services provided by Shopify, have unlawfully reproduced and distributed thousands of copyrighted Works for which the Publishers are the legal or beneficial copyright owners or exclusive licensees, as set forth in Exhibit A.   The Works infringed by Shopify's subscribers are protected by valid registrations duly issued by the U.S. Copyright Office.   The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501 *et seq.*

91.     Shopify is liable as a vicarious copyright infringer for the direct infringements described herein.   Shopify has the legal and practical right, ability, and responsibility to supervise and control the infringing activities that occur through the use of its platform and services.   In addition, Shopify has a financial interest in, and has derived an obvious and direct financial benefit from, the Pirate Subscribers' infringement.   The ability to use Shopify's facilities to illegally sell

the Publishers' copyrighted works, with infringing uploads and downloads, has served to draw, maintain, and generate higher fees from paying subscribers to Shopify's service. Shopify also financially benefits from the Pirate Subscribers' sales through transaction fees and charges, including those that constitute a percentage of the sale price. By allowing known repeat infringers to continue to infringe on Shopify, Shopify has profited from illicit revenue that it would not have otherwise received.

92.     Each infringement of the Works constitutes a separate and distinct act of infringement.

93.     The foregoing acts of infringement by Shopify have been willful, intentional, and purposeful, in disregard of the Publishers' rights. Indeed, the thousands of Works listed in Exhibit A represent copyrights infringed by Pirate Subscribers *after* Shopify received multiple Notices concerning their infringement.

94.     Shopify's actions described above, which are ongoing, have caused and will continue to cause irreparable damage to the Publishers, for which the Publishers have no remedy at law. Unless Shopify is restrained by this Court from continuing its infringement of the Publishers' copyrights, these injuries will continue to occur in the future. The Publishers are accordingly entitled to injunctive relief restraining Shopify from further infringement.

### Count III – Contributory Trademark Infringement
### Asserted by the Trademark Plaintiffs

95.     The Trademark Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 80 as if fully set forth herein.

96.     The Marks listed in Exhibit B are valid and protectable trademarks that are registered with the U.S. Patent and Trademark Office. The Trademark Plaintiffs are the registrants of their respective Marks as set forth in 15 U.S.C. § 1114(1) and defined in 15 U.S.C. § 1127.

97.     The Pirate Subscribers do not have any authorization, permission, license, or consent to reproduce, use in commerce, or otherwise exploit any of the Marks.  Notwithstanding, using and relying upon services and instrumentalities provided by Shopify, the Pirate Subscribers have used in commerce reproductions, counterfeits, copies, and colorable imitations of the Marks in connection with the sale, offering for sale, and/or distribution of infringing copies of the Works.

98.     Shopify is liable to the Trademark Plaintiffs for contributory trademark infringement based on the direct infringement and counterfeiting of their Marks by Shopify's subscribers, as described herein.

99.     In particular, the Pirate Subscribers have engaged in trademark infringement, and, specifically, trademark counterfeiting, by selling digital copies of the Works bearing unauthorized identical or substantially indistinguishable reproductions, copies, and colorable imitations of the Marks and/or displaying such reproductions, copies, and colorable imitations of the Marks on product pages on their Pirate Websites that are used to sell and offer for sale the infringing products.  Such unlawful uses of the Marks have caused confusion, mistake, and deception, including confusion, mistake, and deception among the consuming public as to the origin, sponsorship, and nature of the infringing products sold.  The foregoing activity constitutes direct trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114(1)(a).

100.     Through the Notices and other means, Shopify knew that its services and instrumentalities were being used for trademark infringement on a massive scale, and Shopify knew of specific Pirate Subscribers engaged in repeated and flagrant infringement.  Nevertheless, Shopify continued to supply and provide the services, marketplace, support, and instrumentalities that enabled the infringements of the Marks.  As a result, Shopify financially benefitted.

101.    Shopify had the ability to, and did, control and monitor the Pirate Websites through which the Pirate Subscribers committed the direct infringement.  Shopify also induced the direct infringement by actively encouraging subscribers to advertise and sell ebooks, which, at least in the case of the Pirate Subscribers, Shopify knows their subscribers do not have the right to sell.

102.    The foregoing acts of infringement by Shopify have been willful, intentional, and purposeful, in disregard of the Trademark Plaintiffs' rights.  Indeed, the Marks listed in Exhibit B represent trademarks infringed by Pirate Subscribers *after* Shopify received multiple Notices concerning their infringement.

103.    Shopify's actions described above, which are ongoing, have caused and will continue to cause irreparable damage to the Trademark Plaintiffs, for which the Trademark Plaintiffs have no remedy at law.  Unless Shopify is restrained by this Court from continuing its infringement and counterfeiting of the Trademark Plaintiffs' trademarks, these injuries will continue to occur in the future.  The Trademark Plaintiffs are accordingly entitled to injunctive relief restraining Shopify from further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment from this Court against Shopify as follows:

a.  For judgment on the claims set forth above;

b.  For a finding that Shopify willfully infringed the Works listed in Exhibit A and the Marks listed in Exhibit B, as such exhibits may be amended;

c.  For statutory damages pursuant to 17 U.S.C. § 504(c) in an amount up to the maximum provided by law, i.e., $150,000 per infringed copyright, arising from Shopify's willful violations of the Copyright Act, or, in the alternative, pursuant to 17 U.S.C. § 504(b),

actual damages and Shopify's profits from the infringement, in an amount to be proven at trial;

d.  For statutory damages pursuant to 15 U.S.C. § 1117(c), in an amount up to the maximum provided by law, i.e., $2,000,000 per counterfeited trademark, arising from Shopify's willful violations of the Lanham Act, or, in the alternative, pursuant to 15 U.S.C. § 1117(a)–(b), actual damages and Shopify's profits from the infringement/counterfeiting, including treble damages for use of counterfeit marks, in an amount to be proven at trial;

e.  For an order pursuant to 17 U.S.C. § 502, 15 U.S.C. § 1116, and Federal Rule of Civil Procedure 65(d) enjoining Shopify from further infringing and facilitating infringement as described herein;

f.  For an order requiring Shopify to deliver up for destruction all infringing products and materials in its possession, custody, or control, including infringing copies of the Publishers' textbooks, test banks, and ISMs, and their related product pages, and any other materials bearing copies of the Marks, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

g.  For the award of Plaintiffs' reasonable attorneys' fees and costs in this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117;

h.  For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Shopify; and

i.  For such other and further relief as the Court deems proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury of all issues that are so triable.

DATED:  December 1, 2021                    Respectfully submitted,

   /s/ Scott A. Zebrak
_____
Matthew J. Oppenheim (*pro hac vice* motion
forthcoming)
Scott A. Zebrak (38729)
Michele H. Murphy (*pro hac vice* motion
forthcoming)
Nicholas C. Hailey (83946)

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202-480-2999 telephone
866-766-1678 fax
matt@oandzlaw.com
scott@oandzlaw.com
michele@oandzlaw.com
nick@oandzlaw.com