**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; CENGAGE LEARNING, INC.; ELSEVIER INC.; ELSEVIER B.V.; MCGRAW HILL LLC; and PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SHOPIFY INC., <br><br> Defendant. | Case No. 1:21-cv-01340 |

**MEMORANDUM IN SUPPORT OF DEFENDANT SHOPIFY INC.'S**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO**
**SHOPIFY'S FIRST SET OF REQUESTS FOR PRODUCTION**

## TABLE OF CONTENTS

PAGE

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I.      Plaintiffs Must Produce Documents Concerning Their Alleged Ownership
        Interests In the Copyrighted Works (RFPS 1 to 14). ......................................................... 5

        A.      Plaintiffs Have Refused to Produce Documents Supporting or Refuting
                Their Purported Ownership Interests in the Copyrighted Works in Suit ................ 5

        B.      Discovery Concerning Plaintiffs' Alleged Ownership Interests in the
                Copyrighted Works Is Relevant And Proportionate To The Case. .......................... 8

        C.      There Is Reason To Believe Plaintiffs Do Not Own Their Claimed
                Copyrights ............................................................................................................. 12

                1.      *Plaintiffs appear to systematically obtain rights from the wrong
                        parties, who cannot effectively grant Plaintiffs any interest in the
                        copyrights* ................................................................................................... 12

        D.      Plaintiffs Should Be Compelled to Produce Documents Concerning Their
                Purported Ownership Interests in the Copyrighted Works ................................... 16

II.     Plaintiffs Must Produce Documents Concerning Their Purported Harms (RFPs 21,
        22, 24, 45). ....................................................................................................................... 20

        A.      Plaintiffs Have Refused to Produce Documents on Their Purported Harms ........ 20

        B.      Documents Concerning Plaintiffs' Purported Harms Are Relevant And
                Proportionate To The Case .................................................................................... 21

CONCLUSION ........................................................................................................................... 24

I

## **INTRODUCTION**

It is hardly controversial that when a plaintiff initiates a copyright infringement lawsuit, one of the principal issues in the case will be whether the plaintiff actually owns the rights in question.  That principle applies equally when there is one work in suit or when, as here, Plaintiffs made the strategic choice to put thousands of Copyrighted Works in suit.  Regardless of how ambitious the lawyers are, it is almost inevitably part of copyright litigation that the plaintiff adduces evidence that ownership either vested originally in, or was validly transferred to, the plaintiff; and the defendant, in turn, is entitled to discovery testing the plaintiff's contentions.  Likewise, plaintiffs are required to establish their entitlement to a quantum of damages, and defendants, in turn, are entitled to discovery to test the harms for which they seek such damages.

Defendant Shopify files this motion principally because Plaintiffs refuse to play by these basic rules.  To refresh the Court's recollection, Plaintiffs are a consortium of publishers that, taken together, control almost the entire multi-billion dollar U.S. textbook publishing industry.  Defendant Shopify is a technology company that provides tools for third parties to create and operate online digital stores.  The theory of the Complaint is that  Shopify allows its customers to use its tools to sell electronic books ("e-books")  that infringe Plaintiffs' copyrights in those e-books, and that Shopify is both (a) ineligible for the statutory immunity that generally protects technology companies from such suits, and (b) liable for these third-parties' alleged acts of copyright and trademark infringement.  *See generally* Complaint, Dkt. 1.  Plaintiffs allege infringement of 3,406 Copyrighted Works and 20 Trademarks, identified in Exhibits A-B to their Complaint.  The maximum theoretical statutory damages available on these claims, if Plaintiffs could prove willfulness on Shopify's part, would exceed half a billion dollars.

As explained in the Prefatory Statement to Shopify's Answer, these claims have no merit as a factual or legal matter.  Accordingly, Shopify has not hesitated to agree to produce vast swaths

of documents, including (among other things) all relevant policies concerning alleged infringements by third parties, related communications, and information from Shopify's systems for tracking infringement notices, including all relevant documents concerning the merchants that Plaintiffs accuse of infringement. But Plaintiffs have agreed to produce almost nothing in return. Most notably, Plaintiffs refuse to produce the evidence necessary to determine whether they actually own or possess legal interests in the copyrights on which they sue, *i.e.*, whether they possess standing under the Copyright Act to maintain this action. Shopify thus respectfully requests an order compelling Plaintiffs to produce this information. While such discovery is utterly routine in cases like this one, it is doubly appropriate here, in view of publicly available facts that strongly suggest that for at least a substantial portion of the Copyrighted Works in suit, Plaintiffs purported to acquire the rights in question from parties who never actually owned them.

Consistent with Plaintiffs' refusal to produce documents concerning their purported ownership of the Copyrighted Works and standing to sue, Plaintiffs have also refused to produce relevant documents on a second basic element of their claims, *i.e.*, Plaintiffs' alleged harm for which they seek recompense. Although Plaintiffs have "elected" to pursue statutory damages rather than actual damages, it is black-letter law that actual harms to Plaintiffs, including their revenues, royalties, profits, and valuations of the Copyrighted Works, and any resulting losses from the alleged infringement, are squarely relevant to this damages inquiry and fully discoverable.

The parties conferred by phone over six-and-a-half hours on April 8, 11, and 13, 2022. Plaintiffs confirmed they were unwilling to produce further responsive information on these issues.[1] Shopify therefore files this Motion to compel production of information responsive to

---

[1] As reflected in Shopify's Motion, counsel for Shopify certifies that counsel for the parties met and conferred in good faith concerning all of the RFPs that are the subject to this Motion. In fact, the parties engaged in six and a half hours of conferral over the past week. Specifically with

Shopify's Requests for Production ("RFPs") Nos. 1 to 14, 21, 22, 24, and 45 from Plaintiffs Bedford, Freeman & Worth Publishing Group, LLC, Cengage Learning, Inc., Elsevier Inc., McGraw Hill LLC, and Pearson Education, Inc.[2]

## ARGUMENT

On March 2, 2022, Shopify served on each Plaintiff its First Set of Requests for Production. *See generally* Exs. 1-5.  Plaintiffs served their responses on April 1, 2022.  *Id.*  In their identical, cookie-cutter responses, Plaintiffs raised a swath of broad, general objections to Shopify's discovery, principally for lack of relevance—and a resultant lack of proportionality—and, in some cases, based on burden and confidentiality.  *Id.*[3]

"Parties may obtain discovery regarding any nonprivileged matter, that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).

---

respect to RFPs 1-14, Shopify conferred extensively both at a high level and at a granular level, and also provided written notice to Plaintiffs' counsel on Tuesday, April 11, of their intention to move to compel further responses with respect to these fourteen RFPs, based on Plaintiffs' stated position.  At 1:39 p.m. and 2:06 p.m. today (Friday, April 15, 2022), Plaintiffs asserted, for the first time, that they disagreed that the parties had sufficiently conferred on the subjects of RFPs Nos. 7-10 and 12-13.  As reflected in the email chain attached hereto as Exhibit 9, Plaintiffs' position that the parties failed to confer with respect to RFPs Nos. 7-10 and 12-13 lacks merit. *See, e.g.*, Exhibit 9 at 1-2, 6-9.  Nonetheless, the parties continue to meet and confer on Shopify's RFPs, and in the event that Plaintiffs modify their refusal to produce additional documents for these RFPs, Shopify will promptly advise the Court.

[2] In addition, Plaintiffs informed Shopify at 1:39 p.m. today that they are considering producing additional information with respect to RFP 6.  As of the filing of this motion, it is unclear whether Plaintiffs will produce such information or what it will be; however, again, to the extent the parties are able to reach agreement as to any portion of the relief sought in this motion, Shopify will promptly advise the Court.

[3] Shopify has attached Plaintiffs' Responses to Shopify's First Set of RFPs to this Motion, with the exception of Plaintiff Elsevier B.V. and Plaintiff Macmillan Holdings, two Plaintiffs as to whom Shopify is *not* currently seeking to compel documents in this Motion.  All citations to RFPs and Responses in this Motion correspond to the RFP Responses of the five Plaintiffs upon which Shopify is presently moving:  All Plaintiffs provided identical responses to Shopify's RFPs, and accordingly the pincite page citation to each Plaintiff's RFP Responses in Exs. 1-5 is the same.  In Exhibits 1-5, Shopify has excerpted only relevant portions of the Responses to reduce volume.

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts evaluate proportionality by considering "the amount in controversy," the "importance" of the material sought, the parties' "resources," the parties' "access" to materials, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Brink's Co. v. Chubb Eur. Grp. Ltd.*, No. 3:20-CV-520-HEH, 2021 WL 5083335, at *4 (E.D. Va. Feb. 24, 2021), *adopted by*, 2021 WL 5083332 (E.D. Va. Mar. 12, 2021). Thus, "undue burden" is integrated as the final factor in evaluating proportionality. *See* Fed. R. Civ. P. 26(b)(2). The burden to show that discovery is not relevant or proportionate, or otherwise non-discoverable, falls on the objecting party. *See EEOC v. Thompson Contracting, Grading, Paving & Utils., Inc.*, No. 05-0675, 2007 WL 9718508, at *1 (E.D.N.C. Mar. 26, 2007).

Here, Plaintiffs' relevance objections collapse together with their objections to proportionality and burden: Plaintiffs have not identified specific burdens or bases on which this discovery is disproportionate, apart from relevance. *See generally* Exs. 1-5. Essentially, Plaintiffs claim that Shopify's RFPs are not relevant and thus do not justify any burden, even a minimal one. *Id.* But Plaintiffs' unadorned "boilerplate objections" to burden and proportionality, lacking "specific facts that indicate the nature and extent of the burden," are entitled to little weight. *Sziber v. Dominion Energy, Inc.*, No. 20-117, 2021 WL 6332784, at *3 (E.D. Va. Sept. 14, 2021); *see also Ashghari-Kamrani v. United Servs. Auto. Ass'n*, No. 15-478, 2016 WL 11642670, at *2 (E.D. Va. May 31, 2016) ("boilerplate" "unduly burdensome" objection lacks required "specificity").

Similarly, Plaintiffs also stated general, boilerplate "confidentiality" objections to some of Shopify's RFPs. Exs. 1-5 at 9-13, 17-19, 21-22, 29-30 (Response to RFPs 4, 5, 10, 11, 14, 22). But Plaintiffs' objections are entitled to little weight, as they have not made clear what, if any,

specific documents they might or might not withhold on those grounds, or a specific basis if they might to do so.  *See, e.g.*, *Bennet v. Equitable Tr. Mortg. Corp*., No. CIV.A 3:09-CV-62, 2010 WL 2253520, at *4–5 (N.D.W. Va. June 1, 2010) (objection to "discovery of confidential and proprietary information" is "impermissible" "boilerplate" absent a written identification of specific confidential materials and bases).  In any event, the parties already entered into a protective order, *see* Dkt No. 50, and it is well established that such a protective order provides sufficient protection for confidential information, especially with an option of "Attorneys' Eyes Only" treatment where appropriate.  *See Prasad v. Nallapati*, No. 5:20-CV-470-BO, 2022 WL 1051293, at *3 (E.D.N.C. Apr. 7, 2022) (protective order "adequately addresses the confidentiality concerns"); *Verona v. U.S. Bancorp*, No. 09-57, 2010 WL 11566255, at *3 (E.D.N.C. Feb. 5, 2010) ("attorneys' eyes only" sufficient to protect information even from potential competitor).

Here, Plaintiffs cannot meet their burden of establishing that Shopify's RFPs are irrelevant, disproportionate, or otherwise stray beyond the scope of permissible discovery.

## I.    PLAINTIFFS MUST PRODUCE DOCUMENTS CONCERNING THEIR ALLEGED OWNERSHIP INTERESTS IN THE COPYRIGHTED WORKS (RFPS 1 TO 14).

### A.    Plaintiffs Have Refused to Produce Documents Supporting or Refuting Their Purported Ownership Interests in the Copyrighted Works in Suit

Shopify requested documents concerning one of the most basic aspects of Plaintiffs' claims:  Namely, their alleged ownership of, or exclusive licenses in, each of the 3,406 Copyrighted Works upon which Plaintiffs bring suit.  *See* Dkt. 1, Ex. A.  These Requests, RFPs Nos. 1 to 14, consist of five sub-groups of ownership-related documents:

- **Chain of Title and Ownership (RFP Nos. 1-3):**  Documents concerning Plaintiffs' "ownership" of the Copyrighted Works, including any "transfer or assignment" of rights and Plaintiffs' resultant "ownership percentage"; documents sufficient to show other nonparties' "ownership percentage" in the Copyrighted Works; and the "chain-of-title" running from

5

original rights-holders in the Copyrighted Works and allegedly leading to the Plaintiffs.  Exs. 1-5 at 6-9.

- **Licenses and Agreements (RFP Nos. 4-5):**  "[L]icenses and other agreements" concerning the Copyrighted Works, and documents concerning these licenses or other agreements.[4]  Exs. 1-5 at 9-13.

- **Relationships with Authors and Owners (RFP Nos. 10-12):**  Documents sufficient to show the "author(s) for each Copyrighted Work;" documents concerning Plaintiffs' "relationship with the author(s)," including "Communications with the author(s);" and documents "between [Plaintiffs] and any other copyright owner(s)" in the Copyrighted Works.  Exs. 1-5 at 17-20.

- **Works for Hire (RFP Nos. 13-14):**  Documents sufficient to show whether any of the Copyrighted Works are "Works Made For Hire;" and for such Copyrighted Works, documents concerning the "Work Made for Hire agreement with the author(s)," including related "license[s]."  Exs. 1-5 at 20-22.

- **Registration-Related Documents (RFP Nos. 6-9):**  Documents concerning Plaintiffs' "registration of each . . . Work," including documents sent to or from the government and documents concerning "decision[s]" whether to file registrations; as well as documents concerning Plaintiffs' "first publication" of each Work.  Exs. 1-5 at 13-17.

With the exceptions of Plaintiff Elsevier B.V. and MacMillan Holdings,[5] the other five named Plaintiffs have refused to produce any documents in response to these RFPs Nos. 1 to 14,

---

[4] This includes both any licenses from the authors of the Works to Plaintiffs, and any licenses to third parties (which bears on any alienation of Plaintiffs' rights, as well as potential licenses to third parties from whom merchants who use Shopify's services may have acquired them).

[5] Elsevier B.V. and MacMillan Holdings are differently situated:  Elsevier B.V. refused to produce any responsive documents concerning copyright ownership in response to RFPs Nos. 1 to 14, stating that "Plaintiff [Elsevier B.V.] has asserted only a claim for trademark infringement," not

except for three narrow categories. *First*, Plaintiffs agreed to produce *public documents* that Shopify could obtain itself, consisting of Plaintiffs' "U.S. copyright registrations," along with each "authentic Copyrighted Work," *i.e.*, Plaintiffs' electronic textbooks that are publicly available for purchase. Exs. 1-5 at 7, 9, 13-18, 20-22 (Plaintiffs' Response to RFPs 1, 3, 6, 8, 9, 10, 13, 14).[6] *Second*, and *only* for the approximately *100 Works* where the copyright registration "lists someone other than Plaintiff as the copyright claimant" (and not the other approximately 3,300 Copyrighted Works at issue where Plaintiffs *are* listed on the copyright registrations), Plaintiffs agreed to produce *additional* "documents sufficient to establish Plaintiff's ownership of or exclusive rights" in the Copyrighted Works. Exs. 1-5 at 7, 9, 11, 19, 20, 22 (Plaintiffs' Response to RFPs 1, 3, 4, 11, 12, 14).[7] That is, Plaintiffs *refused* to produce these additional documents proving ownership for the approximately 3,300 Copyrighted Works at issue where Plaintiffs *are* listed on the copyright registrations. *Third*, Plaintiffs agreed to produce documents concerning licenses or agreements that Plaintiffs have *with Shopify merchants* "who sold infringing copies of Plaintiffs' Copyrighted Works." Exs. 1-5 at 10-11 (Plaintiffs' Response to Shopify's RFPs 4-5). But that response appears to reflect agreement to produce minimal, if any, documents. Obviously, if Plaintiffs contend that a merchant "sold infringing copies" of the Works in good faith consistent

---

copyright infringement. MacMillan Holdings responded to all of the RFPs Nos. 1 to 14, stating that "based on information currently available to it, it is not aware of any responsive, non-privileged documents in its possession, custody, or control." For these reasons, Shopify does *not* presently move to compel Plaintiffs MacMillan Holdings or Elsevier B.V. to produce documents responsive to RFPs Nos. 1 to 14, and moves only as to the other Plaintiffs on RFPs Nos. 1 to 14.

[6] *See also* Search Copyright Records: Copyright Public Records Portal, U.S. Copyright Office, https://copyright.gov/public-records/ (reflecting publicly available registration documents).

[7] Plaintiffs are listed as the authors of very few of the Works at issue, but are listed as the copyright claimant for the vast majority of the copyright registrations. *Compare* Ex. A to Complaint, Dkt. 1, Ex. A *with* Search Copyright Records: Copyright Public Records Portal, U.S. Copyright Office, https://copyright.gov/public-records/

with Rule 11, Plaintiffs would not possess "licenses or agreements" with the alleged copyright infringers operative during the relevant limitations period.  *Id.*

Other than these narrow exceptions, Plaintiffs refuse to produce any of the documents requested in Shopify's RFPs Nos. 1-14 concerning their alleged ownership interests in the Copyrighted Works.

> **B.    Discovery Concerning Plaintiffs' Alleged Ownership Interests in the Copyrighted Works Is Relevant And Proportionate To The Case.**

Plaintiffs must produce documents concerning their purported ownership interests in the Copyrighted Works and statutory standing to sue.  "[A] party may only sue for copyright infringement if the party owned the copyright at the time the alleged infringement occurred." *Princeton Payment Sols., LLC v. ACI Worldwide, Inc.*, No. 1:13-CV-852, 2014 WL 4104170, at *4 (E.D. Va. Aug. 15, 2014).  Accordingly, at trial, it will be necessary for Plaintiffs to prove, for each of the Copyrighted Works, all of "the elements of a copyright infringement claim," including their "ownership of a valid copyright" in each Work.  *Id.*; *see also* 17 U.S.C. § 501 (statutory standing provision).  And in cases like this where the Plaintiffs are admittedly *not* "the author of the copyrighted work," *i.e.*, where Plaintiffs allegedly acquired rights in Copyrighted Works from the original authors, the Plaintiffs "must establish a proprietary right through the chain of title in order to support a valid claim." *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985).

In addition, Shopify has specifically pled a defense that "Plaintiffs' claims are barred because Plaintiffs do not own or hold the exclusive rights under 17 U.S.C. § 106 or any copyright law that were allegedly infringed."  Answer, Dkt. 30 at 37.  Thus, regardless of whether Plaintiffs' statutory standing to sue is viewed as an element of Plaintiffs' infringement claims or as one of Shopify's defenses, Plaintiffs' ownership interests and standing are relevant to this case and discoverable.  *See, e.g.*, *Oppenheimer Fund, Inc.*, 437 U.S. at 350 ("'Parties may obtain discovery

regarding any matter, not privileged, which is relevant to the subject matter…, whether it relates to the claim *or defense* of the party seeking discovery'" (emphasis added) (quoting Fed. R. Civ. P. 26(b)(1)); *LendingTree, LLC v. Zillow, Inc.*, No. 10-439, 2013 WL 6385297, at *9 (W.D.N.C. Dec. 6, 2013) (compelling plaintiff to produce documents in an infringement suit when such documents "will likely provide information relevant to [defendant's] affirmative defense").

Plaintiffs claim that they do not need to produce this information because their copyright registrations "establish a presumption of validity as to the facts contained therein" and—according to Plaintiffs—suffice to determine ownership.  Exs. 1-5 at 7-9, 10-20, 22 (Plaintiffs' Response to RFP Nos. 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 14).  But Plaintiffs are wrong as a matter of law.

As an initial matter, such public registration records, exemplars of which are attached hereto as Exhibit 6, contain only high-level information that is filed and self-certified by the asserted rights holder.  Such registrations do not provide any chain of title or other details to determine the form of, or verify the validity of, a claimant's ownership interest.

True enough, such a registration can sometimes result in a rebuttable presumption that the high-level facts therein are true.  But the "presumption of validity" arising from a registration is *rebuttable* by evidence that "the information contained in the registration is erroneous."  *Watkins v. Chesapeake Custom Homes, L.L.C.*, 330 F. Supp. 2d 563, 571 (D. Md. 2004).  Defendants in copyright infringement suits can, and frequently do, succeed in rebutting this presumption and proving that the plaintiffs do not in fact hold sufficient rights to bring suit.  *See, e.g.*, *id.* at 573 ("the presumption of validity has been rebutted"); *Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*, 549 F. App'x 913, 919 (11th Cir. 2013) (defendant "rebutted the presumption of validity"); *Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, 133 F. Supp. 3d 527, 536 (E.D.N.Y. 2015) (same).  For instance, in *Princeton Payment Solutions*, the Eastern District of Virginia granted

summary judgment to the defendant in an infringement suit, concluding that notwithstanding this presumption on validity, the actual assignment "agreements" between the original author and the plaintiff did *not* suffice to validly convey the ownership rights to the plaintiff in most versions of software in suit.  2014 WL 4104170, at *4.  In doing so, the court cautioned that "the Copyright Office's well-known 'practice of summarily issuing registrations . . . counsels against placing too much weight on registrations as proof of a valid copyright.'"  *Id.* (quoting *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010)).  Instead, courts must "assess other relevant indicia of ownership, such as the parties' intent and the terms of transfer agreements and other documents establishing a chain of title."  *Id.*

Unsurprisingly, given this legal framework, courts routinely compel production of documents concerning copyright ownership from plaintiffs in infringement cases, beyond mere copyright registrations.  For instance, in *Arista Records LLC v. Myxer Inc.*, the court compelled production of plaintiffs' "[c]hain of title documents" concerning plaintiffs' "ownership of the sound recordings identified on Schedule A of the First Amended Complaint, including work-for-hire agreements and assignment agreements."  No. CV 08-3935, 2009 U.S. Dist. LEXIS 132668, at *1-2 (C.D. Cal. Nov. 30, 2009) (attached hereto as Exhibit 7).  The court reasoned that this "enable[s] defendant to test plaintiffs' assertion of ownership," and without this discovery, "the presumption of ownership . . . would effectively be irrebuttable."  *Id.*  Similarly, in *ALS Scan, Inc. v. Cloudflare, Inc*., which, like this case, was a Digital Millennium Copyright Act ("DMCA") case brought against an online service provider based on alleged third-party acts of infringement, the court compelled production of not just "the deposit copies for [plaintiff's] [copyright] registrations and applications," but also "all licenses, assignments, work-for-hire agreements, employee agreements, or other documents that establish the source of [plaintiff's] exclusive rights to the

10

copyrighted works." No. 2:16-CV-05051-GW-AFM, 2017 WL 4769435, at *1 (C.D. Cal. June 28, 2017). The Court granted discovery on this "complete chain of title information for each copyrighted work," including "all information relating to [plaintiff's] licenses, assignments, work-for-hire agreements . . . or otherwise relating to its exclusive rights to the copyrighted works." *Id.*

In *Tapscan, Inc. v. Friberg*, the court compelled discovery on "any transfer, assignment or license" of the copyright in suit. No. 04-696 DB, 2005 WL 8174972, at *2 (D. Utah June 21, 2005). "Defendant is entitled to rebut [the] presumption" of validity through discovery: "If Plaintiff[s] transferred or assigned some of its rights in the copyright . . . then Plaintiff[s] may not have standing to bring this action." *Id.* Likewise, in *In re Napster, Inc. Copyright Litigation*, the court compelled discovery with respect to the plaintiff record companies' "agreements" with the authors of their works. 191 F. Supp. 2d 1087, 1099-1100 (N.D. Cal. 2002). While acknowledging the "presumption of validity" in copyright registrations, the Court explained that "refusing to allow any discovery on the issue of ownership converts the presumption of ownership into an irrebuttable one." *Id.* at 1100. And in *Monge v. Maya Magazines, Inc.*, the court compelled discovery on the "chain of title of the copyrights," and "contractual relationship" between the creators of the copyrighted works and their employers, as "relevant and discoverable." No. 2:10-CV-00230-RCJ-PA, 2010 WL 2776328, at *2, 4-5 (D. Nev. July 14, 2010).

So too here. As identified above in Shopify's description of its discovery requests, and as detailed further below, Shopify designed its RFPs to elicit exactly the types of ownership information that is relevant to determine Plaintiffs' statutory standing to sue.

In addition to refusing to produce evidence of their actual ownership of the Works, Plaintiffs have also objected to searching for or producing any responsive "communications" regarding their ownership interests in the Works. For instance, Plaintiffs have refused to search

11

for or produce any emails expressing concerns by Plaintiffs that they *lacked* sufficient ownership interests in some of their Works, or needed to alter their processes in order to obtain sufficient ownership interests in the Works.  Such communications are basic, fundamental, relevant discovery.

Nor have Plaintiffs offered any specific basis for finding disproportionality or excessive burden, apart from relevance.  When objecting to a discovery request, "conclusory assertions of burden or cost are insufficient." *Alston v. Equifax Info. Servs., LLC*, No. CIV.A. TDC-13-1230, 2015 WL 1807952, at *2 (D. Md. Apr. 17, 2015); *see also Ashmore v. Williams*, No. 8:15-CV-03633-JMC, 2017 WL 2437082, at *4 (D.S.C. June 6, 2017) (same rule applies for objections to proportionality).  Nonetheless, during the meet-and-confer process, Shopify offered Plaintiffs the option of initially producing just a sampling of responsive ownership records, and offered to confer regarding other options to reduce burden.  Plaintiffs rejected these options and instead stood on their objections focusing on relevance.

## C.      There Is Reason To Believe Plaintiffs Do Not Own Their Claimed Copyrights

Even beyond the well-established case law that this fundamental discovery on Plaintiffs' standing to sue is relevant and discoverable, there are additional, specific reasons to believe Shopify will, with the benefit of discovery, be able to rebut Plaintiffs' asserted "presumption of validity" and prove that Plaintiffs' copyright registrations in fact fail to establish their standing to sue on the Copyrighted Works.

### 1.      *Plaintiffs appear to systematically obtain rights from the wrong parties, who cannot effectively grant Plaintiffs any interest in the copyrights*

There is strong evidence from the public record that Plaintiffs are systematically obtaining ownership interests in textbook copyrights from the wrong parties—*i.e.*, from professors that wrote textbooks, *not* the universities that employ them.  If these facts are confirmed through the receipt

of appropriate discovery from Plaintiffs, Shopify intends to prove at summary judgment, or, if necessary, at trial, that Plaintiffs lack standing to sue as to many—and likely most—of the Copyrighted Works in suit.

Educational textbooks—and especially the college and graduate-level textbooks upon which Plaintiffs bring suit here—almost invariably are written by professors in specialized subject areas *who are employed by universities*.  A simple comparison of Plaintiffs' Copyrighted Works with these university professors' publicly available websites confirms that this is true of almost every one of Plaintiffs' Copyrighted Works in suit.[8]  The result of these employment arrangements is that copyright in the Works would generally vest in the *universities*, as employers under the doctrine of "work made for hire," not the professors themselves.

Historically, prior to enactment of the 1976 Copyright Act, there was a common-law "teacher exception," whereby it was widely understood that university professors indeed *did* hold the copyright in all of their intellectual output, even academic articles and textbooks generated as part of their scope of employment for a university.  *See, e.g.*, *Molinelli-Freytes v. Univ. of P.R.*, 792 F. Supp. 2d 164, 166-72 (D.P.R. 2010) (explaining this history at length); *see also, e.g.*, *Sherrill v. Grieves,* 57 Wash. L. Rep. 286 (D.C. 1929) (applying this "teacher exception").

However, the 1976 Copyright Act ended this common-law "teacher exception."  The Act explicitly did away with the common law of copyright, 17 U.S.C. § 301(a), and instead codified the "work made for hire" doctrine.  *Id.* at §§ 101; 201.  Under the 1976 Act, copyright vests in the

---

[8] *See generally* Ex. A to Complaint, Dkt. 1, Ex. A (listing the Copyrighted Works); *compare, e.g.*, *id.* at Entry No. 39 (*American Courts: Process and Policy, 7e)* with Lawrence Baum, Ohio State University, https://polisci.osu.edu/sites/default/files/Baum%20Vita%202019%20Updated_0.doc (reflecting Baum as writer of "the seventh edition of American Courts"); *id.* at Entry No. 694 (*Kinesiology of the Musculoskeletal System, Third Edition*) *with* Donald Neumann, PT, PH.D., FAPTA, Publications, Marquette University https://www.marquette.edu/physical-therapy/directory/documents/neumann-publications.pdf (similar).

employer for a "work created by an employee within the scope of his or her employment."  *Id.*; *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738 (1989).  Accordingly, the "teacher exception" did not "survive[] the enactment of the 1976 Copyright Act."  *Molinelli-Freytes*, 792 F. Supp. 2d at 171-72 (collecting citations).  Scholars concur that the pre-1976 "teacher exception" no longer "exist[s]."  2 William F. Patry, *Patry on Copyright* §5:71 (2010 ed.).

Thus, applying the "work made for hire" doctrine in the Copyright Act, the copyright in textbooks written by full-time university professors during their university employment would generally be owned by the university.  *See id.*; *Molinelli-Freytes*, 792 F. Supp. 2d at 171-72; 17 U.S.C. § 201(b).  "The dispositive issue is whether production of scholarly material is 'within the scope of employment' that is, a part of the job."  Rochelle Cooper Dreyfuss, *The Creative Employee and the Copyright Act of 1976*, 54 U. CHI. L. REV. 590, 596 (1987).  "Since scholarship clearly is a factor in decisions regarding tenure, promotion, salary increases, sabbatical leaves, and reduced teaching loads, scholarly works should now belong to universities rather than to faculty members."  *Id*.  That is, "[w]hen a professor . . . creates a scholarly work as part of her work duties, the default analysis would naturally lead to the conclusion that the resulting article is a work made for hire."  Sara Benson, *"I own it, don't I?" The Rules of Academic Copyright Ownership and You*, 25 COLL. & UNDERGRADUATE LIBRARIES 317, 322 (2017).

But the problem for Plaintiffs is that for the textbooks they publish—including the Copyrighted Works at issue in this case—public sources show that Plaintiffs enter into copyright agreements with the individual professors, and *not* the universities employing them.  *See, e.g.*, *Beacham v. MacMillan, Inc.*, 837 F. Supp. 970, 972 (S.D. Ind. 1993) ("[T]he Beachams entered into a publishing contract with Que [which Macmillan acquired.]"); *Flynn v. McGraw Hill LLC et al.*, 1:21-cv-0614-LGS, Dkt. 91 (S.D.N.Y. Feb. 15, 2022) ¶¶ 13, 48 ("McGraw Hill admits that

Plaintiff Sean Flynn entered into a contract with McGraw Hill and is currently a co-author of *Economics: Principles, Problems, and Policies*"[9] and "McGraw Hill admits that it enters into publishing agreements with academic authors."); *Knox v. Cengage Learning Holdings II, Inc. et al.*, No. 18 Civ. 04292 (GBD) (BCM), Dkt. 7 (S.D.N.Y. July 27, 2018) ¶ 1 ("Defendants admit that Plaintiffs [David Knox and Carolyn Schacht[10]] . . . are parties to publishing agreements with [Cengage Learning, Inc.] regarding [the] textbooks"); *Gitman et al. v. Pearson Education, Inc. et al.*, No. 1:14-cv-08626, Dkt. 39 (S.D.N.Y. Dec. 11, 2015) ¶ 1 (similar[11]).  Accordingly, there is good reason to expect that discovery from Plaintiffs will confirm that they are obtaining ownership rights, if at all, from professors, not from their university employers in which the copyright initially vested under the work-for-hire doctrine.

Of note, even absent the default established by the "work made for hire" doctrine, many universities have express copyright policies establishing that copyrights in textbooks and other scholarly works of their faculty vest in the institution.  Some institutions—including many that employ writers of the Copyrighted Works at issue in this case—*explicitly retain ownership* in professors' "works for hire" through these policies.[12]  And while it is true that some universities

---

[9] *Economics: Principles, Problems, and Policies* is one of the works listed in Ex. A of the Complaint in this action.  Dkt. 1 at 44, 54, 57.

[10] David Knox and Caroline Schact, along with Linda A. Mooney, co-wrote *Understanding Social Problems*; the 9th and 10th editions are listed in Ex. A of the Complaint.  Dkt. 1 at 16.

[11] Lawrence J. Gitman and Michael D. Joehnk wrote multiple works listed in Ex. A of the Complaint including: *Personal Financial Planning, 14e*; *PFIN, 6e*; *Principles of Managerial Finance, Brief 7/E*; and *Fundamentals of Investing, 13/e*.  Dkt. 1 at 13, 90, 81.

[12] *See, e.g.*, *Business and Support Services: Intellectual Property*, Navarro College, https://www.navarrocollege.edu/boardpolicies/section-c/section-co.html  ("The College District shall own any work or work product created by a College District employee in the course and scope of his or her employment, including the right to obtain copyrights."); *Policies of the University of North Texas, Chapter 8 Intellectual Property*, University of North Texas, https://policy.unt.edu/sites/default/files/08.003%20Research%20Intellectual%20Property.pdf ("The University owns all rights, title and interest in and to Intellectual Property developed as

purport to "gift" their copyrights in scholarly works back to their professors in limited circumstances, such policies merely confirm that copyright generally vests in the university in the first instance. More important, such policies are insufficient to support a third party transfer of rights to Plaintiffs. For a "work made for hire" copyright, a transfer cannot be made of the copyright without an "express[]" agreement in a "written instrument signed" *by the employer and employee*. 17 U.S.C. § 201(b). Courts and scholars have therefore concluded that universities' unsigned "gift" policies fail to vest the rights to a "work made for hire" from a university to a professor (much less onward to a third-party publisher). *See, e.g.*, *Molinelli-Freytes v. Univ. of P.R.*, No. 09-1655, 2012 WL 4664599, at *11 (D.P.R. Sept. 30, 2012) (university copyright policy was not a "signed agreement between [the university] and [the professors] as required by § 201(b)"); *Forasté v. Brown Univ.*, 290 F. Supp. 2d 234, 241 (D.R.I. 2003) (copyright policy "fails as a section 204(a) transfer").

Accordingly, full discovery is warranted to test if Plaintiffs have obtained valid rights in the Copyrighted Works from universities. The public record so far indicates that in many, and potentially most cases, Plaintiffs likely failed to have effectively obtained these rights.

### D. Plaintiffs Should Be Compelled to Produce Documents Concerning Their Purported Ownership Interests in the Copyrighted Works

Against this background, there should be no serious question that Shopify is entitled to its requested discovery as to Plaintiffs' purported ownership in the Works in RFPs Nos. 1 to 14.

---

result of the use of University resources or facilities. By accepting employment with or enrollment in the University, or making use of UNT facilities and resources, the Creator agrees to assign and hereby does assign to the University all of his or her rights, title and interest in and to Works Made for Hire, University-Owned Intellectual Property and Sponsor-Supported Intellectual Property."); *Copyright Ownership: Who Owns What?*, Florida State University, https://www.research.fsu.edu/research-offices/oc/fsu-invention-disclosure-form-and-inventor-information/copyrights/ ("If a work is created by an employee in the course of his or her employment, the employer owns the copyright.")

**Chain of Title and Ownership (RFPs Nos. 1-3):** Shopify seeks documents concerning Plaintiffs' "ownership" of the Copyrighted Works, including any "transfer or assignment" of those rights, and Plaintiffs' resultant "ownership percentage" in the Copyrighted Works, along with documents sufficient to show the "chain-of-title" from original rights-holders and resultant "ownership percentage" held by nonparties.  Exs. 1-5 at 6-8 (RFP Nos. 1-3).  These "chain of title" documents will "enable defendant to test plaintiffs' assertion of ownership."  *Arista*, 2009 U.S. Dist. LEXIS 132668, at *1-2; *see also ALS Scan, Inc.,* 2017 WL 4769435, at *1 (compelling "all licenses, assignments, work-for-hire agreements, employee agreements, or other documents that establish the source of [plaintiff's] exclusive rights to the copyrighted works," *i.e.*, "complete chain of title information"); *Monge*, 2010 WL 2776328, at *2 (compelling discovery of "chain of title").  This information is particularly important in light of the serious challenges Plaintiffs face in establishing they obtained ownership rights from the original rights-holders, *i.e.*, from universities rather than professors.

**Licenses and Agreements (RFPs Nos. 4-5):**   Shopify seeks "licenses and other agreements" concerning Plaintiffs' Copyrighted Works, including documents concerning these licenses or other agreements.  Exs. 1-5 at 9-11 (RFP Nos. 4-5).  These documents, encompassing evidence of any "transfer, assignment or license" of the Copyrighted Works, will allow the Court to determine the "merit" of Shopify's "ownership challenges" based on record evidence.  *Napster*, 191 F. Supp. 2d at 1109; *see also Tapscan*, 2005 WL 8174972, at *2  (compelling discovery on any "transfer, assignment or license"); *Arista*, 2009 U.S. Dist. LEXIS 132668, at *4 (compelling production of "assignment agreements"); *ALS Scan, Inc.*, 2017 WL 4769435, at *1 (compelling production of "all licenses" and "assignments").

In addition, documents concerning Plaintiffs' "licenses and agreements" of the

Copyrighted Works *with third parties other than the authors* are also relevant and discoverable for two other, independent reasons.  First, to the extent Plaintiffs have in fact licensed the Copyrighted Works to third parties, such as authorized distributors, some of the merchants who allegedly engaged in copyright infringement using Shopify's platform may have *obtained valid licenses* to the Copyrighted Works from such distributors or third parties.  That would obviously defeat Plaintiffs' claims of infringement.  Second, and as detailed below (*infra* at 20-24), Plaintiffs' third-party licenses, including resultant licensing fees, are highly relevant to determining Plaintiffs alleged losses as the result of copyright infringement and the scope of their alleged harm.

**Relationships with Authors and Owners (RFPs 10-12):**  Shopify seeks documents sufficient to show the "author(s) for each Copyrighted Work," documents "Concerning Your relationship with the author(s)," including "Communications with the author(s)," and Documents "between You and any other copyright owner(s) Concerning the Copyrighted Works."  Exs. 1-5 at 17-19 (RFP Nos. 17-19).  As Plaintiffs are not generally the original authors of the Copyrighted Works, their assertion of ownership hinges on their relationship with the authors of the Copyrighted Works, including communications reflecting *who* has purported to transfer rights to Plaintiffs, and whether such transfers were in fact authorized (*e.g.*, by a university).  *See, e.g.*, *ALS Scan, Inc.*, 2017 WL 4769435, at *1' *Napster*, 191 F. Supp. 2d at 1098.  Such documents identifying the circumstances of transfers are relevant.  So too are communications:  For example, a professor requesting to a Plaintiff that "we need to re-write our publishing agreement, as my university is now claiming ownership of the book," would be relevant.

**Works for Hire (RFP 13-14):**  Shopify seeks documents sufficient to show if any of the Copyrighted Works are "Works Made For Hire," and for those Copyrighted Works, documents concerning the "Work Made for Hire agreement with the author(s)," including any "employment

agreement" or "license."  Exs. 1-5 at 20-21 (RFP Nos. 13-14).  Documents related to whether the Copyrighted Works are works made for hire are crucial in determining whether Plaintiffs own the Copyrighted Works, as they determine which entity owned the Copyrighted Works when they were first authored, and thus whether Plaintiffs obtained rights from the correct party (*i.e.*, university professors).  These relevant documents should be produced.  *See Arista*, 2009 U.S. Dist. LEXIS 132668, at *4 (compelling production of "work-for-hire agreements"); *ALS Scan, Inc.*, 2017 WL 4769435, at *1 (compelling production of "all . . . work-for-hire agreements" and "employee agreements"); *Napster,* 191 F. Supp. 2d at 1100-01 (compelling "all documentation relevant to [Plaintiffs'] ownership of the works listed as 'works for hire'").

**Registration-Related Documents and Information (RFPs 6-9):**  Shopify seeks documents concerning Plaintiffs' "registration of each . . . Work," including documents submitted or received from the government, as well as documents concerning Plaintiffs "first publication" of each Work. *See* Exs. 1-5 at 14-16, RFP Nos. 6-9.  Shopify seeks this information, rather than just the self-certified summary records of registrations that Plaintiffs have offered to produce.  *See, e.g.*, Ex. 6 (exemplars of registration records).  This information, to determine whether Plaintiffs' registrations are in fact valid and entitle them to standing to sue for copyright infringement, is relevant and discoverable.  *See, e.g.*, *ALS Scan*, 2017 WL 4769435, at *1 (compelling production of "CDs or DVDs that contain the deposit copies for ALS's registrations and applications"); *Vinteractive, LLC v. Optirev, LLC*, No. 15-CV-02903-SI, 2016 WL 3361810, at *2 (N.D. Cal. June 17, 2016) ("The Court finds that exact copies of the applications, deposited works, registrations, and correspondence are relevant to . . . [plaintiff's] claims" and "the Court finds it appropriate to order [plaintiff] to obtain the complete file from the Copyright Office.").  This information will also allow Shopify to evaluate the scope of each copyright—which is determined by the deposit

copies of the Copyrighted Works on file with the Copyright Office—and whether Plaintiffs can actually prove that any materials within that scope have actually been sold through Shopify's platform. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (explaining the "deposit copy circumscribes the scope of the copyright."). In addition, the law only affords copyright protection to works "first published in the United States" or a foreign nation that "is a treaty party," 17 U.S.C. § 104. Hence, the requested documents would allow Shopify to evaluate both the validity of the underlying copyrights, and whether Plaintiffs can prove that any acts of infringement within the scope of their alleged copyrights actually occurred.[13]

For all of these reasons, Plaintiffs (except Macmillan Holdings, LLC and Elsevier B.V., *see supra* n.5) should be compelled to produce documents responsive to RFPs Nos. 1 to 14.

## II.  PLAINTIFFS MUST PRODUCE DOCUMENTS CONCERNING THEIR PURPORTED HARMS (RFPS 21, 22, 24, 45).

### A.  Plaintiffs Have Refused to Produce Documents on Their Purported Harms

Shopify requested documents concerning Plaintiffs' alleged harms as result of alleged infringement of the Copyrighted Works on Shopify's platforms. These RFPs relate to:

- **Valuation of, and Revenue and Royalties Derived from Each Copyrighted Work (RFP Nos. 21, 22, 24)**: Documents concerning Plaintiffs' "efforts" to "market," "sell," "distribute," "or otherwise exploit each Copyrighted Work," including documents "sufficient to show the revenue [Plaintiffs] receive for each" such "exploitation" of each Work; documents concerning "royalty distribution resulting" from all such "exploitation" of the Copyrighted Works; and documents sufficient to show Plaintiffs "valuation" of each Copyrighted Work. Exs. 1-5 at

---

[13] For instance, if the work was published in a non-treaty party country, the copyright would be invalid, and claims on that Work would be subject to judgment on the pleadings. *Cf. Sari v. America's Home Place, Inc.*, 129 F. Supp. 3d 317, 326 (E.D. Va. 2015) (dismissing complaint).

28-33 (RFP Nos. 21, 22, 24).

- **Effect of the Alleged Infringement on the Value of Each Work (RFP Nos. 45):** Documents concerning Plaintiffs' contention that they "suffered financial harm from the alleged infringement of [each] Copyrighted Work." Exs. 1-5 at 53-54 (RFP No. 45).

Plaintiffs objected to these RFPs primarily on the grounds of relevance, burden and proportionality—refusing to produce essentially any responsive documents. Exs. 1-5 at 29-32, 53-54 (Plaintiffs' Responses to Shopify's RFP Nos. 21, 22, 24, 45).[14]  Specifically, Plaintiffs have agreed to produce only documents sufficient to show "prices" at which the Copyrighted Works were sold, but notably, not the revenues from such sales (which are a function of prices and volumes), royalties, profits, or valuations of the Copyrighted Works.  *See* Exs. 1-5 at 29-31 (Plaintiffs' Response to Shopify's RFP No. 22).  Plaintiffs assert that their election of statutory damages means that any further discovery into their actual harm is irrelevant.  *See* Exs. 1-5 at 29-32, 53-54 (Plaintiffs' Responses to Shopify's RFP Nos. 21, 22, 24, 45).  Accordingly, Plaintiffs have not agreed to provide any of this requested discovery, despite seeking damages in the tens or hundreds of millions of dollars.

### B.    Documents Concerning Plaintiffs' Purported Harms Are Relevant And Proportionate To The Case

Plaintiffs must produce discovery on their alleged damages.  *See* Ex. 1-5 at 28-33, 53-54 (Plaintiffs' Responses to Shopify's RFP Nos. 21, 22, 24, 45).  Plaintiffs object to these RFPs

---

[14] Again, Plaintiffs Elsevier B.V. and MacMillan Holdings are differently situated.  As to the RFPs Nos. 21, 22, 24, and 45, Elsevier B.V. refused to produce any responsive documents, stating that "Plaintiff [Elsevier B.V.] has asserted only a claim for trademark infringement," not copyright infringement.  MacMillan Holdings responded to RFPs Nos. 21, 22, 24, and 45, stating that "based on information currently available to it, it is not aware of any responsive, non-privileged documents in its possession, custody, or control."  Accordingly, Shopify does *not* currently move to compel production of documents from these two plaintiffs on RFPs Nos. 21, 22, 24, or 45.

related to damages resulting from the alleged infringement based primarily on relevance, burden, and proportionality.  *Id*.  Each of these objections fails.

All of these RFPs are directly relevant to Plaintiffs' alleged harms and damages—notwithstanding that Plaintiff have elected statutory damages, rather than actual damages, for alleged infringement of the Copyrighted Works.  *See* Ex. 1-5 at 28-33, 53-54 (Plaintiffs' Responses to Shopify's RFP No. 21, 22, 24, 45); Ex. 8 at 1 (Plaintiffs' "Notice of Election of Statutory Damages").  Plaintiffs' refusal to produce evidence concerning their alleged harms ignores the law on the issue.  To be sure, Plaintiffs can elect to pursue statutory damages in lieu of actual damages under the Copyright Act, as they have done.  *See* 17 U.S.C. § 504(a).  However, a district court "enjoys wide discretion" to set the amount of statutory damage based on multiple factors, including "plaintiff's actual losses," including any lost revenue.  *ME2 Prods., Inc. v. Fox*, No. 3:17-cv-00057, 2018 WL 1470251, at *2 (E.D. Va. Mar. 26, 2018).

Indeed, in *ME2*, the court awarded the minimum statutory damages of $750 where plaintiffs fail to show any actual losses in connection with the copyright infringement.  *See id*.  Discovery on actual damages is therefore squarely relevant and discoverable *even when the party has elected statutory damages*:  If a party seeks anything more than "the minimum in statutory damages" of $750 per infringed work, then "the case law holding that statutory damages should bear some kind of relationship to actual damages makes Plaintiffs' profit information (and the reasons for the profits) relevant evidence that [defendant] may seek in discovery."  *Mon Cheri Bridals, LLC v. Cloudflare, Inc*., No. 19-CV-01356-VC (TSH), 2021 WL 1222492, at *2 (N.D. Cal. Apr. 1, 2021).  In that DMCA case brought against an online service provider, as here, the plaintiffs had "not committed to seeking only minimum statutory damages" of $750 per work, and so even if Plaintiffs did "not intend to [] submit evidence of lost profits" at trial "in order to seek

statutory damages," the defendant still was "entitled to present evidence that Plaintiffs did not suffer any lost profits to argue that Plaintiffs are seeking a windfall." *Id.*; *see also Oppenheimer v. Episcopal Communicators, Inc*., No. 1:19-CV-00282-MR, 2020 WL 4732238, at *3 (W.D.N.C. Aug. 14, 2020) (in copyright infringement suit, "[t]he Plaintiff's . . . revenue [from the copyrights] . . . [is] relevant to the statutory damages at issue"); *Kleiner v. Burns*, No. 00-2160-JWL, 2000 WL 1909470, at *1 (D. Kan. Dec. 22, 2000) (even in cases seeking statutory damages, a plaintiff must produce "a computation of damages and all evidence supporting such damage").  And at least one court in this Circuit has also considered whether a proposed valuation of a copyrighted work accurately reflected the "revenue lost due to the Defendants' copyright infringement" by evaluating whether that valuation "accurately reflect[s] the price that the Defendants would have *paid to license the Work*" in its statutory damages analysis.  *See Oppenheimer v. Griffin*, No. 1:18-cv-00272-MR-WCM, 2019 WL 7373784, at *6 (W.D.N.C. Dec. 31, 2019) (emphasis added).

Plaintiffs have refused to provide any meaningful documents related to these statutory damages factors, including their revenues and royalties on the Copyrighted Works, their valuation of the Copyrighted Works, and the amount by which those amounts have declined due to the alleged infringement.  *See* Ex. 1-5 at 28-33, 53-54 (Response to Shopify's RFP Nos. 21, 22, 24, 45).  And the limited information Plaintiffs agreed to produce—just historical "prices," like a "price" of $129 for a single textbook, without information on Plaintiffs' revenues (which are a consequence of sales volumes), royalties, valuations, expenses, profits, or prior or future diminution of the same—fails to allow Shopify or the Court to evaluate the claimed amount of statutory damages under the relevant factors, or assess whether Plaintiffs could obtain an improper "windfall."  *Mon Cheri Bridals*, 2021 WL 1222492, at *2.

23

*Finally*, though they lodge objections based on burden and proportionality, Plaintiffs make no effort to state with any specificity the burden of producing the responsive records concerning the harms for which they seek statutory damages Copyrighted Work.  *See* Exs. 1-5 at 29-32, 53-54 (Plaintiffs' Responses to Shopify's RFP Nos. 21, 22, 24, 45).  Plaintiffs' boilerplate objections should be rejected on that basis alone, *see supra* at 4-5 (collecting cases).  That is particularly true in this case, where, Plaintiffs have chosen to bring this suit as to over 3,400 Copyrighted Works, seeking millions of dollars in damages.  Accordingly, any burden of discovery on damages is necessary to determine their claims and eminently proportional.  *See supra* at 22-23 (collecting cases); *Mon Cheri Bridals, LLC*, 2021 WL 1222492, at *2; *ALS Scan*, 2017 WL 4769435, at *2.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an Order compelling Plaintiffs Bedford, Freeman & Worth Publishing Group, LLC, Cengage Learning, Inc., Elsevier Inc., McGraw Hill LLC, and Pearson Education, Inc. to immediately produce all non-privileged documents responsive to Shopify's Requests for Production Nos. 1 to 14, 21, 22, 24, and 45.

Dated: April 15, 2022

Respectfully submitted,

By: */s/ David L. Johnson*

David L. Johnson (VSB No. 89289)
david.johnson@lw.com
Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Sarah A. Tomkowiak (*pro hac vice*)
sarah.tomkowiak@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
Nicholas L. Schlossman (*pro hac vice*)
nicholas.schlossman@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
Joseph R. Wetzel (*pro hac vice*)
joe.wetzel@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Allison L. Stillman (*pro hac vice*)
alli.stillman@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
Elizabeth A. Greenman (*pro hac vice*)
elizabeth.greenman@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5000

Facsimile: (424) 653-5501

*Attorneys for Defendant Shopify, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2022, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

*/s/ David L. Johnson*

David L. Johnson (VSB No. 89289)
