# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

BEDFORD, FREEMAN & WORTH
PUBLISHING GROUP, LLC d/b/a
MACMILLAN LEARNING, *et al.*,

      Plaintiffs,

v.

SHOPIFY INC., *et al.*,

      Defendant.

Case No. 1:21-cv-01340-CMH-JFA

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL</u>

## TABLE OF CONTENTS

**Introduction** ............................................................................................................. 1

**Background** ............................................................................................................. 3

    A.   Factual background ...................................................................................... 3

    C.   Shopify refuses to provide critical discovery.......................................... 5

**Argument** ............................................................................................................. 7

    I.   Shopify cannot restrict its discovery responses to the statute of limitations period ...............................................................................................7

        a.   The statute of limitations period does not limit the scope of relevant discovery ...................................................................................... 7

        b.   Pre-December 1, 2018 documents bear on Shopify's knowledge of infringement and the reasonableness of Shopify's implementation of its repeat infringer policy ....................................................................... 9

        c.   Discovery Requests at Issue .................................................... 10

    II.   Shopify must produce evidence concerning its overall infringement program 13

        a.   By asserting the DMCA safe harbor, Shopify has put its overall infringement program at issue .................................................. 13

        d.   Shopify must produce critical information showing the implementation of its infringement policy. .................................................................... 15

**Conclusion** ......................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Cases**

*BMG Rts. Mgmt. (US) LLC et al. v. Cox Enters., Inc., et al.*,

No. 14-cv-1611 (E.D. Va. Aug. 21, 2018)........................................................ passim

*Capitol Recs., LLC v. Escape Media Grp., Inc.*,

No. 12-cv-6646 AJN, 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015)................................. 13, 16

*CoStar Grp., Inc. v. LoopNet, Inc.*,

373 F.3d 544 (4th Cir. 2004) ................................................................... 4, 9

*Horton v. Love's Travel Stops & Country Stores, Inc.*,

No. 19-cv-1193, 2021 WL 7162555 (M.D.N.C. Mar. 29, 2021) ............................................ 7

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,

118 F.3d 199 (4th Cir. 1997) ...................................................................... 5

*Perfect 10, Inc. v. CCBill LLC*,

488 F.3d 1102 (9th Cir. 2007) ......................................................... 4, 13, 14

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*,

673 F.3d 294 (4th Cir. 2012) ...................................................................... 5

*Santiago v. S. Health Partners*,

No. 15-cv-589, 2016 WL 4435229 (M.D.N.C. Aug. 19, 2016)................................................ 7

*Seide v. Level-(1) Glob. Sols., LLC*,

No. 16 C 2975, 2016 WL 4206076 (N.D. Ill. Aug. 10, 2016) ................................................ 14

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,

74 F.3d 488 (4th Cir. 1996) ................................................................ 5, 15

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,

   No. A-17-CA-365-LY, 2018 WL 4627276 (W.D. Tex. Sept. 26, 2018).....................................8

**Statutes**

15 U.S.C § 1114(1)(a) ......................................................................................................5

15 U.S.C. § 1115(a)(9) .....................................................................................................5

17 U.S.C. § 504(c)(1)–(2) .................................................................................................5

17 U.S.C. § 512(c) ........................................................................................................ 7, 9

17 U.S.C. § 512(i) ........................................................................................................ 4, 13

6 Moore's Federal Practice - Civil § 26.45[5] (2022) ....................................................7

8 Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2008.5 and n.4 (3d ed.) ..............7

Marcus, Fed. Prac. & Proc. Civ. § 2008.5 ...................................................................8

**Rules**

Fed. R. Civ. P. 26(b)(1) .....................................................................................................8

Rule 26(b)(2)(C) ...............................................................................................................8

**INTRODUCTION**

This action concerns Plaintiffs' claims against Shopify for secondary copyright and trademark infringement. Plaintiffs are leading educational publishers. They create and distribute innovative, high-quality textbooks, among other educational materials. Shopify is a provider of e-commerce services. Shopify has assisted numerous known infringers to market, sell, and deliver pirated copies of Plaintiffs' copyrighted works bearing Plaintiffs' trademarks. Starting as early as 2017, Plaintiffs informed Shopify that its platform was being used to sell pirated copies of Plaintiffs' intellectual property. In the years that followed, Plaintiffs notified Shopify of many specific instances of infringement, identifying pirate ebook storefronts and representative infringements on those storefronts. Yet Shopify continued to foster the infringement.

Plaintiffs hereby move this Court to compel Shopify to produce two categories of clearly relevant documents and information that Shopify refuses to provide.

*First*, Shopify objects to producing almost all documents and information in its possession concerning events prior to December 1, 2018, which Shopify contends is the start of the statute of limitations period. Shopify cannot limit its responses in this way. The statute of limitations does not define the timeframe for discovery, *i.e.*, when there is information likely to lead to admissible evidence. For certain requests, Shopify's production must pre-date the limitations period. For example, even where the communications predate December 1, 2018, Shopify must produce documents that show what Shopify did and said in response to Plaintiffs' letters informing Shopify that Shopify merchants were infringing Plaintiffs' intellectual property. Shopify must produce its communications with the infringing sellers identified in Plaintiffs' notices, as well as Shopify's related internal correspondence, even where these communications predate December 1, 2018. Likewise, Shopify must produce records of infringement notices from others concerning the pirate

1

sellers identified in Plaintiffs' notices, even if those notices were sent prior to December 1, 2018. In addition, where Shopify adopted policies and procedures for addressing copyright and trademark infringement prior to December 1, 2018 that were still in effect after that date, Shopify must produce the communications and documents relating to formulating and adopting those policies, rolling them out, and interpreting them.

*Second*, Shopify has invoked the safe-harbor defense under Section 512 of the Digital Millennium Copyright Act, which requires Shopify to demonstrate that it reasonably implemented a policy of terminating repeat infringers and communicated that policy to its users. Yet, despite asserting this defense, Shopify refuses to provide discovery directly related to the defense. Courts unanimously agree that determining whether a service provider has reasonably implemented its policy requires examining that policy's operation broadly, not merely as to the specific infringers and infringements underlying the claims initially pled in a particular suit. In the key areas identified herein, Shopify must be precluded from limiting its response to the particular infringers and works that were the subject of Plaintiffs' notices.

Shopify's positions are meritless. The discovery Plaintiffs seek is core to the case, inarguably relevant both to Plaintiffs' claims and to Shopify's defenses. That substantial relevance outweighs any burden on Shopify. This Court should grant Plaintiffs' motion to compel and order: 1) that Shopify must provide discovery from January 1, 2017 with respect to the particular requests identified below; and 2) that for particular requests, Shopify's response must account for its overall policies for addressing infringement and repeat infringers, not merely how Shopify acted as to the specific direct infringers and infringements identified in Plaintiffs' notices.

## BACKGROUND

### A.  Factual background

Shopify is an e-commerce platform that allows individual retailers to set up online stores to sell products. Compl. ¶ 29. Shopify provides these sellers with "everything [they] need to run a successful online store", including an online storefront, a payment processor, a front and back office, a customer service team, marketing services, and search engine optimization. *Id.* at ¶¶ 29–30, 32. In particular, Shopify provides services to sellers of digital copies of books. *Id.* at ¶ 34. Shopify provides a system for storing and sending digital files and promotes to its merchants digital educational products like ebooks as one of the most in-demand types of products on its platform. *Id.* at ¶ 34. As Shopify's marketing materials explain, once a merchant sets up a Shopify storefront to sell digital books, "[t]here's no limit to how many products you can sell. No inventory. No manufacturers. No shipping or logistics. Just market the products. When a customer purchases a digital product, it's delivered instantly, without your help." *Id.* at ¶ 34. Unfortunately, numerous merchants use Shopify's services to sell pirated digital copies of Plaintiffs' textbooks and related pedagogical materials without authorization, thus infringing Plaintiffs' copyrights and trademarks. *Id.* at ¶ 38.

Consequently, hundreds of Shopify merchants sell illegal copies of Plaintiffs' copyrighted works which bear their trademarks. *Id.* at ¶ 57. For more than four years before filing the instant suit, Plaintiffs properly notified Shopify of thousands of instances of infringement by merchants on its platform. *Id.* at ¶¶ 6, 57. Rather than meeting its obligations, Shopify largely buried its head in the sand. *Id.* ¶ 62.

With no other recourse, Plaintiffs brought the instant lawsuit, alleging three counts: contributory copyright infringement; vicarious copyright infringement; and contributory trademark infringement. *Id.* at ¶¶ 81–103.

**B. Legal background**

Four features of this case are important to the discovery at issue. First, Shopify will be contributorily liable for its subscribers' infringement if "with knowledge of the infringing activity," Shopify "materially contribute[d] to the infringing conduct" of its subscribers. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004). The Fourth Circuit has explained that contributory infringement requires knowledge of "*specific* instances of infringement," such that Shopify could identify "*which ones* [of its subscribers] were infringing" Plaintiffs' copyrights, and "*do* something about it." *BMG Rts. Mgmt. LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 311–12 (4th Cir. 2018).

Second, Shopify has asserted that it is entitled to the safe-harbor defense of Section 512 of the Digital Millennium Copyright Act ("DMCA"). Answer at 37, ECF No. 30 (Second Affirmative Defense). That safe harbor protects a qualifying service provider from monetary liability for secondary infringement if it meets certain requirements. To be eligible for the safe harbor, the defendant must have "adopted and reasonably implemented, and inform[ed] subscribers and account holders … of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders … who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Shopify must show that it reasonably implemented its repeat infringer policy writ large, not just that it dealt reasonably with Plaintiffs' infringement notices. *See*, *e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) ("The district court in this case did not consider any evidence relating to copyright holders other than [the plaintiff]. We remand for determination of whether [the

4

defendant] implemented its repeat infringer policy in an unreasonable manner with respect to any copyright holder other than [the plaintiff]."); *see also* Part II.a, *infra*.

Third, Plaintiffs have elected statutory damages. Statutory damages permit the jury to consider a number of factors when determining an appropriate award, including whether the defendant has a history of copyright infringement, the need for deterrence or rehabilitation, and misleading or false statements by the defendant. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996).

Finally, statutory damages can be enhanced if the defendant is found to have acted willfully. 17 U.S.C. § 504(c)(1)–(2). "[C]opyright infringement is willful if the defendant recklessly disregards a copyright holder's rights." *BMG Rts. Mgmt.*, 881 F.3d at 312.

### C.  Shopify refuses to provide critical discovery

For nearly all of its responses, Shopify has refused to produce documents or information dated prior to December 1, 2018.[1] In the instant motion, Plaintiffs move to compel Shopify to

---

[1] Shopify contends that December 1, 2018 is the start of the statute of limitations period for Plaintiffs' claims. Shopify ignores that the statute of limitations does not necessarily bar an infringement that began prior to December 1, 2018. For copyright infringement claims, courts apply the discovery rule when considering a statute of limitations defense. *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997). Thus, if a copyright infringement began in 2017, but plaintiffs did not discover it until 2020, the statute of limitations would not bar the claim. As to the trademark infringement claims, the Lanham Act does not provide a statute of limitations for infringement claims brought under 15 U.S.C § 1114(1)(a). Instead, the Act directs courts to apply equitable principles to determine whether a claim is timely. 15 U.S.C. § 1115(a)(9). In the Fourth Circuit, this involves an analysis of "at least" three factors, including "whether the owner of the mark knew of the infringing use." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012). Thus, an infringement of a trademark prior to December 1, 2018 might well be actionable in the instant suit. The Court need not resolve this issue at this time because, in any event, the statute of limitations does not limit the relevant time period for discovery. *See* Part I.**Error! Reference source not found.**, *infra*.

expand that period to January 1, 2017 with respect to six Requests for Production and six

Interrogatories. Those items call for, in relevant part:

- <u>RFP 6:</u> documents "concerning Your strategies, approaches, policies, or procedures concerning copyright or trademark infringement by Shopify Merchants, including all versions and drafts of Your Repeat Infringer Policy."

- <u>RFP 11:</u> documents concerning "any system used for tracking Infringement Notices, including documents describing the technical abilities of that system to track violations of any infringement-related policy by its users".

- <u>RFP 14:</u> "summaries, reports, [and] analyses, concerning Your handling of and response to Infringement Notices".

- <u>RFP 20, 21, ROGs 9, 10:</u> instances where Shopify rejected a DMCA notice because the notice was sent via email, or because the notice identified multiple Shopify merchants.

- <u>RFP 25:</u> "All documents and internal communications discussing any Plaintiff Infringement Notice".

- <u>RFP 30:</u> documents "concerning any warnings, ratings, risk assessments, flags, or other fraud, security or infringement risk concerning any Accused Shopify Merchant."

- <u>ROG 1&2:</u> identify persons "with responsibility for designing, developing, or implementing Your policies, procedures, and practices for addressing copyright [and trademark] violations by Shopify Merchants".

- <u>ROG 3:</u> identify persons "with responsibility for designing, developing, or implementing any system You used for tracking Infringement Notices or with knowledge of the technical abilities of any system You used to receive and process Infringement Notices".

*See* Exs. 1, 2, Shopify Responses to Plaintiffs' First Set of Requests for Production and

Interrogatories. For all these requests, Shopify has refused to provide documents or information

from prior to December 1, 2018.

Shopify also has limited its responses to several of Plaintiffs' requests to the specific acts

of infringement at issue in this suit, rather than Shopify's infringement policies and practices

generally. Those requests call for:

- <u>RFP 20, 21</u>; <u>ROGs 9, 10</u>: Instances where Shopify rejected an infringement notice because the notice was sent via email, or because it identified multiple storefronts.[2]

- <u>RFP 17</u>: Reactivation of a terminated account.

Neither of Shopify's positions has merit.

## <u>ARGUMENT</u>

### I.   <u>Shopify cannot restrict its discovery responses to the statute of limitations period</u>

#### a.   **The statute of limitations period does not limit the scope of relevant discovery**

There is no general rule that the statute of limitations period defines the discovery period. *See* 8 RICHARD L. MARCUS, FED. PRAC. & PROC. CIV. § 2008.5 and n.4 (3d ed.) (stating that "it is impossible to offer a general rule about the time period suitable for attention during discovery" and citing cases allowing pre-limitations period discovery). To the contrary, courts regularly permit discovery into events occurring outside the statute of limitations period. *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 19-cv-1193, 2021 WL 7162555, at *4 (M.D.N.C. Mar. 29, 2021) ("[W]hen setting the temporal scope of discovery, a Court is not restrained to the limitations period."); *Santiago v. S. Health Partners*, No. 15-cv-589, 2016 WL 4435229, at *4 (M.D.N.C. Aug. 19, 2016) ("The statute of limitations does not provide a hard-and-fast boundary for purposes of defining the scope of permissible discovery."); *see also* 6 MOORE'S FEDERAL PRACTICE - CIVIL § 26.45[5] (2022) ("The time bar of an applicable statute of limitations for the filing of an action

---

[2] The DMCA does not allow a service provider to reject notices that are sent via email or that identify multiple instances of infringement. 17 U.S.C. § 512(c)(3) sets out the requirements for a notice. The Act envisions that a notice may identify multiple instances of infringement. *Id.* (a notice must identify "the copyrighted work claimed to have been infringed, or, *if multiple copyrighted works at a single online site are covered by a single notification*, a representative list of such works at that site.") (emphasis added). And it envisions that notices will be sent via email. 17 U.S.C. § 512(c)(2)(A) (requiring the service provider to establish a designated agent and to make available the agent's "name, address, phone number, and *electronic mail address*") (emphasis added).

based on particular events does not necessarily foreclose discovery of information concerning those events.").

Instead, the relevant inquiry is whether documents from outside the limitations period are "relevant to any party's claim or defense and proportional to the needs of the case". FED. R. CIV. P. 26(b)(1); *see also* MARCUS, FED. PRAC. & PROC. CIV. § 2008.5 (observing that "disputes about the time limit for the scope of discovery in a given case must be determined by reference to the general principles of Rule 26(b)(2)(C)").

Courts applying these principles in secondary liability copyright infringement cases like this one routinely permit pre-limitations period discovery. For example, one court rejected the defendant's attempt to withhold infringement polices that predated the statute of limitations period, holding that "information on how [the defendant] handled DMCA issues prior to [the limitations period] could be relevant to demonstrating [the defendant's] knowledge of its obligations under the statute, and could be circumstantial evidence that [the defendant] was aware of infringing conduct on its system, and actually had taken action on it before the time frame at issue here." *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY, 2018 WL 4627276, at *3 (W.D. Tex. Sept. 26, 2018).

Likewise, a court in this district rejected the same argument that Shopify makes here, and held that emails from prior to the statute of limitations period not only were discoverable but were admissible at trial, as these emails could show that the defendant willfully blinded itself to infringement notices:

> Cox's internal policies and procedures related to infringement were of course established prior to [the beginning of the limitations period], and it is those policies and procedures that Cox applied when it received notices of infringement for BMG's work at issue. The emails are therefore relevant to the question of whether Cox blinded itself to infringement of specific BMG works.

*BMG Rts. Mgmt. (US) LLC et al. v. Cox Enters., Inc., et al.*, No. 14-cv-1611 at 2 (E.D. Va. Aug. 21, 2018), ECF No. 1018.

> **b. Pre-December 1, 2018 documents bear on Shopify's knowledge of infringement and the reasonableness of Shopify's implementation of its repeat infringer policy**

Documents from prior to December 1, 2018 are discoverable because they are relevant both to Shopify's knowledge of infringement on its platform and to the reasonableness of Shopify's implementation of its repeat infringer policy.

As to knowledge, proving contributory infringement requires showing that the defendant had knowledge of the alleged infringement or was willfully blind to it. *CoStar Grp.*, 373 F.3d at 550; *BMG Rts. Mgmt.*, 881 F.3d at 308. To qualify for the DMCA safe-harbor defense, Shopify must show that Shopify lacked knowledge of the infringing activity or of "facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(i)–(ii). Shopify's knowledge of infringement is, in other words, critically important. Shopify's knowledge, to be explored in discovery, encompasses Shopify's knowledge of the particular instances of infringement alleged in this suit, Shopify's knowledge of other instances of infringement by the infringing Shopify merchants identified in Plaintiffs' notices, and infringement by Shopify merchants writ large.

Documents from prior to December 1, 2018 are relevant to Shopify's knowledge. Where a merchant continued selling infringing material after December 1, 2018, but Shopify learned about the merchant's infringing activity prior to December 1, 2018, documents from prior to December 1, 2018 are relevant to proving that Shopify had knowledge of that merchant's infringing activity during the limitations period.

Here, Plaintiffs began sending infringement notices to Shopify at least as far back as 2017, Compl. ¶ 6, which is nearly *two years* before Shopify's proposed discovery period. Certainly, Shopify must search for relevant documents going back that far. For example, in October 2018, Plaintiffs sent a detailed letter to Shopify identifying over fifty instances of infringement by Shopify merchants. Ex. 3, Letter to Shopify dated October 30, 2018. What Shopify did in response to this letter—what it discussed internally, what it communicated to the merchants identified, what actions it took (or didn't take) with respect to each merchant's account—are clearly relevant. Yet Shopify refuses to produce any of these documents simply because they are dated prior to December 1, 2018.

Discovery into events preceding the statute of limitations period is also relevant to whether Shopify reasonably implemented its repeat infringer policy for purposes of the DMCA safe-harbor defense. For instance, where Plaintiffs or other rights-holders sent Shopify infringement notices about a particular merchant during 2017 or 2018, and the alleged infringer was still selling infringing content after December 1, 2018, the earlier notices would be relevant to whether Shopify reasonably implemented its repeat infringer policy.

### c.  Discovery Requests at Issue

Shopify's limitation of its document production and interrogatory responses to documents and events dated on or after December 1, 2018 is even more striking in the context of Plaintiffs' particular requests.

RFP 25 seeks communications concerning Plaintiffs' infringement notices. Ex. 1, RFP 25. These communications go to the very heart of Plaintiffs' claims, but Shopify refuses to produce any such communications dated before December 1, 2018. This is untenable. Shopify's attitude toward Plaintiffs' notices is relevant. For example, an internal email denigrating copyright or the

DMCA would be relevant to knowledge and willfulness. Similarly, if, after receiving a notice of infringement from Plaintiffs, Shopify employees sent internal emails deciding not to terminate the merchant, or to refuse to take any action on the notice, those emails are relevant to Shopify's knowledge, to Shopify's repeat infringer policy, to Shopify's willfulness, and to statutory damages, regardless of whether the emails occurred during the limitations period.

RFP 11 seeks documents concerning the systems Shopify used to track infringement notices. Ex. 1, RFP 11. Since Plaintiffs' notices go back at least as far as 2017, Compl. ¶ 6, the system Shopify used prior to December 2018 is at least as relevant as the system Shopify used after that date. Moreover, in a meet-and-confer call on March 23, 2022, counsel for Shopify represented that in or around the Fall of 2018, Shopify changed the system it uses to track infringement notices from one platform to another. How the capabilities and features of the prior system differed from those of the current system is relevant and discoverable. If Shopify's prior system had the capability to track repeat infringers, and Shopify declined to act on that data, including as to merchants cited in Plaintiffs' notices, and those repeat infringers subsequently infringed Plaintiffs' works, that evidence would be relevant. Conversely, if Shopify's prior system did *not* have the capability to track repeat infringers, that, too, would be relevant.

RFPs 14, 30: Documents prior to December 1, 2018 concerning summaries, reports, and analyses about Shopify's infringement program (RFP 14), and concerning warnings, ratings, or other red flags concerning the Shopify Merchants who were the subjects of Plaintiffs' notices (RFP 30) are relevant for the same reason. Shopify is not entitled to pretend that its merchants' infringing activity, along with when Shopify learned about it, and how Shopify reacted to it, began only on December 1, 2018. Shopify received notices from Plaintiffs for nearly 2 years before that, so we know that is not true.

11

RFP 6 and ROGs 1–3 requested documents and information concerning Shopify's policies, procedures, and practices concerning infringement by Shopify merchants that were in effect during the period when Plaintiffs sent notices to Shopify. For Shopify's policies, procedures and practices that were in effect before December 1, 2018 and remained in effect after that date, Shopify's documents and communications from prior to December 1, 2018 are just as relevant as those from after that date. This is key discovery pertaining, *inter alia*, to Shopify's claim that it reasonably implemented a policy for terminating the accounts of repeat infringers.

RFPs 20, 21 and ROGs 9, 10: Instances where Shopify rejected infringement notices for reasons not permitted under the DMCA are relevant to whether Shopify reasonably implemented its repeat infringer policy. A service provider must have a working notification system and not obstruct rights owners from submitting notices. *See* Part II.a, *infra*. But, here, Shopify rejected DMCA-compliant notices on the (spurious) grounds that they were invalid because they were submitted by email, reported multiple pirate sellers, and did not include links to where the rights-owner was commercializing its infringed works. *See* Part II.d, *infra*. Shopify could not track and take action as to repeat infringers after throwing notices identifying those repeat infringers into the trash bin. The extent to which Shopify was not tracking or terminating repeat infringers on account of bogus rejections of DMCA notices is thus highly relevant—as to Shopify's knowledge, Shopify's inapposite safe harbor defense, Shopify's willfulness, and statutory damages.

\* \* \*

Plaintiffs have suggested a reasonable cutoff for discovery: January 1, 2017. That start date will capture the period during which Plaintiffs were sending infringement notices to Shopify, as well as reach back closer to when applicable policies and procedures were put into place. This

Court should order Shopify to apply this start date in its responses to the Requests for Production and Interrogatories discussed above.

**II.**   **Shopify must produce evidence concerning its overall infringement program**

    **a.**   **By asserting the DMCA safe harbor, Shopify has put its overall infringement program at issue**

For several of Plaintiffs' discovery requests, Shopify limited its response to information concerning the pirate merchants and pirated works identified in this suit. In a number of instances, this restriction is improper. Discovery in a secondary infringement case like this one must reach the defendant's overall practices, rather than be limited to the defendant's response to the specific works or direct infringers at issue. This is so for at least three reasons.

*First*, to be eligible for the DMCA safe harbor, a service provider's infringement policy must have various features, including a "working notification system" and "a procedure for dealing with DMCA-compliant notifications". *CCBill LLC*, 488 F.3d at 1109. The provider must "not actively prevent copyright owners from collecting information needed to issue such notifications." *Id.* And the system must result in actually terminating repeat infringers in appropriate circumstances. *Capitol Recs., LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 AJN, 2015 WL 1402049, at *10 (S.D.N.Y. Mar. 25, 2015). The statute also requires that the service provider communicate its policy to its subscribers. 17 U.S.C. § 512(i). The DMCA safe-harbor defense requires the defendant to show that it has implemented its overall repeat infringer policy reasonably, not merely that it acted reasonably with respect to the specific infringements alleged in the case. *BMG Rts.*, 881 F.3d at 304 (stating that "our inquiry concerns [the defendant's] policy toward all of its repeatedly infringing subscribers, not just those who infringed [the plaintiff's] copyrights").

The Ninth Circuit squarely rejected the notion that notices and other evidence concerning alleged infringers not at issue in the suit were irrelevant:

> CCBill and CWIE's actions towards copyright holders who are not a party to the litigation are relevant in determining whether CCBill and CWIE reasonably implemented their repeat infringer policy. Section 512(i)(1)(A) requires an assessment of the service provider's "policy," not how the service provider treated a particular copyright holder…Thus, CCBill and CWIE's response to adequate non-party notifications is relevant in determining whether they reasonably implemented their policy against repeat infringers.

*CCBill LLC*, 488 F.3d at 1113. Likewise, another court held that it could not decide whether a defendant had reasonably implemented its repeat infringer policy by looking only to the infringements at issue in the case before the court:

> The safe-harbor's language does not ask whether a service provider appropriately responded to the particular alleged infringement at issue in the case at hand, but whether a service provider has reasonably implemented its policy generally. Evidence beyond Steadfast's actions in this particular case is necessary to determine whether Steadfast has reasonably implemented the policy required to qualify for the safe-harbor. Steadfast's actions in response to Plaintiffs' complaint might be evidence that it reasonably implements its policy, but it is insufficient evidence for the Court to make such a determination as a matter of law; rather, discovery is needed.

*Seide v. Level-(1) Glob. Sols., LLC*, No. 16 C 2975, 2016 WL 4206076, at *5 (N.D. Ill. Aug. 10, 2016). By invoking the safe harbor, Shopify put its broader infringement program at issue, not just its response to the specific infringements named in this suit.

*Second*, knowledge of infringement generally, as opposed to knowledge of the particular infringements at issue in the suit, is also relevant to willful blindness. The district court in *BMG v. Cox* rejected the argument that emails not concerning the works at issue in the case were irrelevant, holding: "Evidence of [the defendant's] overall system for addressing infringement (including evidence showing that [the defendant] knew of a high probability that users identified in infringement notices were in fact infringers and evidence showing that [the defendant] did not

14

want to see infringement notices because it did not want to take action against subscribers) is relevant to whether [the defendant] consciously avoided learning about specific instances of infringement." *BMG Rts. Mgmt.*, 14-cv-1611, Dkt. 1018 at 2.

*Third*, Shopify's overall practices and behavior with respect to infringement occurring on its system generally are highly relevant to statutory damages. Shopify's history of infringement, its knowledge that its conduct constituted infringement, and the need for deterrence are all informed by Shopify's overall program, not just its responses to Plaintiffs' notices. And all of these are factors for consideration in deciding the appropriate amount of statutory damages. *Superior Form Builders*, 74 F.3d at 496.

### d. Shopify must produce critical information showing the implementation of its infringement policy

For these reasons, Shopify must produce the documents and answer the interrogatories described below concerning its overall infringement program without limiting its responses to the infringers and works at issue in this suit.

In <u>RFPs 20 and 21</u> and <u>ROGs 9 and 10</u>, Plaintiffs requested information detailing in how many instances Shopify rejected an infringement notice because the notice was sent via email, or because it identified multiple storefronts. Plaintiffs know that this occurred because Shopify rejected several of *Plaintiffs'* notices for these reasons. For example, Plaintiffs wrote to Shopify in October of 2018 and explained that numerous merchants were selling pirated copies of Plaintiffs' works. *See, e.g.*, Ex. 3 at 1–2. Plaintiffs included more than fifty works that were being infringed by multiple Shopify merchants. But Shopify stated that it would not take any action unless Plaintiffs submitted a separate notice for each "each individual Shopify store infringing your intellectual property", and submitted the notices through Shopify's web site, rather than via email.

15

Ex. 4, November 2018 Email from Shopify. That Shopify was rejecting notices for reasons not permitted by the DMCA is relevant to Shopify's safe-harbor defense. *Escape Media Grp.*, No. 12-cv-6646, 2015 WL 1402049 at *12 (holding the DMCA safe harbor unavailable where the defendant rejected DMCA-compliant notices); *BMG Rts. Mgmt.*, 881 F.3d at 304 (defendant was ineligible for safe-harbor defense where the defendant disregarded notices for reasons not permitted under the DMCA). Accordingly, Shopify should respond to these document requests and interrogatories in full, without limiting its response to the infringing merchants identified in Plaintiffs' notices.

Similarly, in response to <u>RFP 17</u>, which requests information regarding whether Shopify reactivates terminated accounts, Shopify has agreed to provide this information for the merchants identified in this suit, but not for other merchants. This data clearly is relevant, *inter alia*, to whether Shopify reasonably implemented a repeat infringer termination policy. Terminating a merchant and then allowing her to continue using the Shopify platform is, of course, no termination at all. *BMG Rts. Mgmt.*, 881 F.3d at 303–04 (finding the DMCA safe-harbor unavailable in part because Cox had allowed repeat infringers to reactivate their service); *Capitol Recs., LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 AJN, 2015 WL 1402049, at *54 (S.D.N.Y. Mar. 25, 2015) (holding that terminating a user means actually disassociating from the user). Whether this practice is occurring goes to the heart of Shopify's DMCA safe harbor, to its knowledge of infringement, and to willfulness and statutory damages. Accordingly, Shopify should respond to this document request in full, without limiting its response to the infringing merchants identified in Plaintiffs' notices.

## **CONCLUSION**

Plaintiffs respectfully request that the Court should order Shopify (i) with respect to Plaintiffs' RFP 6, 11, 14, 20, 21, 25, and 30; and ROGs 1–3, 9, and 10, to include in its responses documents and information dating back to January 1, 2017; and (ii) to fully respond to RFP 17, 20, and 21; and ROGs 9 and 10, without limiting its response just the direct infringers or works at issue in this suit.

Dated April 15, 2022                                      Respectfully Submitted,

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Michele H. Murphy (*pro hac vice*)
Corey Miller (*pro hac vice*)
Jeff Kane (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel: 202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
michele@oandzlaw.com
corey@oandzlaw.com
jkane@oandzlaw.com

*Attorneys for Plaintiffs*

17