**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; CENGAGE LEARNING, INC.; ELSEVIER INC.; ELSEVIER B.V.; MCGRAW HILL LLC; and PEARSON EDUCATION, INC., | Case No. 1:21-cv-01340 |
| Plaintiffs, | |
| v. | |
| SHOPIFY INC., | |
| Defendant. | |

**DEFENDANT SHOPIFY INC.'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL**

**TABLE OF CONTENTS**

I.    **Introduction** .................................................................................................1

II.   **Factual Background** .....................................................................................1

III.  **Argument** .....................................................................................................5

    A.   Relevant Legal Standard For the Parties' Claims and Defenses.............................6

    B.   Plaintiffs' Requests For Information Regarding Non-Alleged Merchants Should Be Denied As Unnecessary .................................8

        1.   Shopify Has Already Agreed to Produce Relevant and Proportionate Information Concerning Non-Alleged Merchants ...............8

            a.   Plaintiffs Misread Shopify's Response to RFP No. 17, and Then Needlessly Moved To Compel Without Conferring...............9

            b.   Shopify Has Proposed A Reasonably Tailored Solution to Address RFPs Nos. 20-21 and Rogs. Nos. 9-10. ..........................10

    C.   Plaintiffs' Requests For Discovery Outside The Limitations Period Are Irrelevant And Disproportionate .................................14

        1.   Documents Years Outside the Limitations Period Are Not Relevant........14

            a.   Alleged Pre-Limitations Infringement by Shopify Merchants "Writ Large" Does Not Demonstrate "Knowledge." ...................................................................14

            b.   The Specific Discovery Sought By Plaintiffs Is Not Relevant To Knowledge .................................16

            c.   Shopify's Policies Prior To The Limitations Period Are Not Relevant To Its DMCA Safe Harbor Defense .............................17

            d.   Pre-Limitations Discovery Is Not Relevant To Statutory Damages...................................................................20

        2.   The Requested Pre-Limitations Production Would Be Unduly Burdensome and Disproportionate ...........................................22

IV.   **Conclusion** .................................................................................................24

I

## I.      INTRODUCTION

Shopify has agreed to produce—and has already begun producing—extensive, costly, time-intensive, and voluminous material relevant to the claims Plaintiffs actually pled (*i.e.*, infringement of Plaintiffs' specific copyrighted works by the Alleged Merchants[1]) and Shopify's defenses in this case.  In an effort to needlessly harass and significantly increase the burden on Shopify, Plaintiffs have moved to compel two additional sets of data: (1) information related to Shopify's records with respect to responding to notices of infringement and enforcing its repeat infringer policy; and (2) information on a wide swath of discovery requests where Shopify agreed to respond, but limited its response to the past three-and-a-half years, rather than the five-and-a-half years demanded by Plaintiffs.  Both requests should be denied, but for different reasons.

With respect to the first set of data, regarding responding to notices of infringement and enforcing the repeat infringer policy, Plaintiffs' motion is moot.  Shopify *agrees* that during the relevant limitations period, Plaintiffs should receive relevant, proportionate information on Shopify's infringement policies, procedures, and practices, beyond the Alleged Merchants.  The parties were deep in conferral on *how* to accomplish this, when Plaintiffs jumped the gun, filing their motion despite Shopify's good-faith efforts to produce essentially everything Plaintiffs have asked for within the limitations period.  Shopify continues, in good faith, to identify and produce this information.  To the extent any live dispute remains, the Court should hold that Shopify's planned production of responsive information is adequate.

With respect to the second set of data—Plaintiffs' proposal to require Shopify to search for and produce an additional *two years* of records, including from a legacy infringement tracking

---

[1] The "Alleged Merchants" refers to any Shopify Merchants that were identified in response to an Infringement Notice sent by or on behalf of Plaintiffs, regarding any of the Copyrighted Works or Trademarks upon which Plaintiffs bring suit (Exhibits A and B to the Complaint), within the limitations period, *i.e.*, between December 1, 2018 and March 1, 2022.

system that was not used at all during the limitations period—Plaintiffs' motion should be denied as exceeding the bounds of permissible discovery under the Federal Rules. The pre-limitations information Plaintiffs seek (including records of merchants that are not accused of infringement in this case) is neither relevant nor proportional to the needs of the case. Plaintiffs' arguments to the contrary are premised on fundamental misstatements of governing law, including the binding law of the Fourth Circuit on Shopify's relevant "knowledge." Even if the documents sought by Plaintiffs were of some attenuated relevance to this case, that marginal relevance is far outweighed by the burden of reviewing an additional two years of materials, which would increase by approximately 60 percent the temporal scope of Shopify's (already robust) document review.

Shopify is committed to providing relevant and proportionate discovery, so that this case may be expeditiously decided on its merits. It has agreed to produce information on all "tickets" concerning the Alleged Merchants from Shopify's ticketing system used for tracking notices of infringement, communicating with Alleged Merchants, applying infringement "strikes," and terminating Merchants. It has agreed to produce all communications with the Alleged Merchants themselves, including those relating to infringement tickets, strikes, notices, or IP infringement generally, without time limitations. It has agreed to produce all communications, during the limitations period, concerning alleged infringement by the Alleged Merchants. It has already produced 13,000 pages of responsive documents, and is preparing to produce thousands more. But Plaintiffs' requests in their Motion for further and additional discovery stray far beyond the bounds of relevant and proportionate discovery under the Federal Rules, and should be denied.

## II.    FACTUAL BACKGROUND

Plaintiffs' Motion challenges (i) Shopify's limitation of its responses to seven Requests for Production (RFPs 6, 11, 14, 20, 21, 25, and 30) and five Interrogatories (Rogs. 1-3, 9, and 10) to the statute of limitations period, and (ii) Shopify's ostensible limitation of three Requests for

Production (RFPs 17, 20 and 21) and two Interrogatories (Rogs. 9 and 10) to the 3,426 alleged infringements and the approximately 1,800 alleged infringing merchants actually at issue in this suit. Dkt. 56 at 6-7, 10-12; *see also* Dkt. 1 at Exs. A-B. Critically, for RFPs Nos. 6, 11, 14, 25, and 30, and Rogs. Nos. 1-3, Plaintiffs challenge only the temporal scope of Shopify's discovery responses—Plaintiffs seek information going back to January 1, 2017, despite the limitations period beginning nearly two years later—but Plaintiffs do not presently dispute the adequacy of the categories of responsive information that Shopify has agreed to produce. For RFP 17, Plaintiffs challenge the substantive limits of Shopify's response, but not the limitation of its response to the limitations period. For the remaining RFPs 20 and 21, and Rogs. 9 and 10, Plaintiffs dispute both the substantive and temporal limits of Shopify's response. However, as explained below, with respect to the substantive dispute, Plaintiffs' motion is premature and there is actually little or no difference between the parties' respective positions.

As detailed *infra*, Shopify believes that it has already agreed to produce all discovery to which Plaintiffs are entitled under the standard articulated by Rule 26 of the Federal Rules of Civil Procedure. But Plaintiff's motion obscures, rather than illuminates, the voluminous discovery on these topics that Shopify has already agreed to produce, and in many cases has already commenced producing, namely the following:

- **Alleged Merchant Information (RFPs Nos. 25, 30):** Plaintiffs requested all documents discussing any "Infringement Notice" from Plaintiffs to Shopify concerning Shopify Merchants; and all documents concerning any "warnings, ratings, risk assessments, flags" relating to risk for the foregoing Merchants. Dkt. 56-1 at 38, 45. In response, Shopify is willing to produce (i) all communications *with* the Alleged Merchants in Shopify's possession, custody, or control (without time limitation); (ii) all "information from [Shopify's]

3

[infringement notice] ticketing system for the tickets" associated with each Alleged Merchant from December 1, 2018 to March 1, 2022 (the limitations period) (*i.e.*, the main location of documentation regarding Shopify's process for and responses to infringement notices); (iii) all communications concerning these Alleged Merchants insofar as they relate to infringement (including notices, flags, warnings, and infringement risk assessments, to the extent they exist), from December 1, 2018 to March 1, 2022 (the limitations period); and (iv) any infringement-related flags or strikes on the Alleged Merchant accounts from January 1, 2017 onward. *See* Dkt. 56-1 at 39, 46; Stebbins Bina Decl. ¶ 5.[2]

- **Infringement Policies and Procedures: (RFP No. 6, Rog Nos. 1-2):** Plaintiffs requested all documents concerning Shopify's "strategies, approaches, policies, or procedures" concerning "infringement," along with "all persons" with any responsibility for "designing, developing, or implementing" such policies, procedures, or practices. Dkt. 56-1 at 14; Dkt. 56-2 at 6, 9. Shopify has agreed to produce the discovery responsive to these requests during the limitations period, from December 1, 2018 to March 1, 2022. *See id.*

- **Shopify's Infringement Tracking System (RFP No. 11, Rog. No. 3):** Plaintiffs requested all documents concerning "any system used for tracking Infringement Notices," including its "technical abilities," along with "all persons" with any responsibility for "designing, developing, or implementing" that system. Dkt. 56-1 at 20; Dkt. 56-2 at 11. Shopify agreed to produce "documents sufficient to show the capabilities of Shopify's system used for tracking and processing Infringement Notices," and "personnel . . . responsible for creating the system,"

---

[2] In response to Plaintiffs' concerns articulated through the meet-and-confer process, Shopify's agreements to produce information, as reflected in this Motion, are more expansive than those articulated in Shopify's initial discovery Responses served on March 31, 2022. Stebbins Bina Decl. ¶¶ 5-7.

but only for its current infringement system that Shopify first deployed in October 2018 (two months prior to the limitations period), and not the legacy infringement system that was used prior to October 2018. *See* Dkt. 56-1 at 21; Dkt. 56-2 at 12.

- **Infringement Summaries, Reports, and Analyses (RFP No. 14):** Plaintiffs requested all "documents" "including summaries, reports, or analyses, concerning [Shopify's] handling of and response to Infringement Notices. . . .'" Dkt. 56-1 at 24. Shopify agreed to produce "non-privileged summaries, including reports and analyses, concerning Shopify's handling of, and response to, Infringement Notices," during the limitations period. *Id.* at 25.

- **Reactivation of Terminated Merchants (RFP No. 17):** Plaintiffs seek information regarding any merchants Shopify terminated for infringement and reactivated, during the limitations period. As explained below, Shopify agreed to produce this information in its initial responses; it is unclear why Plaintiffs have moved on this RFP as there appears to be no dispute.

- **Alleged Rejections of Infringement Notices via Email (RFPs Nos. 20-21, Rogs. Nos. 9-10):** Plaintiffs seek information about "Infringement Notices" Shopify "received via email" and did not "process[,]" instead responding that the Notice was "not proper" because it was "submitted via email" or "reported multiple infringements" or "multiple . . . Merchants." Dkt. 56-1 at 31-33; Dkt. 56-2 at 19-21. As detailed below in Section I, Shopify is willing to produce this information during the limitations period, from December 1, 2018 to March 1, 2022.

## III.    ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Under this standard, "it is proper to deny discovery of matter that is relevant only to . . . *events that occurred before an applicable limitations period*, *unless* the information sought is otherwise

5

relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (emphasis added).  That is, discovery prior to the limitations period is properly denied unless the movant shows the requested discovery is nonetheless "relevant" to the claims or defenses.  *Id.*

Additionally, all discovery must be proportional.  Fed. R. Civ. P. 26(b)(1).  Courts evaluate proportionality by considering "the amount in controversy," the "importance" of the material sought, the parties' "resources," the parties' "access" to materials, and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Brink's Co. v. Chubb Eur. Grp. Ltd.*, No. 3:20-520, 2021 WL 5083335, at *4 (E.D. Va. Feb. 24, 2021), *adopted*, 2021 WL 5083332 (E.D. Va. Mar. 12, 2021).

Shopify has already agreed to provide Plaintiffs all of the information that is relevant and proportional to this case.  Their motion to compel further discovery should be denied.

### A.    Relevant Legal Standard For the Parties' Claims and Defenses

Under Rule 26, discovery must be "relevant to any party's claim or defense."  Fed. Rule Civ. Pro. 26(b)(1).  Here, Plaintiffs bring claims for contributory copyright and trademark infringement, and Shopify defends based on its own lack of involvement in the alleged infringement by its users, and based on the statutory safe harbor under Section 512 of the Digital Millennium Copyright Act ("DMCA").  *See generally* Answer, Dkt. 30.

The first, threshold element of a claim for a claim of contributory copyright infringement is an act of direct copyright infringement, during the limitations period, by a third party.  *See, e.g.*, *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 890 (6th Cir. 2004).  Under the Copyright Act, the statute of limitations is three years from the filing of this suit on December 1, 2021.  *Id.*; 17 U.S.C. § 507(b); Compl., Dkt. 1.  Accordingly, Plaintiffs can bring claims only as to acts of direct infringement that took place during the limitations period, *i.e.*, since December 1,

2018. *Bridgeport Music*, 371 F.3d at 890.[3]  If Plaintiffs prove such an act of infringement, they must prove two more elements, within the limitations period:  That Shopify, "[2] with knowledge of the infringing activity, [3] induce[d], cause[d] or materially contribute[d] to the infringing conduct."  *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004); *see also Bridgeport Music*, 371 F.3d at 890 ("claims against a contributory infringer who commits no acts within the limitations period are also time barred").

The DMCA's safe harbor, in turn, shields Shopify from liability for contributory copyright infringement by its third-party customers, if *during the limitations period*, Shopify "has adopted and reasonably implemented, and inform[ed] subscribers and account holders . . . of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders . . . who are repeat infringers."  17 U.S.C. § 512(i)(1)(A); *see also* Answer, Dkt. 30 at 37; *cf. Rosen v. eBay, Inc.*, No. 16-9183, 2018 WL 4808513, at *5 (C.D. Cal. Apr. 4, 2018) (explaining that DMCA defense depends on the adequacy of defendant's policies during time period subject to suit).  This policy must apply to all of Shopify's merchants, not just those alleged to have infringed in this specific case.  *See, e.g.*, *Rosen*, 2018 WL 4808513, at *5-6.

Finally, if liability is proven and Shopify's defenses are overcome, a jury may consider a number of factors in determining the amount, if any, of statutory damages, including: "(1) whether the defendant was the original provider of the infringed content to its distribution network; (2)

---

[3] Plaintiffs argue that it is possible that the statute of limitations might be tolled if they did not discover (and should not have discovered) a given infringement prior to the limitations period. Dkt 56 at 5 n.1; *cf. Werner v. BN Media, LLC*, 477 F. Supp. 3d 452, 455-56 (E.D.V.A. 2020) (explaining that claim accrues when "one has knowledge of a violation or is chargeable with such knowledge" but that damages are limited to the three years prior to filing suit regardless).  But this is a red herring:  Plaintiffs do not allege any recently "discovered" pre-December 1, 2018 infringement; to the contrary, Plaintiffs maintain vigorous monitoring and rights enforcement practices. *See, e.g.*, Dkt. 1, ¶ 6.

whether, and how much, the defendant profited or saved in connection with the infringement; (3) the plaintiff's actual losses; (4) [deterrence]; and (5) the defendant's willfulness and intent in infringing the plaintiff's protected content." *ME2 Prods., Inc. v. Fox*, No. 3:17-CV-00057, 2018 WL 1470251, at *2 (E.D. Va. Mar. 26, 2018).[4]

## B.  Plaintiffs' Requests For Information Regarding Non-Alleged Merchants Should Be Denied As Unnecessary

The bulk of Plaintiffs' motion, and of this opposition, addresses Plaintiffs' demand for discovery for a full *two years* prior to the start of the limitations period in this case.  Before delving into this genuine dispute between the parties with respect to temporal limitations, however, Shopify first addresses Plaintiffs' demand for additional substantive material with respect to Requests for Production 17, 20, and 21, and Interrogatories 9 and 10.  Shopify addresses these matters first because it does not believe there *is* any genuine dispute between the parties—a fact that would have become apparent to Plaintiffs had they not rushed to file their motion in the midst of the parties' meet and confer efforts.

### 1.  *Shopify Has Already Agreed to Produce Relevant and Proportionate Information Concerning Non-Alleged Merchants*

With these five requests (RFPs 17, 20, and 21, and Rogs 9 and 10), Plaintiffs assert that they are entitled to explore Shopify's repeat infringer policy generally, and not just with respect to the Alleged Merchants.  *See* Dkt. 56 at 13-16.  But this is not disputed:  Shopify *agrees* to produce reasonable, proportionate discovery on each of these requests.  As to the first request (RFP No. 17), Shopify agreed *in its initial responses* to provide Plaintiffs the requested materials concerning "reactivation" of Shopify Merchants.  As to the other four requests, the parties were in the middle

---

[4] Plaintiffs do not address the elements of trademark infringement or argue that there is any material difference that would impact the outcome of this motion.  Shopify concurs: These elements closely parallel contributory copyright infringement.  *See, e.g.*, *Passport Health, LLC v. Avance Health Sys.*, 823 F. App'x 141, 146 (4th Cir. 2020) (discussing "indirect infringers").

of the meet-and-confer process on a tailored solution when Plaintiffs filed their motion, and Shopify is in the middle of carrying out a reasonable protocol to provide Plaintiffs the requested information, consistent with Plaintiffs' requests.

a.    **Plaintiffs Misread Shopify's Response to RFP No. 17, and Then Needlessly Moved To Compel Without Conferring**

For RFP No. 17, Plaintiffs requested all documents "concerning the reactivation of service for any Shopify Merchant whose service You terminated for violation of any policy relating to copyright or trademark infringement."  Dkt. 56-1 at 27.  That is, Plaintiffs want to know about *any* Merchant that was "terminated" due to infringement, and then "reactivated."  *Id.*  Plaintiffs claim that Shopify's Response to RFP No. 17 is insufficient because Shopify "agreed to provide this information for the merchants identified in this suit, but not for other merchants," and "Shopify should respond to this document request in full, *without limiting its response to the infringing merchants identified in Plaintiffs' notices*."  Dkt. 56 at 16 (emphasis added).

But this is not true.  Even a cursory review of Shopify's Response demonstrates that Shopify *agreed* to produce the information Plaintiffs are moving to compel, *i.e.*, documents sufficient to show reactivation of *any* merchants terminated for infringement:

> Shopify will produce relevant, non-privileged documents sufficient to show Shopify's policies and processes for, and any actual reactivation of, *Shopify Merchants* whose service Shopify terminated for violation of any policy relating to copyright or trademark, for the period of December 1, 2018 through March 1, 2022.

Dkt. 56-1 at 28 (emphases added).  There is no dispute here, as Plaintiffs would have known had they conferred on this RFP before filing their motion.  Stebbins Bina Decl. ¶ 8.  Since Shopify already agreed to provide everything requested by Plaintiffs in their Motion on RFP No. 17 (*i.e.*, information about a broader set of Shopify Merchants), the Motion is moot as to that RFP and should be denied.

9

b.      **Shopify Has Proposed A Reasonably Tailored Solution to Address RFPs Nos. 20-21 and Rogs. Nos. 9-10.**

In RFPs Nos. 20-21 and Interrogatories Nos. 9-10, Plaintiffs seek information about the *number* of "Infringement Notices" Shopify "received via email" and did not "process[,]" but instead "responded with an email informing the submitter" that the Infringement Notice was "not proper" because it was "submitted via email" or reported "multiple Shopify Merchants or multiple copyrights or trademarks." Dkt. 56-1 at 31-34; Dkt. 56-2 at 19-23. Plaintiffs allege this is relevant because they hope to prove that: (1) copyright owners submit notices of infringement to Shopify via email that comply with the requirements of the DMCA, but (2) rather than "processing" these DMCA-compliant infringement notices, Shopify allegedly "responds" to complainants that the notices need to be resubmitted through Shopify's online web form, or reformatted and resubmitted without combining "multiple Shopify Merchants or multiple copyrights or trademarks." *Id.*

As an initial matter, Plaintiffs are mistaken on the facts. As Shopify explained in its Responses, "Shopify creates tickets in its ticketing system, regardless of the manner in which it receives the Infringement Notice—thereby processing each notice." Dkt. 56-1 at 33; Dkt. 56-2 at 23. That is, under Shopify's policies, in no case would Shopify fail to "process" the notice by creating a ticket—regardless of whether the notice was submitted via email, or contained multiple entries—even if the notice was defective under the DMCA. *See id.* Accordingly, as Shopify explained in its Responses themselves, "no documents responsive to th[ese] Request[s] exist," and "the number of Infringement Notices responsive to th[ese] Interrogator[ies] is zero." Dkt. 56-1 at 31-34; Dkt. 56-2 at 19-23. Plaintiffs obviously cannot compel responses to discovery requests as to which Shopify has already responded that no responsive information exists.

Plaintiffs have clarified through the meet-and-confer process, however, that notwithstanding the language of the requests, they are trying to explore a slightly different concept

here, seeking "information regarding the reason certain tickets were actioned in a certain manner, including by emailing the complainant." Dkt. 56-1 at 31-34; Dkt. 56-2 at 19-23.  In other words, Plaintiffs want to know not only if an infringement notice was "processed," but *how* the ticket was *actioned* by Shopify's team after processing, and particularly if the initial action taken was a follow-on email to the party who sent the notice.  Specifically, Plaintiffs want Shopify to quantify the number of infringement notices that Shopify responded with an email to the sender citing certain enumerated deficiencies, rather than immediately issuing a takedown notice.

The problem with this is, as Shopify explained to Plaintiffs, this is not information Shopify classifies in this way in the ordinary course of business, and trying to determine the information Plaintiffs seek requires a qualitative legal analysis of historical information that is both burdensome and imprecise.  From December 1, 2018 to March 1, 2022 alone, Shopify has identified "179,889 tickets" relating to infringement. Dkt. 56-1 at 26.   There is no automatic way to isolate the tickets Plaintiffs seek, and a linear review of all the individual tickets would be unduly burdensome.  At a review rate of, *e.g.*, 200 documents per hour, that would amount to 899 hours of review time.  Spending nearly 1,000 hours to manually review 179,889 tickets to respond to just 4 of Plaintiffs 72 discovery requests is facially disproportionate.  *See, e.g.*, Fed. R. Civ. P. 26(b)(1); *Rodríguez-Torres v. Government Dev. Bank of P.R.*, 265 F.R.D. 40, 44 (D.P.R. 2010) (denying requests in light of "costs" of "review that Defendant . . . will have to undertake on what could turn out to be hundreds or thousands of documents.").

Against that background, Shopify met and conferred with Plaintiffs to try to find a reasonable solution that would permit Shopify to identify the requested information, without performing a manual review of each of the 179,889 tickets relating to infringement (within the limitations period alone).  As detailed immediately below, the parties were close to an agreement

on a solution on this issue when Plaintiffs unexpectedly filed their Motion on these four discovery requests.  Stebbins Bina Decl. ¶ 6.

*First*, Plaintiffs clarified during meet-and-confers that they are *not* seeking production of the tickets responsive to these four requests, just identification of the *number* of "Infringement Notices" Shopify "received via email" and did not "process" for the reasons Plaintiffs enumerated in their requests.  Stebbins Bina Decl. ¶ 6.

*Second*, Shopify has already agreed to produce information for *all* tickets associated with the Alleged Merchants since December 2018, over 5,000 tickets, forming a meaningful sample that would allow Plaintiffs to explore this issue themselves, directly.  *See Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1031 (D. Nev. 2018) (approving production of "sample").  Stebbins Bina Decl. ¶ 6

*Third,* and most critically, Plaintiffs and Shopify were in the middle of negotiating search terms that would be most likely to return responsive documents for RFPs Nos. 20-21 and Rogs. Nos. 9-10,[5] and thereby allow Shopify to determine, or at least reasonably estimate, the answers to Plaintiffs' inquiries for the limitations period *in full*, when Plaintiffs filed their motion.  *Id.*

Since the Motion's filing, Shopify has continued its efforts, and now believes it *has* identified search terms that are likely to capture the information Plaintiffs are seeking.  Stebbins Bina Decl. ¶ 7.  Shopify remains ready and willing to confer with Plaintiffs and further refine acceptable search terms.  However, Plaintiffs have generally indicated that they do not intend to

---

[5] Plaintiffs themselves initially proposed that they could identify to Shopify search terms that would allow Shopify to identify responsive tickets.  Stebbins Bina Decl. ¶ 6.  Shopify agreed that this proposal offered a potential way forward to a solution.  Plaintiffs proposed search terms in writing on April 12, 2022.  Dkt. 53-9 at 12.  On April 14, 2022, Shopify responded via email that "Shopify will discuss with the client the search term results, and if there is a way to reasonably provide this information to plaintiffs."  Dkt. 53-9 at 8.  Plaintiffs filed this Motion the next day.

confer further on discovery that is subject to pending motions. *Id.* Accordingly, Shopify has begun to implement the search terms on its own in order to provide further responses to RFPs Nos. 20-21 and Rogs. Nos. 9-10, *id.*, as provided for by applicable case law. *See, e.g., Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (where parties do not stipulate to search methodology, defendant should proceeding "unilaterally, producing all responsive documents located by its search"). Shopify intends to produce information responsive to RFPs Nos. 20-21 and Rogs. Nos. 9-10, as their scope has been clarified by Plaintiffs, for the period December 1, 2018 through March 1, 2022, expeditiously following this review. Stebbins Bina Decl. ¶ 7.

For all of these reasons, Plaintiffs' Motion as to RFPs Nos. 20-21 and Rogs. Nos. 9-10 is almost entirely moot. The only remaining question is whether the search procedure that Shopify is applying to its current ticketing system should be applied against records located only in Shopify's distinct, *legacy* infringement tracking system, prior to October 2018. For all of the reasons detailed *infra* in Section C, it should not: Aside from the burden and disproportionality of doing so, *see infra* at 22-24, Plaintiffs have acceded to (and not moved upon) such temporal restrictions to the limitations period with respect to their Interrogatories that seek similar, parallel information concerning Shopify's compliance program as a whole. *See, e.g.*, Shopify's Responses to Rogs. 12, 13, 14 Dkt. 56-2 at 26-27, 30, 32-35 (providing overall statistics of Shopify's compliance program as whole, such as monthly numbers of tickets, and monthly actions on tickets). There is no reason to provide more than 5 years of data on RFPs Nos. 20-21 and Rogs. Nos. 9-10, when providing only 3.5 years of data on all other aspects of Shopify's infringement system. *Id.* The Court should deny Plaintiffs' requests for further discovery, other than that Shopify has agreed to provide, with respect to RFPs 20 and 21, and Rogs 9 and 10.

### C. Plaintiffs' Requests For Discovery Outside The Limitations Period Are Irrelevant And Disproportionate

The remainder of Plaintiffs' motion, and this opposition, address Plaintiffs' motion to compel an additional *two years* of discovery, across a broad range of requests (RFPs 11, 14, 20, 21, 25, and 30, and Rogs 1-3, 9, and 10), prior to the applicable limitations period. This portion of Plaintiffs' motion should be denied in full. Shopify is willing to produce, and is in the midst of producing, comprehensive discovery that fully satisfies its obligations under Rule 26. Plaintiffs' demand for additional information *two years* outside the statute of limitations is neither relevant nor proportional, and would impose a substantial and disproportionate burden on Shopify.

#### 1. *Documents Years Outside the Limitations Period Are Not Relevant*

As outlined above, Plaintiffs as a general matter can only bring claims for infringements that took place *during* the relevant limitations period. *See supra* at 6-7. Similarly, as a general matter, the adequacy of Shopify's repeat infringer policy is examined *only* during the relevant limitations period. *See supra* at 6-7, *infra* at 17-20. Against that background, the dispositive problem for Plaintiffs is that they are seeking two years of additional information prior to the December 1, 2018 limitations period, dating back as far as January 1, 2017, that has no relevance to determining Shopify's alleged liability, DMCA defense, or statutory damages for any actionable acts of infringement *within* the limitations period.

#### a. Alleged Pre-Limitations Infringement by Shopify Merchants "Writ Large" Does Not Demonstrate "Knowledge."

Plaintiffs' motion focuses largely on Shopify's alleged "knowledge." Dkt. 56 at 7-15. As noted *supra*, Shopify's liability for its merchants' acts of copyright infringement turns on whether it had "knowledge of the infringing activity" of the accused direct infringers during the limitations period. *CoStar Grp.*, 373 F.3d at 550; *see also Bridgeport Music*, 371 F.3d at 889-890. This is a standard of "actual knowledge" or "willful blindness" to specific acts of infringement by the

14

Alleged Merchants:  If Shopify merely "*should* have known of such infringing activity," *i.e.*, was "negligen[t]," that does *not* suffice under Circuit law.  *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns., Inc.*, 881 F.3d 293, 307-308 (4th Cir. 2018) (emphasis added).

Plaintiffs argue that discovery into *any* historical knowledge of *any* infringement by *any* Merchants using Shopify's platform "writ large" is relevant to its "knowledge."  Dkt. 56 at 9. That is not the law; indeed, were it the case, there would be no need for Plaintiffs to *ever* demonstrate actual knowledge of the specific infringements alleged.  *Cf. UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1021 (9th Cir. 2013) (under such a "general knowledge" theory, the DMCA's "safe harbor would be rendered a dead letter").  Instead, the Fourth Circuit has found that "contributory infringement requires 'actual knowledge of specific acts of infringement' or '[w]illful blindness of specific facts'" of infringement.  *BMG Rts. Mgmt.*, 881 F.3d at 310.  "[G]eneralized knowledge — that infringement was occurring somewhere on [a] network — is exactly what falls short" of proving sufficient knowledge of the actionable, specific acts of infringement on an online platform.  *Id.* at 311.

The relevant inquiry is thus *not w*hether Shopify knew, at some time, that "some number of its subscribers were infringing [plaintiff's] copyrights, even if the data did not show which ones were infringing," but rather, whether Shopify had "knowledge that infringement [wa]s substantially certain to result from [its] continued provision of [service] *to particular subscribers*." *Id.* (emphasis added).  That is, the issue is whether "*a specific customer* . . . is substantially certain" to engage in infringement.  *Id.* (emphasis added).  Based on Plaintiffs' complaint, Shopify has identified approximately 1,800 Alleged Merchants that allegedly engaged in infringement of Plaintiffs' intellectual property since December 1, 2018.  It is these 1,800 Alleged Merchants, and their actions during the limitations period, for whom Shopify's "knowledge" is arguably relevant.

Plaintiffs thus misstate the law when they claim that knowledge of "infringement by Shopify merchants writ large" is relevant here.  Dkt. 56 at 9.  Under black-letter law, it is not.[6]

### b.   The Specific Discovery Sought By Plaintiffs Is Not Relevant To Knowledge

Against this background, it is clear that Shopify's "knowledge" of infringements on its network "writ large" is simply not relevant to liability, *especially* in the pre-limitations period sought by Plaintiffs.  Rather, what is relevant whether Shopify was aware of specific facts with respect to the 1,800 Alleged Merchants that made those Alleged Merchants "substantially certain" to engage in infringement during the limitations period.  *BMG Rights Mgmt.*, 881 F.3d at 311.  To be clear: Shopify is producing *all* communications with those Alleged Merchants in its possession, custody, and control, regardless of date, and it is producing information sufficient to show any infringement-related warnings given to those Alleged Merchants, or risks or flags posted on those Alleged Merchants' accounts, going back to January 1, 2017.  Shopify is also producing thousands of additional documents regarding alleged infringement, and Shopify's policies, procedures, and systems for handling alleged infringement *during the limitations period.  See supra* at 4-5.

Yet the discovery Plaintiffs seek is far broader:  Plaintiffs seek all documents concerning *every* infringement notice sent by Plaintiffs (even those sent prior to the limitations period regarding Merchants who never allegedly infringed again) (RFP 25),[7] and information regarding

---

[6] Plaintiffs' counsel should know better:  They served as counsel for two interest group *amici curiae* that unsuccessfully sought *en banc* review to overturn the *BMG* panel's adoption of this demanding standard of "actual knowledge of specific acts of infringement," in favor of a less-rigorous "should have known" negligence standard.  *See* Br. of Recording Indus. Ass'n of Am., Inc. & Nat'l Music Publishers' Ass'n as Amici Curiae in Supp. of Pet. for Hr'g & Rehr'g En Banc at 8-10, *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 16-01972 (4th Cir. Feb. 22, 2018), Dkt. 121.  But the Court denied *en banc* review, *id.* No. 16-01972 (4th Cir. Feb. 27, 2018), Dkt 123, and the more stringent standard articulated in *BMG* remains the law in this Circuit.

[7] For example, if Plaintiffs sent a single notice of infringement in early 2017, but never again sent another notification regarding the same Merchant, Plaintiffs' request would require Shopify to

all of Shopify's infringement policies, strategies, approaches, procedures, and tracking systems—even those indisputably *not* in place during the limitations period (RFPs 6, 11, 14, 20, 21, 30 and Rogs 1-3, and 9-10)—for example, Shopify's legacy infringement ticketing system that was replaced with its current system in October 2018. Requiring Shopify to produce this broad swath of materials would be extremely burdensome: Shopify would have to search an additional *two years*' worth of internal communications, and it would have to provide data and information on an infringement ticketing system that it has not used since October 2018. Gallant Decl. ¶¶ 10-15. Yet none of this is calculated to produce the sort of "knowledge" information that is relevant under Circuit precedent. *See BMG Rights Mgmt.*, 881 F.3d at 311. Indeed, there is no possible relevance of pre-limitations records of merchants that are *not* accused of engaging in acts of infringement during the limitations period. *See BMG Rights Mgmt.*, 881 F.3d at 311 (the issue for actionable liability within the relevant time period is whether "a specific customer . . . is substantially certain" to engage in infringement). Shopify should not be compelled to produce such information.

c. **Shopify's Policies Prior To The Limitations Period Are Not Relevant To Its DMCA Safe Harbor Defense**

Plaintiffs' alternative argument, that discovery concerning Shopify's pre-limitations infringement policies, procedures, and practices, including all related "communications," are relevant to determine the sufficiency of Shopify's *within*-limitations policies, and thus Shopify's *within*-limitations DMCA safe harbor defense, is similarly wrong. Dkt. 56 at 8-12.

---

search for and produce every communication related to that notification, even though the Merchant is not alleged to have infringed in this lawsuit. By contrast, under what Shopify has *agreed* to produce, if Plaintiffs accused an e-book merchant of infringement in early 2019, during the limitations period, and that merchant previously had been accused of infringement in 2017 and early 2018, Shopify would produce communications with that Merchant, as well as information sufficient to show the earlier flags or infringement strikes on the Merchant's account, to the extent in Shopify's possession, custody, or control.

17

The DMCA's safe harbor shields Shopify from liability if it "*has adopted* and *reasonably implemented . . .* a policy that provides for the termination in appropriate circumstances of subscribers and account holders . . . who are repeat infringers." 17 U.S.C. § 512(i)(1)(A) (emphasis added). By the statute's plain language, the italicized participles refer to the then-present state of Shopify's policies *at the time of each infringement*, not historical policies outside the limitations period. *See id.*; *cf. Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722 (2017) (such participles are routinely used "as adjectives . . . to describe the present state of the nouns they modify"). In accordance with the statute's plain text, policies from *outside* the limitations period have no relevance in determining whether Shopify's existing repeat infringer policy, in place during the limitations period, qualifies for the safe harbor. Abundant case law confirms this. For instance, in *Rosen v. eBay, Inc.* (*Rosen II*), the court granted summary judgment in a prior suit ("*Rosen I*") on a DMCA defense, finding the defendant had adequately "adopted, implemented, and published a repeat infringer policy." No. 16-9183, 2018 WL 4808513, at *5 (C.D. Cal. Apr. 4, 2018). But in a subsequent lawsuit, plaintiff argued—and the court agreed—that the proven adequacy of the defendant's policies during the former period did not control the DMCA defense during the new, actionable "relevant time period." *Id.* at *5-6.

So too here: the only relevant question is whether the policy in effect during the limitations period qualifies for the DMCA safe harbor or not. *Id.*; *see also UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1102-03, 1116-18 (C.D. Cal. 2009), *aff'd*, 718 F.3d 1006 (9th Cir. 2013) (finding defendant eligible for DMCA safe harbor by reviewing defendant's "current Copyright Policy"). Shopify has already agreed through the meet-and-confer process to produce its policies and procedures, and communications concerning them, during the limitations period. Nothing further is warranted.

18

Plaintiffs' contrary argument that courts "routinely permit pre-limitations period discovery" into such "policies" is mistaken. Plaintiffs rely on an unpublished three-page order on a motion *in limine* to exclude evidence at trial, *BMG Rts. Mgmt. (US) LLC et al. v. Cox Enters., Inc.*, No. 14-1611 (E.D. Va. Aug. 21, 2018), Dkt. 1018, for the proposition that a "court in this district rejected the same argument that Shopify makes here, and *held that emails from prior to the statute of limitations period* not only were discoverable but were admissible at trial . . . ." Dkt. 56 at 8-9 (emphasis added). To begin, such a three-page "unpublished order [is] of no precedential value." *In re Braxton*, 258 F.3d 250, 259 n. 7 (4th Cir. 2001). Much more importantly, Plaintiffs' recitation of the court's "holding" on the "statute of limitations" is made up: Neither the court's ruling, nor the briefing, mention the "statute of limitations" even once.[8] Rather, the case involved the question of whether documents bearing on the infringement policies actually enforced with respect to Plaintiff's allegations, some of which pre-dated Plaintiff's notices of infringement, were admissible at trial. Order at 2, *BMG Rts. Mgmt.*, No. 1:14-cv-01611 (E.D. Va. Aug. 21, 2018), Dkt. 1018. The order thus in no way "holds" that discovery into pre-limitations policies should be routinely available. *See, e.g.*, *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (an issue that was not "raised in briefs or argument nor discussed in the opinion of the Court" is not precedential); *United States v. Bruguier*, 735 F.3d 754, 762-63 (8th Cir. 2013) (it is "axiomatic" that implicit resolution of an issue that "was not argued or decided" provides "absolutely no support" for a legal position). The court was addressing a small number of

---

[8] *BMG Rts. Mgmt. (US) LLC*, No. 1:14-cv-01611-LO-JFA (E.D. Va.) (Dkt. Nos. 936, 937: Defs.' Mot. in Limine to Preclude Evid. & Test. as to Certain Internal Cox Emails & Commc'ns Concerning Cox's Termination Policies & Treatment of Alleged Infringers; Mem. of Law in Supp. (July 20, 2018); Dkt. 974: BMG's Opp'n (July 27, 2018); Dkt. 982: Defs.' Reply Mem. (July 31, 2018); Dkt. 1018: Order (Aug. 21, 2018).

documents (less than two dozen), addressing the particular facts of that case—not *ex ante* authorizing a fishing expedition into *two years'* worth of additional document discovery.

Plaintiffs' citation to *UMG Recordings, Inc. v. Grande Communs. Networks, LLC*, No. A-17-CA-365-LY, 2018 WL 4627276, at *3 (W.D. Tex. Sep. 26, 2018), is similarly unhelpful. There, the court ruled that policies and "[i]nformation on how [defendant] handled DMCA issues prior to 2013 could be relevant" to the case. *Id.* But in briefing that motion, the plaintiffs contended that the limitations time period extended back to 2010 or "at least 2011." Mot. to Compel at 4-5, *UMG Recordings, Inc.*, No. A-17-CA-365-LY (W.D. Tex. July 6, 2018), Dkt. 108, at 4-5 (citing Ex. L, Dkt. 108-12 at 1). So the court's grant of discovery "prior to 2013" granted discovery *within* the alleged limitations period. *See id.* *UMG* is also unpersuasive, because the Texas district court's reasoning, that pre-2013 discovery could be relevant to showing that defendant "was aware of infringing conduct on its system," 2018 WL 4627276, at *3, is contrary to the Fourth Circuit's binding "actual knowledge" standard articulated in *BMG*. *See BMG Rts. Mgmt.*, 881 F.3d at 311 ("generalized knowledge . . . that infringement was occurring somewhere on [a] network" does not support liability); *see also Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31-32 (2d Cir. 2012) (adopting similar "actual knowledge" standard for DMCA safe harbor).

### d.    Pre-Limitations Discovery Is Not Relevant To Statutory Damages

Plaintiffs make the same mistake when they argue that scorched-earth discovery regarding Shopify's entire history of infringement policies bears on Shopify's "willfulness," along with the "history of copyright infringement, the need for deterrence or rehabilitation, and misleading or false statements by the defendant." Dkt. 56 at 5, 11. Under Circuit precedent, "willfulness" turns, again, on willful conduct as to the *specific, actionable infringements* in suit, *i.e.*, infringement of Plaintiffs' copyrights by the Alleged Merchants during the limitations period. *See BMG Rts.*

*Mgmt.*, 881 F.3d at 312.  Indeed, the Fourth Circuit upheld a jury instruction that infringement is willful if defendant "had knowledge that its subscribers' actions constituted infringement *of [plaintiff's] copyrights*, acted with reckless disregard for the infringement *of [plaintiff's] copyrights*, or was willfully blind to the infringement *of [plaintiff's] copyrights*."  *Id.* at 312 n.7. (emphases added).  And again, Shopify has agreed to produce broad discovery on the Alleged Merchants, including pre-limitations discovery with respect to communications with those Alleged Merchants and any warnings placed on their accounts.  *Supra* at 3-5.  But the law does not support Plaintiffs' demand to fish through years' of additional documents and communications.

The Fourth Circuit's decision nearly thirty-year-old decision in *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) does not merit a different result.  There, the court affirmed jury instructions permitting the jury to consider, among other factors, "evidence that the defendants have a history of copyright infringement," whether defendant is "impervious to either deterrence or rehabilitation," "defendant's knowledge of the copyright laws," "misleading or false statements," or other indicia that defendant "disregarded the fact that its conduct constituted . . . infringement."  74 F.3d at 496.  These generalized factors do not support broad fishing expeditions into material that otherwise bears no relevance to the case.

Indeed, more-recent case law following the Fourth Circuit's decision in *BMG* has found, consistent with *BMG*, that the focus of the statutory damages inquiry is the defendant's willfulness with respect to the actionable acts of infringement *within* the limitations period.  For instance, in *ME2 Productions, Inc. v. Fox*, the Eastern District of Virginia identified the statutory damages factors as including "(1) whether the defendant was the original provider *of the infringed content* to its distribution network; (2) whether, and how much, the defendant profited or saved in connection *with the infringement*; (3) the plaintiff's actual losses; (4) the deterrent effect of

statutory damages; and (5) the defendant's willfulness and intent *in infringing the plaintiff's protected content*." No. 3:17-CV-00057, 2018 WL 1470251, at \*2 (E.D. Va. Mar. 26, 2018) (emphasis added). That is, consistent with *BMG*, the statutory damages is not a roving inquiry into any and all instances of historical infringement anywhere on a provider's network. *See id.*; *see also ME2 Prods., Inc. v. Ahmed*, 289 F. Supp. 3d 760, 763 (W.D. Va. 2018) (similar).

Understandably then, damages discovery on infringement claims generally focuses on facts within the limitations period, not earlier. *See, e.g.*, *Structured Asset Sales, LLC v. Sheeran*, 433 F. Supp. 3d 608, 612 (S.D.N.Y. 2020) (granting request for "documents reflecting revenues received or earned, and expenses incurred or paid . . . on or after June 28, 2015," *i.e.*, three years before the date of filing of the complaint); *Martinez v. McGraw*, No. 3:08-0738, 2012 WL 3987527, at \*2–3 (M.D. Tenn. Sept. 11, 2012) (declining to compel documents, based on "three-year statute of limitations for copyright infringement," as "to the extent that plaintiff's request for production seeks information . . . that predated this period, such information is n[ot] relevant."). The jury can readily determine Shopify's "knowledge of the copyright laws," its statements, its knowledge of whether its conduct constituted contributory infringement, and all the rest of these factors by examining the extensive evidence Shopify is *already* producing. Plaintiffs do not need two years of further documents, related to legacy data processing systems and legacy processes, in order to put forward their evidence regarding statutory damages.

> 2. ***The Requested Pre-Limitations Production Would Be Unduly Burdensome and Disproportionate***

Even were the documents sought by Plaintiffs of some attenuated relevance to this case, that limited relevance would be outweighed by the burden of collecting, reviewing, and producing those materials. Such discovery is disproportionate, and should be denied.

Courts evaluate proportionality by considering "the amount in controversy," the

"importance" of the material sought, the parties' "resources," the parties' "access" to materials, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Brink's Co.*, 2021 WL 5083335, at *13-14.  Proportionality concerns are at their apex where, as here, the "relevance argument on the [legal] issue is tenuous," with the "relevance of the requested information hovering at the outer boundary of Rule 26." *Id.* at 14.  Courts consider the relevance of the material sought against the burden of production, including not just the "time and expense" of such a collection and production, but also the "cost of attorney review." *Id.*

Shopify's agreed productions, which Shopify has detailed above, encompass thousands of documents and will contain all the significant information Plaintiffs seek.  By contrast, it would be unduly burdensome to produce almost two years of additional materials drawn from other repositories of information, for each of Plaintiffs' discovery requests.  Doing so would mean increasing by approximately 60 percent the temporal scope of Shopify's document review, which presently stretches from December 2018 to March 2022, from just over 3 years to more than 5 years.  This increase of roughly 60 percent in the temporal scope of Shopify's review, and a concomitant increase in review volume—which already amounts to tens of thousands of documents—would stretch across not just one repository of information, but would stretch across multiple repositories, such as email, communications over the "Slack" application, and documents found on Shopify personnel's devices.  *See* Gallant Decl. ¶¶ 9, 12.  And a 60 percent increase in temporal scope is likely to equate to more than 60 percent increase in burden:  Both because legacy personnel and repositories of information in use over 3.5 years ago will be more difficult to locate, Gallant Decl. ¶¶ 11, 13-14, and sifting through such minimally relevant materials requires additional care, compared to reviewing core sets of clearly responsive and materials.

The undue burden of expanding Shopify's review to encompass two additional years of

discovery would be particularly acute in this case, given that in October 2018, Shopify transitioned from its legacy system for tracking infringement notices, to Shopify's current system for tracking infringement notices (including related communications).  *See* Gallant Decl. ¶¶ 5, 13.   Collecting documents concerning this pre-October 2018 legacy system would be particularly difficult, time consuming, and costly—especially as it relates to the creation and design of that legacy system, which was a third party system not created by Shopify, and was implemented prior to January 2017.   *Id.* ¶ 13.   Likewise, it would be time consuming and burdensome to collect and review related communications stored outside of this legacy system, in other repositories, from the Shopify team members who were involved during that historical time period.  *See* Gallant Decl. ¶¶ 11-15.   The burden of collecting, reviewing, and producing documents related to a legacy system and processes outside the limitations period is excessive and unnecessary.

Plaintiffs cannot demonstrate that such discovery is proportional.   Given the asserted "relevance of the requested information hovering at the outer boundary of Rule 26," an increase of approximately 60 percent in the temporal scope of Shopify's review, as well as documents related to a legacy system and processes outside the actionable time period, would be unduly burdensome and disproportionate.  *Brinks*, 2021 WL 5083335, at *13-14.  Plaintiffs' requests for an additional *two years* of pre-limitations discovery should be denied.

IV.    **CONCLUSION**

For the foregoing reasons, the Court should enter an Order denying Plaintiffs' Motion to Compel in its entirety.

Dated:  April 22, 2022

/s/ David L. Johnson

David L. Johnson (VSB No. 89289)
Sarang Vijay Damle (*pro hac vice*)
Sarah A. Tomkowiak (*pro hac vice*)
Elana Nightingale Dawson (*pro hac vice*)
Nicholas L. Schlossman (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax
Email: david.johnson@lw.com
Email: sy.damle@lw.com
Email: sarah.tomkowiak@lw.com
Email: elana.nightingaledawson@lw.com
Email: nicholas.schlossman@lw.com

Andrew M. Gass (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax
Email: andrew.gass@lw.com
Email: joe.wetzel@lw.com

Allison L. Stillman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200 / (212) 751-4864 Fax
Email: alli.stillman@lw.com

Jessica Stebbins Bina (*pro hac vice*)
Elizabeth A. Greenman (*pro hac vice* application pending)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5000 / (424) 653-5501 Fax
Email: jessica.stebbinsbina@lw.com
Email: elizabeth.greenman@lw.com

*Attorneys for Defendant Shopify, Inc.*

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2022, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

*/s/ David L. Johnson*

David L. Johnson (VSB No. 89289)