**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; CENGAGE LEARNING, INC.; ELSEVIER INC.; ELSEVIER B.V.; MCGRAW HILL LLC; and PEARSON EDUCATION, INC., | |
| Plaintiffs, | Case No. 1:21-cv-01340 |
| v. | |
| SHOPIFY INC., | |
| Defendant. | |

**DEFENDANT SHOPIFY INC.'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL**

# TABLE OF CONTENTS

I.      Introduction...............................................................................................................1

II.     Factual Background ..................................................................................................4

        A.      Shopify Diligently Responded To Plaintiffs' Notices For Years ...........................4
        B.      Status of Discovery and the Instant Motion............................................................5

III.    Argument ..................................................................................................................5

        A.      Shopify Has Already Produced Relevant and Proportionate Information
                Concerning the Digital Files [RFP 33]. ................................................................6
                1.      Plaintiffs Already Possess Digital Files of The Works Identified in
                        the Complaint, and Have All Information They Need To Assert
                        Their Rights As To Additional Plaintiff-Owned Works...........................7
                2.      The Digital Files of Works Owned By Third-Party Copyright
                        Rightsholders Are Wholly Irrelevant to this Case. ................................10
                3.      Plaintiffs' Requests Are Unduly Burdensome and
                        Disproportionate. ..................................................................................11
        B.      Plaintiffs Failed To Specify Which Records Of Products And Services It
                Sought During Conferrals, And Shopify Has Already Produced All
                Information It Can Provide [RFP 29]. ..................................................................13
        C.      Plaintiffs' Overbroad Requests Regarding Non-Infringement-Related
                Information Should Be Denied [RFP 44; Rogs 17, 18]. ........................................15
        D.      Plaintiffs Are Not Entitled To Every Communication With Alleged
                Merchants On Topics Unrelated To Issues In This Case [RFP 32].......................20

IV.     Conclusion ..............................................................................................................23

## I.     INTRODUCTION

Plaintiffs' second motion to compel seeks to require Shopify to identify, review and produce potentially millions of additional digital files, documents, and emails unrelated to Plaintiffs' copyrighted works in this case or even the broad topic of "infringement." This discovery is wholly irrelevant and far outside the bounds of proportionality. Neither Plaintiffs' secondary infringement claims nor Shopify's defenses under the safe harbors of the Digital Millennium Copyright Act ("DMCA") justify the overbroad, burdensome discovery Plaintiffs demand, including with respect to multiple aspects of Shopify's business and internal communications that have nothing to do with Plaintiffs or infringement. Plaintiffs cannot and should not be permitted to use their infringement lawsuit as a pretext to conduct a fishing expedition in the hopes of finding some evidence to support their baseless accusations that Shopify is a haven for illegal activity by requiring Shopify to plumb all irrelevant parts of its business for material several steps removed from the actual claims and defenses at issue in this case.

Plaintiffs move to compel four categories of documents: (1) all digital files the Alleged Merchants[1] uploaded to Shopify's servers, (2) documents sufficient to show "how" the Alleged Merchants utilized Shopify's products or services, including applications, (3) documents and information related to Shopify's termination of users for violations of its policies other than copyright or trademark infringement (such as fraud or nonpayment) and more broadly, any unlawful activity by Shopify users, and (4) internal Shopify communications concerning the Alleged Merchants that are unrelated to copyright or trademark infringement.

---

[1] The "Alleged Merchants" refers to any Shopify Merchants that were identified in response to an Infringement Notice sent by or on behalf of Plaintiffs, regarding any of the Copyrighted Works or Trademarks upon which Plaintiffs bring suit (Exhibits A and B to the Complaint), within the limitations period, *i.e.*, between December 1, 2018 and March 1, 2022. The number of Alleged Merchants is approximately 1,800. Plaintiffs name the same group "Pirate Merchants." Dkt. 61 at 3.

1

Notably, Plaintiffs misstate Shopify's position with respect to nearly every category of discovery at issue, raising the question as to whether Plaintiffs engaged in nearly eight hours of meet and confers in good faith.  As was the case for Plaintiffs' first motion to compel, Shopify has already agreed to produce much of what Plaintiffs ostensibly seek by this Motion, and certainly including all discovery to which Plaintiffs are entitled under the standard articulated by Rule 26 of the Federal Rules of Civil Procedure.  As to the remainder of the documents that Plaintiffs seek, their Motion should be denied.

*All Digital Files Uploaded by Alleged Merchants.*  Plaintiffs' request is overbroad and unduly burdensome.  Plaintiffs do not need the digital files for the copyrighted works that are the subject of the Complaint, and their request would encompass digital copyrighted works in which Plaintiffs are not asserting rights, which are both irrelevant and could implicate the rights of third-party copyright owners.  Moreover,  the burden of responding would vastly outweigh any minimal relevance of "all" digital files, as this would require Shopify to locate and review every digital file associated with the 1,800 Alleged Merchants, which potentially range in the millions.

*Alleged Merchants' Utilization of Shopify's Services.*  As Shopify has explained, Shopify does not track actual usage of its services in the way Plaintiffs demand.  Shopify has already agreed to produce information detailing the type of plan each Alleged Merchant had, the services available for each plan, the apps and app history for each of the Alleged Merchants, the payment gateways the Alleged Merchants used, their sales history, their bank account history if Shopify Payments was utilized, account ownership information, staff account access information, each merchant's product history, and IP activity, among several other categories of data.  Greenman Decl. ¶ 8. Plaintiffs' motion identifies specific applications that they believe are relevant to their vicarious infringement claims—none of which were raised during meet and confer.  The request is

perplexing, as Shopify has already produced data showing whether those specific applications were used by any of the Alleged Merchants.  Indeed, Shopify has already produced over 19,000 lines of data detailing which applications (including but not limited to the ones referenced in Plaintiffs' motion) each of the Alleged Merchants downloaded and installed.  Shopify has no more information to provide about "how" merchants use its services.

     *Non-Infringement-Related Violations.*  Shopify has already produced discovery showing that Shopify terminated more than 60,000 merchants for violations of its infringement policies during the relevant period.  Plaintiffs' request for discovery into Shopify's termination of users for non-infringement violations is irrelevant.  It is also extremely burdensome.  Plaintiffs' speculation that Shopify will argue that it is "reluctant" to terminate merchants is just that—speculation.  Allowing unbridled discovery on "unlawful" activities on Shopify's platform in a case about copyright and trademark infringement is unsupported by both the law and the facts of this case.

     *Internal, Non-Infringement Related Communications About Alleged Merchants.* Shopify has already agreed to produce all infringement tickets related to each Alleged Merchant (approximately 6,000), all communications *with* each Alleged Merchant (regardless of subject matter), and all communications about the Alleged Merchants related to infringement.  The only discovery Shopify has not agreed to produce is internal discussions *about* each Alleged Merchant that are *unrelated to infringement*, as doing so would involve a time consuming and burdensome search of repositories across the company and its thousands of employees, only to locate a host of irrelevant communications.  Accordingly, the burden is vastly outweighed by any tangential relevance to this case.

## II.    FACTUAL BACKGROUND

### A.    Shopify Diligently Responded To Plaintiffs' Notices For Years

With approximately 2 million merchants actively using Shopify's services, Shopify is committed to respecting the intellectual property rights of its merchants and third parties.[2]  Shopify implements robust policies aimed at targeting and handling allegations of intellectual property infringement.  Since December 1, 2018 alone, Shopify has actioned more than 179,836 tickets involving allegations of copyright and trademark infringement, and terminated more than 60,000 merchants under its Repeat Infringer and Enhanced Repeat Infringer Policies.

Within that time period, Plaintiffs have been one of the most prodigious infringement complainants, sending near-weekly notices to Shopify alleging copyright and trademark infringement of thousands of works (mostly ebooks) Plaintiffs claim to own, spanning tens of thousands of unique URLs.  Shopify methodically and diligently responded to these notices, actioning more than 6,000 tickets—each of which may contain multiple URLs—in its ticketing system related to the Alleged Merchants alone.  For Plaintiffs' part, rather than act expeditiously on their claimed copyrights, they apparently laid in wait amassing a volume of complaints in order to bring this action in December 2021, alleging various claims of secondary liability against Shopify for thousands of copyrighted works.

---

[2] Plaintiffs cite to a transparency report posted on Shopify's website as supposed evidence that Shopify promotes how it "shields its merchants from legal action." Dkt. 61 at 2.  This is false.  The transparency report simply explains that when Shopify receives requests for legal process/subpoenas, Shopify ensures the requesting entity has followed the necessary procedures under the law before Shopify responds with merchant data.  These procedures are necessary in part due to Shopify's obligations under Canadian privacy law, which by statute bars Shopify from producing merchant-identifying information without a valid court order or subpoena issued by a court with jurisdiction to compel the information.  Shopify has informed Plaintiffs as much repeatedly.  What Plaintiffs nevertheless still call "shielding merchants from legal action" is in fact process required by applicable law.  As a good citizen and provider of a platform used internationally, this is precisely what Shopify should do.

**B.**     **Status of Discovery and the Instant Motion**

Discovery is underway and Shopify has already agreed to produce voluminous discovery on the Alleged Merchants and infringement claims actually pled.  To that end, Shopify has already produced more than 13,000 pages of documents and will be producing at least several thousand more documents next week.  On April 15, the parties filed cross-motions to compel additional discovery, Dkts. 52, 55, which are pending before this Court.  On April 22, Plaintiffs filed this second motion to compel, challenging (i) Shopify's objection to searching for and producing "all" digital files uploaded by the Alleged Merchants that can be located on Shopify's servers, including potentially millions of digital files not claimed to be owned by Plaintiffs (RFP 33); (ii) Shopify's representation that it does not maintain records sufficient to show each and every means and occasion in which the Alleged Merchants utilized Shopify's services and other applications in the manner Plaintiffs have requested, beyond what it has already produced or agreed to produce (RFP 29); (iii) Shopify's decision not to produce information on how it has responded to violations of its policies unrelated to infringement, including other violations of its Acceptable Use Policy ("AUP"), and violations relating to fraud or non-payment (Interrogatories ("Rogs") 17, 18; RFP 44), and (iv) Shopify's decision not to search for and produce internal communications concerning the Alleged Merchants related to topics *other than* infringement (RFP 32).  Dkt. 61 at 4-13.

**III.     ARGUMENT**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1). However, "discovery, like all matters of procedure, has ultimate and necessary boundaries" and "[d]iscovery not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) (citations omitted).  Additionally, all discovery must be proportional.  Fed. R. Civ. P. 26(b)(1).

Courts evaluate proportionality by considering "the amount in controversy," the "importance" of the material sought, the parties' "resources," the parties' "access" to materials, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Brink's Co. v. Chubb Eur. Grp. Ltd.*, No. 3:20-520, 2021 WL 5083335, at *4 (E.D. Va. Feb. 24, 2021), *adopted*, 2021 WL 5083332 (E.D. Va. Mar. 12, 2021).

Shopify has already agreed to provide Plaintiffs all of the information that is relevant and proportional to this case, *i.e.*, all the discovery that Rule 26 supports. But the demands in this Motion—for thousands or millions of digital files that have no bearing on this case, for communications that would require adding potentially hundreds of custodians to the document review though they are necessarily unrelated to Plaintiffs claims of infringement, and for documents that literally do not exist—should be denied in full.[3]

A.    **Shopify Has Already Produced Relevant and Proportionate Information Concerning the Digital Files [RFP 33].**

Plaintiffs argue that Shopify should be ordered to turn over every digital file ever uploaded to Shopify's servers by the Alleged Merchants, Dkt. 61 at 4-8 (RFP 33), including not only the digital files for the copyrighted works at issue in this case, but also all other digital files, even those Plaintiffs do not—and could not possibly—claim any ownership over. Such a position is untenable. To begin, Plaintiffs have not articulated a coherent reason why they need Shopify to produce digital files of the specific copyrighted works at issue in this case. To the extent Plaintiffs wish to ascertain whether any other *plaintiff*-owned works were uploaded to Shopify's servers by the Alleged Merchants, ***Shopify has already produced merchants' inventory lists***, so Plaintiffs

---

[3] Shopify incorporates by reference its statement of the relevant legal standards for the parties' claims and defenses, articulated in Shopify's April 15, 2022, motion to compel. *See* Dkt. 53 at 8-9.

can already extract the information they need to identify specific works on the Alleged Merchants' inventory lists. Further, ***Shopify has already provided information that would indicate whether, through the Alleged Merchants' use of Shopify's Digital Downloads app***,[4] there is any possibility Shopify might have a digital file of such works in its possession, custody, or control. Shopify has repeatedly offered to meet and confer regarding any particular files Plaintiffs would like to receive that appear on those lists. To the extent Plaintiffs seek digital files of works *not* owned by Plaintiffs, such files are wholly irrelevant, and the burden of identifying and producing them would greatly outweigh any minimal relevance that Plaintiffs could possibly articulate.

## 1. *Plaintiffs Already Possess Digital Files of The Works Identified in the Complaint, and Have All Information They Need To Assert Their Rights As To Additional Plaintiff-Owned Works.*

*First*, Plaintiffs argue that Shopify should produce digital files of each of the over 3,400 works identified in the Complaint (to the extent they existed, and still exist, on Shopify's servers).[5] Plaintiffs' primary argument in favor of this discovery is that other courts have recognized the importance of digital files in copyright infringement cases and ordered the production of such files in other copyright cases. Dkt. 61 at 5. But Plaintiffs' case law is inapposite, and Plaintiffs offer no cogent reason why such files are relevant in *this* case.

In *Viacom Int'l Inc. v. YouTube Inc.*, plaintiffs moved to compel digital files that were "removed videos" from YouTube.com. 253 F.R.D. 256 (S.D.N.Y. 2008). In that case, plaintiffs

---

[4] The Digital Downloads app is a free application offered by Shopify that provides merchants with the ability to fulfill orders for digital files, which merchants can sell to consumers. Gallant Decl. ¶ 12. The Digital Downloads app is the only application that Shopify offers to customers for this purpose. *Id.* ¶ 14.

[5] Shopify does not and practically cannot retain all merchant records forever in the ordinary course of business. Gallant Decl. ¶ 9. In ordinary course, Shopify must also safeguard and remove merchant data in accordance with its privacy policy and obligations across the globe. *Id.* ¶ 10. Absent some hold or other similar exception, these principles applied to merchant data prior to Plaintiffs' initiation of this Action. *Id.* ¶ 11.

sought digital files in order "to identify which (if any) infringe[d] their alleged copyrights." *Id.* at 261. In granting plaintiffs' motion to compel production of these videos, the court considered the fact that in order to prove plaintiffs' claim, reviewing the videos individually was essential to determining whether the videos infringed the plaintiffs' alleged copyrights. *See id.* Here, Plaintiffs do not need to review the digital files of the over 3,400 works in the Complaint to determine whether they infringe Plaintiffs' alleged rights. Plaintiffs have already made that claim. As explained below, Shopify has identified a tailored process that would provide Plaintiffs the information they need, without requiring a roving and unduly burdensome needle-in-the-haystack search for unidentified files on Shopify's servers.

Plaintiffs' reliance on *Arista Recs. LLC v. Usenet.com, Inc.*, is even more off-target, as the facts in *Arista* are wholly inapplicable here. 608 F. Supp. 2d 409 (S.D.N.Y. 2009). In *Arista*, plaintiffs alleged spoliation of relevant evidence, including "Digital Music Files" that plaintiffs alleged were infringing, leading plaintiffs to seeks sanctions against defendants. *Arista*, 608 F. Supp. 2d at 416. Here, Plaintiffs have not alleged spoliation—nor could they—a plainly dispositive distinction to the facts of this case that Plaintiffs ignore. *See id.* at 416-17, 433.

Unlike in *Viacom* and *Arista*, Plaintiffs do not allege they need these digital files to determine whether those files are infringing; rather, Plaintiffs state that the digital files are "highly probative" of their contributory and vicarious liability claims. Dkt. 61 at 5. But the Digital Downloads app passively enables merchants to fulfill orders for digital files. Gallant Decl. ¶ 12, 16. Plaintiffs wholly fail to explain how Shopify's possession, if any, of "all" of the Alleged Merchants' digital files has any bearing on whether Shopify "materially contributed to the infringing conduct of its merchants" or whether Shopify possessed the "right and ability to

supervise" any allegedly infringing conduct as required under the relevant case law.[6]  Dkt. 61 at 5-6; *see also CoStar Grp., Inc. v. LoopNet, Inc*., 373 F.3d 544, 550 (4th Cir. 2004) ("[u]nder a theory of contributory infringement, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another' is liable for the infringement, too.  Under a theory of vicarious liability, a defendant who 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities' is similarly liable.") (citations omitted) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971)).

*Second*, to the extent Plaintiffs are seeking discovery to determine whether additional *plaintiff-owned* digital files were offered for sale by any of the Alleged Merchants—a claim Plaintiffs have not made to date—Shopify offered Plaintiffs a solution to provide Plaintiffs with all of the information they need to make a more tailored request that would not require Shopify to potentially review and turn over hundreds of thousands or more digital files to Plaintiffs, the vast majority of which almost certainly do not relate to this case in any conceivable way.  Greenman Decl. ¶ 4.  Specifically, Shopify informed Plaintiffs that it had already agreed to produce (to the extent available) an inventory list of all products offered by each Alleged Merchant, from which Plaintiffs can identify titles of works they may claim to own.  *Id.*  Further, Shopify agreed to

---

[6] Plaintiffs claimed during meet and confers that it is custom and practice in the ebook industry to include certain copyright information in the digital files, making the copyright or trademark notices "accessible" to Shopify.  Plaintiffs appear to suggest that Shopify could have reviewed the digital files uploaded to the Digital Downloads app to determine whether such information was present. But this argument fails for several reasons.  To begin, in the ordinary course of business, the Trust & Safety team—the team responsible for handling and responding to notices of alleged infringement on Shopify's platform—does not access or review the digital files stored on the Digital Downloads app.  Gallant Decl. ¶ 16. But even if it had, an inspection alone could not have informed Shopify as to whether the specific merchant had the necessary rights to sell a particular digital file.

provide information concerning whether an Alleged Merchant ever downloaded the Digital Downloads app, which would indicate whether Plaintiffs had any basis to allege Shopify possessed any digital files of products offered for sale by each Alleged Merchant.[7] *Id.* After reviewing this discovery, if Plaintiffs had questions about *specific* files for *specific* Alleged Merchants, Shopify would review its records to determine whether any such digital files were ever, and remained, in Shopify's possession, custody, or control. *Id.* That reasonably tailored process, as opposed to the ocean boiling Plaintiffs propose Shopify perform at the front end, could be completed promptly. Plaintiffs refused this offer. Nevertheless, Shopify has already produced all of this information. Greenman Decl. ¶ 5.

### 2. The Digital Files of Works Owned By Third-Party Copyright Rightsholders Are Wholly Irrelevant to this Case.

Plaintiffs' request for every digital file the Alleged Merchants have uploaded to Shopify's servers regardless of whether it is owned by Plaintiffs is even further outside the bounds of relevant and proportionate discovery. Plaintiffs argue that obtaining these files would somehow allow them to rebut any argument by Shopify that the Alleged Merchants offered a mix of infringing and non-infringing materials, and are not "pure pirate" merchants. Dkt. 61 at 6. But this argument makes no sense. Even were Shopify to produce all digital files in its possession for each of the Alleged Merchants, the digital files themselves cannot tell Plaintiffs whether the Alleged Merchants were authorized sellers of those works. Accordingly, these files could not possibly prove Plaintiffs' argument that the Alleged Merchants are "pure pirate" merchants. Instead, Plaintiffs would need

---

[7] Not all Alleged Merchants used the Digital Downloads app. Gallant Decl. ¶ 17. Even for merchants who did use the Digital Downloads app, Shopify may not still possess all digital files the Alleged Merchant ever uploaded, due either to deletion by the merchant, by virtue of the fact that Shopify does not retain merchant records indefinitely in the ordinary course of business, or for some other reason Shopify did not possess the file. *See supra* n.5.

extensive third-party discovery from the third-party rightsholders of these other works (rightsholders who have no relationship to this action) to determine whether the Alleged Merchant had the necessary rights to sell a particular work. But to the extent Plaintiffs are inclined to pursue such discovery, they can do so after reviewing the Alleged Merchants' inventory lists—they don't need hundreds of thousands of (or more) digital files.

Plaintiffs' cited authorities do not remotely support their argument. Instead, the cases address only whether production of relevant copyrighted materials in litigation is fair use (and thus not itself an infringing act). *See Bond v. Blum*, 317 F.3d 385, 393, 398 (4th Cir. 2003).[8] But Shopify has never contended that it was refusing to produce digital files out of fear of infringement. Rather, Shopify explained that Plaintiffs' extraordinarily broad-ranging request implicates the rights of countless third party rightsholders, wholly unrelated to this action, who may reasonably prefer their digital files not be turned over to Plaintiffs' counsel.[9] In any event, Shopify's primary contention is that production of hundreds of thousands of digital copyrighted works that are owned by third-party rightsholders is overbroad, unduly burdensome, and has no relevance to the case at issue, which involves *plaintiff*-owned works.

### 3.    *Plaintiffs' Requests Are Unduly Burdensome and Disproportionate.*

Plaintiffs' request for the entirety of Alleged Merchants' digital files is also wildly disproportionate. Proportionality concerns are at their apex where, as here, the "relevance

---

[8] For similar reasons, plaintiffs' reliance on two Ninth Circuit cases is equally unavailing. In *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir. 1982), the court considered whether the use of an abbreviated copy of a film in an abatement action was fair use. And in *Stern v. Does*, 978 F. Supp. 2d 1031, 1044 (C.D. Cal 2011), the court ruled that the "one-sentence listserv post is devoid of creative effort and therefore uncopyrightable."

[9] This preference should not come as a surprise to Plaintiffs, given that they insisted on a separate category of protection titled "Protected Copyrighted Materials" for Plaintiffs' works, in which Plaintiffs seek protections akin to "Highly Confidential – Attorneys' Eyes Only" for all of their works in this matter. *See generally* Dkt. 50.

argument on the [legal] issue is tenuous," with the "relevance of the requested information hovering at the outer boundary of Rule 26." *Brink's Co.*, 2021 WL 5083335, at *11, 13. Courts balance relevancy against the burden of production, including not just the "time and expense" of such a collection and production, but also the "cost of attorney review." *Id.* at 13. There is no question that such a burden exists here.

Producing all digital files related to the Alleged Merchants—even only those merchants who downloaded the Digital Downloads app—would be vastly disproportionate to the needs of this case. According to Shopify's records, approximately 12% of all Alleged Merchants downloaded the Digital Downloads app. Greenman Decl. ¶ 6. Looking at the inventory lists for a small sample of just 20 of those Alleged Merchants who downloaded the Digital Downloads app, those 20 Alleged Merchants alone collectively offered for sale nearly 858,000 items. *Id.* To determine which of those items are digital files and which are in Shopify's possession, custody, or control today would be incredibly burdensome and costly, requiring countless hours of both attorneys' and Shopify personnel's time. Gallant Decl. ¶ 15-18. Plaintiffs' offer in their Motion to limit this request to "eBooks only," Dkt. 61 at 5, does nothing to lessen this burden. There is no way for Shopify to know what an individual digital file contains (including by reference to the file's name, which the merchant controls) without opening and performing a human review the contents of the file and making a subjective determination. Gallant Decl. ¶ 15. Further, there is no reliable way to tell from such a human review of the file whether the file infringes upon a copyrighted work, including an ebook, or that otherwise eliminates any possibility the work is appropriately licensed or owned by the seller. *Id.*

Plaintiffs cannot demonstrate that such discovery is proportional. Given the asserted "relevance of the requested information hovering at the outer boundary of Rule 26," combined

with the massive undertaking this request would impose on Shopify, such a request would be unduly burdensome and disproportionate. *See Brinks*, 2021 WL 5083335, at *13.

**B.** **Plaintiffs Failed To Specify Which Records Of Products And Services It Sought During Conferrals, And Shopify Has Already Produced All Information It Can Provide [RFP 29].**

Plaintiffs next seek production of documents related to Shopify's provision of products and services to any Alleged Merchant and "the extent of the Accused Shopify Merchant's utilization of those products and services." Dkt. 61-1 at 43 (RFP 29). This request should be denied as moot. Plaintiffs' own Exhibit 2, an email from Shopify's counsel, explicitly confirms that Shopify agreed to produce the very information specifically requested by Plaintiffs in their motion: "information regarding what specific plan each Alleged Merchant had, and what services were available under each plan"; "information regarding whether Alleged Merchants downloaded Shopify-owned applications"; and "a number of details regarding each Alleged Merchant's utilization of its platform, such as information related to orders, products, and Shopify Payments." Dkt. 61-2 (Ex. 2) at 5.

And indeed, Shopify has already produced this information to Plaintiffs. Greenman Decl. ¶¶ 6, 8. Specifically, Shopify produced a spreadsheet with over 19,000 lines of data, which contains information about what applications each Alleged Merchant used (including, but not limited to, all five applications that Plaintiffs referred to in their Motion: Digital Downloads, Shopify Inbox, Vitals, Google, and Facebook), and when those applications were installed, uninstalled, activated, or deactivated. *Id.* And it is all that Shopify *can* produce here. As Shopify explained to Plaintiffs during numerous meet and confers, the Alleged Merchants' usage of

particular products or services in the manner Plaintiffs request is simply not information Shopify keeps in the ordinary course of business. *Id.*; Gallant Decl. ¶ 8.[10]

While Plaintiffs state that it "does not seem possible" that Shopify does not track usage of its products or services, the spreadsheet containing information about what applications each Alleged Merchants used alone highlights the enormity of such an undertaking—tracking each of Shopify's approximately 2 million merchants' usage of multiple products, services and applications in the manner requested by Plainitffs would create an enormous dataset that is unnecessary to Shopify's operations and would be unduly burdensome and expensive to maintain. Gallant Decl. ¶ 8. A spreadsheet that only tracks installation and activation of each application resulted in more than 19,000 entries for the small subset of Alleged Merchants at issue in this case; it is easy to imagine the resulting volume of data if Shopify tracked how each service is used by every merchant. *See* Greenman Decl. ¶ 5.

In addition to seeking information that does not exist, Plaintiffs also briefly argue that data regarding how Shopify is compensated by third party application developers who make their products available to Shopify merchants is "highly relevant" in establishing any alleged vicarious infringement.[11] Yet, RFP No. 29 does not request information regarding whether and how Shopify

---

[10] In four separate meet and confers, Shopify explained in detail to Plaintiffs exactly the information it has, and does not have, with respect to the Alleged Merchants. Greenman Decl. ¶ 7; *See* Dkt. 61-2 (Ex. 2). Shopify also informed Plaintiffs that if they had "specific questions about particular services after reviewing these materials," Shopify was "willing to meet and confer regarding whether that particular service is one in which Shopify is able to provide additional specifics." Dkt. 61-2 (Ex. 2) at 5. Plaintiffs declined to elaborate, and never identified the applications mentioned in their Motion. Greenman Decl. ¶ 8.

[11] In support of its position, Plaintiffs once again invoke *Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795 (E.D. Va. 2020) as their *only* authority, but *Cox* does not apply here. In evaluating whether Cox gained "financial benefit" from the alleged vicarious infringement, the court and the jury only considered two categories of documents: internal emails and customers' monthly payments, *see id.* at 814-15. What Plaintiffs seek here fall under neither category. Indeed, beyond these two categories, *Cox* mentioned no other categories of evidence that are relevant to

14

is paid for merchants' use of these third-party applications (nor did Plaintiffs request such information during the four meet-and-confer sessions between the parties). Dkt. 61-1 at 44. Shopify has already produced documents sufficient to show all payments made by Alleged Merchants to Shopify. Greenman Decl. ¶ 8. Plaintiffs have not explained how payments received by Shopify due to the use of third-party applications—which Plaintiffs do not allege were used by the Alleged Merchants to infringe—demonstrate an "obvious and direct financial interest in the infringing materials." Dkt. 61 at 9.[12]

### C.    Plaintiffs' Overbroad Requests Regarding Non-Infringement-Related Information Should Be Denied [RFP 44; Rogs 17, 18].

Plaintiffs' request for broad, sweeping information that is completely unrelated to their claims of copyright and trademark infringement should be denied. Plaintiffs' requests (RFP 44 and Rogs 17 and 18) seek all documents concerning "reports, studies, research, presentations, or analysis concerning fraud or other illegal activity by Shopify Merchants," and ask Shopify to state, on a "per penalty basis, the number of Shopify Merchants whose services [Shopify] terminated, temporarily suspended, or otherwise adversely affected for violation(s) of [Shopify's] Acceptable Use Policy other than copyright or trademark infringement" and for the number of merchants who services were terminated for "failing to pay amount owing on the Shopify Merchant's account" for each month from January 1, 2017 to present. *See* Dkt. 61-1 (Ex. 1) (RFP 44); Dkt. 61-3 (Ex. 3) (Rogs 17, 18). This discovery is wholly irrelevant to the issues in this case and enormously burdensome.

---

the "financial interest" element, including customers' usage of products or payments that Cox received from third parties (like Google and Facebook). *Cox* does not justify Plaintiffs' demands.

[12] And in any event, as plaintiffs acknowledge in their Motion, much of this information is available in the public domain, *see* GOOGLE CHANNEL, SHOPIFY APP STORE, https://apps.shopify.com/google (last accessed Apr. 23, 2022) (noting that "Shopify may be compensated by Google").

Plaintiffs allege that discovery of non-infringement-related terminations, reports, presentations, etc. is somehow indicative of whether Shopify had the right and ability to supervise or control infringing activity (and thus should be held vicariously liable), and relevant to the issue of willfulness. Dkt. 61 at 10. Plaintiffs also claim this discovery will counter Shopify's (theoretical) contentions that termination is an extreme remedy they are reluctant to enforce, or that infringement is a minor problem on Shopify's platform. *Id.* at 10-11. None of these assertions justify Plaintiffs' demand for this irrelevant information.

*First*, the "'right and ability to control' the infringing activity, as the concept is used in the DMCA, cannot simply mean the ability of a service provider to remove or block access to materials posted on its website or stored in its system." *Costar Grp. Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 704 (D. Md. 2001), *aff'd CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004); *Wolk v. Kodak Imaging Network*, *Inc.*, 840 F. Supp. 2d 724, 748 (S.D.N.Y. 2011) (citing *Corbis Corp. v. Amazon.com*, Inc., 351 F. Supp. 2d 1090, 1110 (W.D. Wash. 2004)); *see also UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006, 1030 (9th Cir. 2013); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 38 (2d Cir. 2012). Rather, in evaluating vicarious liability, the relevant inquiry is whether the service provider exerts "substantial influence" on the activities of users, *see UMG Recordings Inc.* 718 F.3d at 1030, and "must take the form of prescreening content, rendering extensive advice to users regarding content and editing user content." *See Wolk*, 840 F. Supp. 2d at 748. Plaintiffs' requests here—which seek information as to the number of terminations for nonpayment and violations of the AUP for reasons other than infringement, as well as documents about "fraud" and other "illegal activity"—have nothing whatsoever to do with Shopify's ability to prescreen, render advice, or edit user content as it relates

16

to infringement.  *See id.*  These requests are therefore wholly irrelevant to whether Shopify has the right and ability control its users' infringing activity.  *See id.*

Plaintiffs' authorities are inapposite.  In *Arista Records, Inc. v. MP3Board.com*, the court found that MP3Board had the "right and ability" to control infringing activity because it could, and did, police users who posted inappropriate links to its database.  No. 00 CIV. 4660(SHS), 2002 WL 1997918, at * 11 (S.D.N.Y. Aug. 29, 2002).  And in *Sony Music Ent. v. Cox Commc'ns, Inc.*, the court relied on Cox's contractual and actual ability to terminate users for violations of its AUP sufficient to support its "right and ability to terminate."  464 F. Supp. 3d 795, 813 (E.D. Va. 2020). Neither case holds that discovery into *every* termination a company makes for *any* reason is necessary to determine whether a termination right exists.  And none of these disputed requests are aimed towards discovering Shopify's right to control, or right to exert substantial influence over the activities of its merchants.

Rather, Plaintiffs' overbroad requests constitute a burdensome and unnecessary fishing expedition, of a type that is routinely denied in copyright cases.  *See Itasca Images, LLC v. Shutterstock, Inc.*, No. 21-CV-287 (JRT/DTS), 2021 WL 6849104, at *5–6 (D. Minn. Nov. 22, 2021) (denying request for documents regarding the difference in rate of fraud and copyright infringement for specific geographic regions); *see also Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 263 (S.D.N.Y. 2008) (denying plaintiffs' request for information about each video available on YouTube including "public comments from others about it, whether it has been flagged as inappropriate by others (for copyright infringement or for other improprieties such as obscenity) and the reason it was flagged, [and] whether an administrative action was taken in response to a complaint about it.").  The same result is warranted here.

**Second**, despite Shopify already producing discovery demonstrating that it has terminated at least 60,000 merchants for infringement under its policies from the period December 1, 2018 through March 1, 2022, *see* Dkt. 61-3 at (Shop's Resp. to Rogs) at 32-34.  Plaintiffs assert they need discovery on non-infringement terminations to show that Shopify is comparatively reluctant to terminate infringers.  *See, e.g.*, Dkt. 61 at 10-11.  Plaintiffs' sole basis for speculating that Shopify will raise this argument appears to be because the defendant Cox in *Sony Music Ent. v. Cox* raised a similar argument at trial.  But Shopify is not Cox, who at that point was facing its *second* infringement trial and who had a years-long record of *practically never* terminating subscribers to support the requested discovery.  With a record of at least 60,000 infringement terminations in the past three years, it is clear that infringement-related terminations are not rare at Shopify, or something Shopify feels it cannot do.  *Cf. Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d at 814 (finding vicarious liability where defendant's policy enabled it to immediately suspend or terminate access for infringement but defendant declined to ever do so).  There is accordingly no basis for discovery into *other* kinds of terminations as the facts warranted in *Cox*.

More fundamentally, it is unclear how such discovery would prove the point Plaintiffs wish to make.  If Shopify terminated every merchant who violated every non-infringement policy, and this number was much higher than the number of terminations for infringement, that would not demonstrate Shopify's "reluctance" to terminate for infringement without knowing the absolute number of merchant violations that fall into each category.  In other words, if more merchants commit more violations of non-infringement policies than infringement policies, Shopify will necessarily terminate more merchants for non-infringement reasons.  But that says nothing about its willingness (or not) to terminate merchants for infringing activities.  Put differently, regardless

18

of whether Shopify terminates *more* merchants for reasons other than infringement (like non-payment) or terminates *less* merchants for reasons other than infringement, it will not make it any more or less probable that Shopify vigorously enforces its infringement policies *as to the actual population of merchants that allegedly engage in infringement* and upon which Plaintiffs are already obtaining granular, detailed discovery.

**Third**, plaintiffs allege that such evidence is relevant based on a speculative theory that Shopify will "seek[] to present the infringing activity alleged in this suit as a small problem that is inconsistent with the larger activity on its platform." Dkt. 61 at 11. Shopify has not made that argument. But even if it does, Plaintiffs are not entitled to broad discovery into "larger activity" on Shopify's platform such as fraud or failing to deliver products, in order to prove that Shopify knew about alleged infringement or "materially contributed" to infringement. *Id.* at 9, 11. Whether an Alleged Merchant was delinquent in its bills, attempted to sell an unlawful or exploitive product, or failed to deliver a product to a customer has no bearing on Shopify's knowledge of infringing activity on its platform, its ability to control or supervise such activity, or its reasonable implementation of a policy that terminates repeat infringers when such activities are brought to Shopify's attention. Plaintiffs cite no support or case law whatsoever for their proclamation that "[a] failure to terminate a repeat infringer is all the more knowing and willful if Shopify knew that the merchant was engaged in other forbidden activity." Dkt. 61 at 12.

Plaintiffs have thus failed to demonstrate that this discovery is relevant to any claims or defenses actually at issue in this case. Moreover, collecting and reviewing this discovery would be enormously burdensome. Terminations for reasons other than infringement are at the direction of different teams of employees at Shopify, and would require collections for a number of new custodians who currently have no relation to this case. Further, searching more broadly for

19

"fraud," "nonpayment," or "other illegal activities" with respect to such terminations, or with respect to reports, studies, or presentations, would likely generate a number of false positives given these topics cover a wide range of contexts in which these terms are used or discussed by Shopify and its personnel, all of which are completely unrelated to infringement. Shopify should not be forced to review tens of thousands of additional documents on the off chance that a handful may be tangentially related to this case. Given Plaintiffs have not articulated any cogent relevance argument, this discovery is plainly disproportionate to the needs of this case and unlikely to lead to the discovery of admissible evidence, and thus should be denied.

### D.    Plaintiffs Are Not Entitled To Every Communication With Alleged Merchants On Topics Unrelated To Issues In This Case [RFP 32].

Plaintiffs last request seeks "notes, comments, or communications concerning Shopify's communications with any Accused Merchant." Dkt. 61-1 (Ex.1) (RFP 32). In their motion, Plaintiffs focus on communications about Alleged Merchants related to fraud, other illegal activities, and ebooks.[13] Dkt. 61 at 11-12. But Shopify has already agreed to produce all tickets in its infringement ticketing system related to the Alleged Merchants, as well as all communications *with* the Alleged Merchants, regardless of whether these relate to infringement or any other topic. Greenman Decl. ¶ 9. And Shopify has agreed to produce all communications *about* the Alleged Merchants related to copyright and trademark infringement. *Id.* In other words, plaintiffs are already getting virtually everything related to the Alleged Merchants. The only thing excluded is *internal* communications *about* the Alleged Merchants that are *unrelated* to copyright

---

[13] Further, while plaintiffs contend that Shopify has not "agreed to search for the term 'eBook,'" this statement is demonstrably false. In Exhibit 2 to Plaintiffs' own motion, counsel for Shopify expressly told counsel for plaintiffs that "we have already included the term 'ebook' (including derivations), along with other appropriate search terms, in our searches to date, including searches that will be relevant to RFP . . . 32." Dkt. 61-2 at 1.

or trademark infringement.  *Id.*  Such internal communications would be enormously burdensome to search for, collect, and review, and are wholly irrelevant to Plaintiffs' claims and Shopify's defenses.  For example, discussions *about* an Alleged Merchant related to whether the merchant needed a password reset or a payment refund has no bearing on Plaintiffs' infringement claims, but would be within the scope of Plaintiffs' RFP No. 24.  Similarly irrelevant—despite Plaintiffs' strenuous arguments otherwise—are internal communications about whether the Accused Merchants are timely fulfilling their orders or selling inappropriate (but non-infringing) content.  Such communications lack any bearing on Plaintiffs' claims or Shopify's defenses under the DMCA.

The burden of reviewing these materials cannot be overstated.  For infringement alone, Shopify identified a large number of custodians who potentially had responsive information relevant to this litigation and collected data from these custodians.  Gallant Decl. ¶ 22.  This collection included email, documents, Slack channels, and workspaces for each custodian.  *Id.*  Additionally, Shopify transferred data for its entire compliance ticketing system, Zendesk communications related to the Alleged Merchants, and group Slack channels that are likely to contain discussions about infringement.  *Id.*  The resulting collection involved hundreds of hours of coordination and effort by Shopify's employees and counsel, the transfer of millions of messages, emails, Slack channel communications, and documents for review, and a specialized vendor to build an extraction tool unique to Shopify.  *Id.*  Shopify performed those tasks affirmatively to meet its obligations in this litigation.  *Id.*

In order to collect and review communications about Alleged Merchants for topics such as nonpayment, fraud, or other violations of Shopify's AUP unrelated to infringement, Shopify would have to undergo this exact same procedure for *different* custodians who are charged with reviewing

and responding to allegations (or perform mundane administrative tasks) related to topics *other* than copyright or trademark infringement, and review different Slack channels, emails, and documents. *Id.* ¶ 23.  This is potentially a very long list, considering, as one might expect, most of Shopify's thousands of employees deal with merchants or their stores.  Shopify would have to potentially collect data from hundreds of additional custodians. *Id.*  Accordingly, expanding discovery to include topics wholly unrelated—or even tangentially related[14]—to infringement would exponentially increase the burden on Shopify, involving hundreds of hours of additional time for both attorneys and Shopify. *Id.* ¶ 24.  Given the attenuated relevance of these documents at best, such discovery is not proportionate to the needs of this case.

Plaintiffs nevertheless attempt to justify broad, burdensome, invasive discovery under the speculation that some Shopify employee may have referred to infringement by some name other than infringement.  Such an argument is disingenuous at best.  Shopify has clearly delineated policies based on violations for infringement and other AUP policies, such as fraud.  Its employees are trained to recognize the differences, and there is no support for Plaintiffs' theory, especially one that would open up such broad, burdensome, and invasive discovery. *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 9718873, at *21 (S.D.W. Va. Sept. 21, 2020), *objections overruled*, No. 2:19-CV-00236, 2021 WL 2345972 (S.D.W. Va. June 8, 2021) (rejecting motion to compel additional documents when defendant has "performed a reasonable investigation" into where responsive documents are located and "continues to search" for

---

[14] Plaintiffs have failed to articulate even a tangential relevance for these communications, nor have they cited to any case law that such far-afield communications are discoverable.  Indeed, all of Plaintiffs' examples merely describe documents or information that Shopify has already agreed to produce.  For example, Plaintiffs allege that "[c]ommunications with" the Alleged Merchants "likely will show Shopify materially contributing to" infringement if customer support helped a merchant set up an ad campaign for eBooks." Dkt. 61 at 5.  But as explained, Shopify has already agreed to produce all communications *with* the Alleged Merchants regardless of subject matter.

responsive documents); *Adams v. 3D Sys., Inc.,* No. 0:19-CV-00663-JMC-KDW, 2021 WL 5772797, at *3 (D.S.C. Jan. 11, 2021) (refusing to compel documents despite plaintiff's speculation that discovery responses are inaccurate).  As Shopify explained to Plaintiffs, "based on a reasonable investigation . . ., in every instance, Shopify personnel have referred to alleged infringement as 'infringement' and not some other generic term like 'fraud.'  While it is possible that a document could use another word in addition to infringement (such as 'copyright infringement' or 'e-book infringement' or 'infringement in violation of the AUP'), in each instance the use of 'infringement' will results in the materials being captured by our search protocol."  Dkt. 61-2 (Ex. 2) at 1.  This makes perfect sense, as "fraud" is not a synonym for "infringement" and indeed defines other Merchant behavior.  The odds that terms like "fraud" are being used as a proxy for infringement without any reference to "infringement" whatsoever, however, is extremely low, given fraud and infringement are treated differently under Shopify's policies.  Rather, it is highly likely that such a search will instead return an extremely high false positive rate with few— if any—responsive documents.

Plaintiffs' request for this broad, invasive, irrelevant discovery should be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter an Order denying Plaintiffs' Motion to Compel in its entirety.

Dated:  April 27, 2022

/s/ David L. Johnson

David L. Johnson (VSB No. 89289)
Sarang Vijay Damle (*pro hac vice*)
Sarah A. Tomkowiak (*pro hac vice*)
Elana Nightingale Dawson (*pro hac vice*)
Nicholas L. Schlossman (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax
Email: david.johnson@lw.com
Email: sy.damle@lw.com
Email: sarah.tomkowiak@lw.com
Email: elana.nightingaledawson@lw.com
Email: nicholas.schlossman@lw.com

Andrew M. Gass (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax
Email: andrew.gass@lw.com
Email: joe.wetzel@lw.com

Allison L. Stillman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200 / (212) 751-4864 Fax
Email: alli.stillman@lw.com

Jessica Stebbins Bina (*pro hac vice*)
Elizabeth A. Greenman (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5000 / (424) 653-5501 Fax
Email: jessica.stebbinsbina@lw.com
Email: elizabeth.greenman@lw.com

*Attorneys for Defendant Shopify, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2022, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

*<u>/s/ David L. Johnson</u>*

David L. Johnson (VSB No. 89289)
