**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; CENGAGE LEARNING, INC.; ELSEVIER INC.; ELSEVIER B.V.; MCGRAW HILL LLC; and PEARSON EDUCATION, INC., | Case No. 1:21-cv-01340 |
| Plaintiffs, | |
| v. | |
| SHOPIFY INC., | |
| Defendant. | |

**DEFENDANT SHOPIFY INC.'S MEMORANDUM IN OPPOSITION**
**TO PLAINTIFFS' THIRD MOTION TO COMPEL**

## TABLE OF CONTENTS

I.      **Introduction** ...................................................................................................1

II.     **Factual Background** .........................................................................................2

III.    **Argument** ........................................................................................................5

        A.      Plaintiffs' Requests For Information Regarding Hyperlinked Documents
Should Be Denied. ...................................................................................5

                1.      Shopify Has Already Agreed to Produce Relevant and
Proportionate Information Hyperlinked from Its Policies. .........5

                2.      Plaintiffs' Demand For "All" Hyperlinked Documents Is
Overbroad. .................................................................................7

                3.      Plaintiffs Cannot Compel Production of Privileged Documents. .............11

                        a.      *Documents Regarding the Implementation and Execution of
Policies Can Be Privileged.* .............................................13

                        b.      *Shopify's DMCA Defense Does Not Waive Privilege on All
Issues Relating to That Defense.* .....................................18

        B.      Plaintiffs' Requests For Discovery on "Communications with Financial
Partners" are Irrelevant and Disproportionate. ......................................20

                1.      Plaintiffs Already Moved on RFP 30; The Court Should Decline to
Reconsider Issues Already Resolved by Prior Briefing.............................20

                2.      Plaintiffs' Requests Are Overbroad, Irrelevant, and
Disproportionate. .....................................................................21

IV.     **Conclusion** ....................................................................................................25

## I.       INTRODUCTION

Despite an admonition from the Court just weeks ago that broad requests for "all documents" are generally facially overbroad, Plaintiffs have returned to the Court for a third time to compel "all documents."  This time, Plaintiffs seek (i) "all documents" that appear as hyperlinks in 11 produced documents, amounting to 346 hyperlinked documents, and (ii) "all documents" reflecting communications between Shopify and any "banking" institutions concerning intellectual property risk factors relating to the "Alleged Merchants."  Mot., Dkt. 79 at 6-7, 11-14.  Plaintiffs fail to support their sweeping requests, and their motion should be denied.

Plaintiffs' first demand for "all" hyperlinked documents is both overbroad and premature. Plaintiffs' categorical arguments that all 346 hyperlinked documents are necessarily relevant and non-privileged for the sole reason that they appear in hyperlinks within produced documents are baseless.  Black-letter law acknowledges that linked documents are not "part of" the original document, but rather, each link must be evaluated individually.  Which, contrary to Plaintiffs' assertion that Shopify has "not even reviewed" these documents, is exactly what Shopify did and continues to do: reasonable searches for responsive content were run across the custodians and locations likely to contain responsive material.  Indeed, many of these hyperlinked documents have *already* been produced to Plaintiffs, and the parties were in conferral with respect to others when Plaintiffs prematurely filed this motion.  Others, however, are plainly privileged or wholly irrelevant.  And Plaintiffs' assertions that Shopify somehow waived privilege as to all DMCA-related documents merely by asserting the protection of the DMCA's "safe harbor" is frivolous and unsupported by any authority.  The Court should deny Plaintiffs' request for "all" hyperlinked documents and require Plaintiffs to engage in a good faith meet and confer over *specific*, identified hyperlinked documents they reasonably believe are responsive.

Plaintiffs' second request, for "all communications" with third party financial institutions, is unnecessary, not even remotely tailored to capture discoverable material, and unduly burdensome.  Not to mention Plaintiffs already have the information they purportedly seek with such an overbroad demand *and* agreed a more limited scope was sufficient.  Plaintiffs already acknowledged in their prior briefing that Shopify's existing response to RFP 30, providing "*information sufficient to show* warnings, ratings, risk assessments, or flags for the Accused Shopify Merchants," Dkt. 56-1 at 45-46, was adequate.  When Plaintiffs moved on RFP 30 on April 15, 2022, Plaintiffs did not "dispute the adequacy of the categories of responsive information that Shopify has agreed to produce" for RFP 30, *i.e.*, "*information sufficient to show* any infringement-related warnings given to those Alleged Merchants, or risks or flags posted on those Alleged Merchants' accounts … ." Dkt. 64 at 3, 16.   Plaintiffs' reply brief on their last motion acknowledged that  "*the scope of Shopify's response to RFP 30 is resolved*, including as to time frame." Dkt. 66 at 1.  Plaintiffs cannot now seek "all documents," when they previously admitted "documents sufficient to show" this issue—which have indisputably been produced—suffice.  Regardless, the attendant burden to Shopify in searching for and producing *more* documentation would be enormous, unwarranted, and most importantly, cumulative of the information Plaintiffs already have.  Not content with the burdens already imposed on Shopify, Plaintiffs now wish to add hundreds of additional custodians crossing a subject-matter so wide as financial institution third-parties (a very broad category considering Shopify's business), for the admittedly narrow purpose of providing background on documents already produced in full.  This request should likewise be denied.

## II.    FACTUAL BACKGROUND

Plaintiffs misstate the facts relevant to this Motion.  Discovery has been underway for nearly two months.  Three previous motions to compel additional discovery have been filed.  *See*

Dkt. Nos. 52, 55, 60.  The Court heard arguments on these motions on April 29, 2022, and granted in part and denied in part all motions on the same day.  Dkt. 72.  On May 2, 2022, the parties exchanged further document productions in accordance with the substantial completion deadline. Since then, Shopify has been making supplemental productions to comply with the Court's April 29, 2022 discovery order and to round out anything further located on the original requests.

Contrary to Plaintiffs' allegations, Shopify's productions have been sizable, encompassing the core documents that are relevant to this case:  all tickets associated with Plaintiffs' notices of alleged infringement, all documents *about* the Alleged Merchants pertaining to those notices, and all of Shopify's core policies related to infringement.  Yet Plaintiffs are back before the Court again, arguing that Shopify must provide (i) all 346 documents hyperlinked in 11 of Shopify's copyright-related policies, regardless of whether those links have anything to do with the disputes in this case; and (ii) all communications with third party financial institutions concerning those institutions' risk management activities relating to the Alleged Merchants.  Mot. at 3-13.

Shopify has actively engaged in the meet-and-confer process on these two issues specifically (and a great deal of others, in which Shopify has often affirmatively agreed to produce additional documentation Plaintiffs requested), in an effort to resolve any disputes with Plaintiffs without requiring the Court's involvement.  Shopify offered ways for Plaintiffs to identify potentially relevant documents hyperlinked within its policies, *see* Mot. at 6-7, and has already produced or agreed to produce responsive and non-privileged hyperlinked documents.  Ex. 6,[1]  J. Stebbins Bina 22.05.17 email at 3 ("We are reviewing the links Plaintiff requested for responsiveness to the document requests and will produce those links that are responsive to the requests and non-privileged.").  On May 19, 2022, Shopify represented during a two-hour meet-

---

[1] Citations to Exhibits refer to Plaintiffs' Exhibits in Support of their Motion, Dkt. 79-1.

and-confer session that Shopify would provide a more detailed write up of what it agreed to produce, what does not exist, and what Shopify will not be producing. *See* Bina Decl. ¶ 4. Shopify also articulated specific and unwarranted burdens that would be required in searching for and producing communications with financial institutions concerning the very same risk management activities reflected in communications Shopify *has already produced*, *i.e.*, communications *with* the Alleged Merchants about those risk management activities. *See id.*

Nevertheless, on May 20, 2022, and notwithstanding Shopify's continued good faith efforts to address Plaintiffs' inquiries, Plaintiffs filed the instant Motion to Compel, Dkts. 78, 79. So the parties are back before the Court on a third Motion that suffers from the same core deficiencies to Plaintiffs' last two motions: Plaintiffs refuse to complete the meet-and-confer process, and have again moved prematurely on either documents Shopify has produced or *is* producing, or to compel Shopify to engage in fishing expeditions across its company that would impose extreme and disproportionate burdens to find the "needles in the haystacks" of documents that Plaintiffs previously, in representations to this Court, stated they did not seek and that, regardless, do not bear on Shopify's DMCA policies or their application. *Supra* at 2.

Of note, Plaintiffs egregiously misconstrue Shopify's policies in an apparent effort to justify expansive discovery where no such need exits. Plaintiffs claim invasive discovery is warranted because Shopify Merchants █████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████ ███████████████ █████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████



Plaintiffs' misrepresentations provide no basis for further discovery.

## III.    ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Courts evaluate proportionality by considering "the amount in controversy," the "importance" of the material sought, the parties' "resources," the parties' "access" to materials, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Brink's Co. v. Chubb Eur. Grp. Ltd.*, No. 3:20-520, 2021 WL 5083335, at *4 (E.D. Va. Feb. 24, 2021), *adopted*, 2021 WL 5083332 (E.D. Va. Mar. 12, 2021).

Shopify has already agreed to provide Plaintiffs all of the information that is relevant and proportional to this case.  Plaintiffs' motion to compel further discovery should be denied.

### A.    Plaintiffs' Requests For Information Regarding Hyperlinked Documents Should Be Denied.

#### 1.    *Shopify Has Already Agreed to Produce Relevant and Proportionate Information Hyperlinked from Its Policies.*

Plaintiffs argue that "[t]his Court should order Shopify promptly to produce all documents that the policy documents Shopify has produced incorporate by popup, reference, or hyperlink." Mot. at 7.  The Court should not grant this overbroad and premature request.

As an initial matter, "all documents" is not appropriate because it is facially apparent that not "all documents" are relevant—a fact Plaintiffs have confirmed through their own filings.

During meet-and-confers, Plaintiffs sought 468 hyperlinked documents identified in 24 of Shopify's policies and manuals.  *See* Ex. 3 at 2, Ex. 7 at 1.  However, in the current Motion, Plaintiff have discontinued seeking the hyperlinks from 13 of those 24 documents—meaning that Plaintiffs have abandoned pursuing over half of the documents and over 100 hyperlinks upon which they initially met-and-conferred with Shopify.  *Compare* Ex. 3 at 2 *and* Ex. 7 at 1 *with* Ex. 1 Index.

And before they filed their motion, Plaintiffs acknowledged that not "all" hyperlinked documents even in the remaining 11 produced documents were relevant.  Rather, Plaintiffs highlighted a *subset* of "relevant hyperlinked documents" from these 11 policies and manuals during the meet-and-confer process.  Mot. at 6-7; *see also* Ex. 4 at 2.  Yet, Plaintiffs are now revert to demanding "all" hyperlinks—346 hyperlinked documents linked in 11 produced documents— a broader set of documents than those on which they met and conferred.  *Compare* Ex. 4 at 1-2 *with* Ex. 1 Index.  This demonstrates the overbroad nature of Plaintiffs' requests, and precisely why the requests should be denied.  *See, e.g.*, *Nallapaty v. Nallapati*, No. 5:20-CV-470-BO, 2022 WL 1508885, at *5 (E.D.N.C. May 12, 2022) (finding document requests overbroad when they "may include documents or communications that have no bearing whatsoever on the issues in this case").  It also demonstrates the constantly moving target Plaintiffs continue to put up, making it extraordinarily more burdensome for Shopify to complete discovery, while Plaintiffs nevertheless claim Shopify should have produced *more* than it already has by the substantial completion deadline.

In any event, Plaintiffs' request is premature.  Shopify told Plaintiffs on May 17, 2022 that Shopify was "reviewing the links Plaintiff requested for responsiveness to the document requests and will produce those links that are responsive to the requests and non-privileged."  Ex. 6, J.

Stebbins Bina 22.05.17 email at 3.  And Shopify told Plaintiffs on May 19, 2022 that it would imminently provide Plaintiffs a more-detailed description of the documents Shopify would or would not produce.  Bina Decl. ¶ 4.   Rather than wait, Plaintiffs filed this motion the next day. Had Plaintiffs waited even a few days, or actually provided Shopify with the detailed list of documents in their motion, Plaintiffs would have known that Shopify is *not* withholding responsive, non-privileged hyperlinked documents.  Instead, Shopify *is* producing the relevant, non-privileged hyperlinked documents subject to Plaintiffs' demands.  That is exactly the process the parties were in the middle of meeting and conferring on, when Plaintiffs filed this Motion, and rather than directing its efforts to completing that document to allow Plaintiffs to evaluate the issues and come to a reasonable compromise, Shopify has had to direct those efforts to briefing. Plaintiffs' assertion that Shopify did not review those documents is both baseless and of no help; Shopify located responsive material where it lived, which is why much of what Plaintiffs demand has already been produced.  That discovery itself bears additional potentially fruitful paths for new requests is not demonstrative of a failure of the process, it is demonstrative of its proper design.

### 2.    *Plaintiffs' Demand For "All" Hyperlinked Documents Is Overbroad.*

Plaintiffs provide no support for their broad, sweeping claim that "all" documents hyperlinked in Shopify's policies are *ipso facto* discoverable.  While Plaintiffs claim that the policies are "central to this case," and that the hyperlinked documents are "incorporated," "embedded," or "a part of" these responsive policies, Mot. at 2, 3, such an argument defies common sense and the law.  In fact, case law holds exactly the opposite.  For example, in *Nichols v. Noom Inc.*, No. 20-CV-3677-LGS-KHP, 2021 WL 948646, at *3 (S.D.N.Y. Mar. 11, 2021) the plaintiffs similarly requested that the defendant produce hyperlinked internal documents, claiming that such documents "should be treated as attachments."  *Id*.  The court rejected this argument, reasoning that the mere inclusion of a document in a hyperlink does not ipso facto make the

hyperlink relevant.  In pointing out the plaintiffs' flawed understanding of hyperlinks, the court noted:

> When a person creates a document or email with a hyperlink, the hyperlinked document/information may or may not be necessary to the communication. For example, a legal memorandum might have hyperlinks to cases cited therein. The Court does not consider the hyperlinked cases to be attachments. A document also may contain a hyperlink to another portion of the same document. That also is not an attachment. A document might have a hyperlink shortcut to a SharePoint folder. The whole folder would not be an attachment. These are just examples. . . . The list goes on and on. Many of these underlying hyperlinked documents may be unimportant to the communication.

*Id.* at *4.  Plaintiffs' arguments suffer from the same flaws.  Plaintiffs failed to articulate any reasons for deeming any and all hyperlinked documents as "incorporated" or "embedded" into Shopify's policies and manuals, *see* Mot. at 3-7.  To the contrary, common sense examples such as the ones identified by the *Noom* court show the exact opposite—that the hyperlinked documents are standalone documents that need to be evaluated for relevance and privilege.  That is, a wholesale request for "all" hyperlinked documents is facially overbroad, unduly burdensome, and disproportionate.  *See id*.  With their "embedded" theory of hyperlinks failing, Plaintiffs fail to present any other alternative theory that would render *all* 346 hyperlinked documents relevant and discoverable.  Thus, Plaintiffs are not entitled to "all" of Shopify's hyperlinked documents.  *Id.* at 7.[2]

---

[2] As Plaintiffs themselves explain, Shopify provided a path for the parties to agree on the production of discoverable hyperlinked documents. Mot. at 6-7.  First, Shopify allowed Plaintiffs to identify hyperlinks that appear to be relevant by highlighting the policy documents, so that Shopify could *produce* those documents, or meet-and-confer in the event the parties disagreed as to relevance.  *Id*.  That is precisely the course the court recommended in *Noom*—that the plaintiffs should "evaluate [defendant's] production and, if Plaintiffs determine there is a need for an additional targeted pull or production or clarifying information about a hyperlinked document[] … *Plaintiffs can request it*."  2021 WL 948646, at *4 (emphasis added).

Plaintiffs do attempt, in their Motion, to identify some specific hyperlinked documents that they contend are "relevant and discoverable."  Mot. at 4-5.  Notably, Plaintiffs' 14-point list of specific types of documents, even expanded to cover other similar documents (like ███████ and "screenshots"), covers only 106 hyperlinks, and provides no basis for discovery of the other 240 hyperlinks.  *See generally* Mot. at 4-5.  Moreover, a closer examination of these 106 hyperlinks further shows the blunderbuss nature of Plaintiffs' demand:  many of these documents have already been produced, or are irrelevant, privileged, or duplicative.[3]  This is unsurprising, given that Shopify has already produced its policies in full, as well as thousands of actual tickets implementing its policies, as well as its communications with Shopify Merchants.

1. **Document 1:** ██████████████████████████████ ███████████████████████████████████████ Contrary to Plaintiff's suggestions, this document has already been produced.

2. **Document 2:** ██████████████████████████████ █████████████████████████████████████ ████ ███████  Shopify willing produce a version of the ████████████████████ that includes this flowchart.

3. **Document 3:** █████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████  Shopify is reviewing and will produce all relevant, non-privileged, ████████

4. **Document 4:** ██████████████████████████████ ████████████████████████████████████  This is privileged.

5. **Document 5:** ██████████████████████████████ █████████████████████████ *see* Ex. 1-D at 10534-35; Ex. 1-H at 9689. This has little if anything to do with the claims or defenses at issue in this case.

---

[3] Shopify offered to identify those items for Plaintiffs, but Plaintiffs instead filed this Motion.

6.  **Document 6:** ██████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████ To the extent Plaintiffs have
questions about whether ████████████████████████████████████
██████████████ those inquiries would be appropriate for depositions.

7.  **Document 7:** ██████████████████████████████████
████████████████████████████████████████████████
████████ *see* Ex. 1-B at 10588; Ex. 1-D at 10547; Ex. 1-H at 9692.

8.  **Document 8:** ████████████████████████████ *see* Ex.
1-K at 0958, ████████████████████████████████████████████
██████████████████████████████████

9.  **Document 9:** ██████████████████████████████████
████████████████████████████████████████████
████████ *see* Ex. 1-D at 10548; Ex. 1-K at 0917. █████████████
████████████████████████████

10. **Document 10:** ████████████████████████████████
████████████████████████████ provide contact
information for Shopify employees ████████████████ These profiles are not responsive
to any document request from Plaintiffs, nor are they at all related to this litigation.
Moreover, Shopify has already provided the identity of "all persons . . . with responsibility
for designing, developing, or implementing [Shopify's] policies . . . for addressing
copyright [and trademark] violations" via its interrogatory answers, *see* Shopify Inc.'s
Response to Rogs. Nos. 1-3, Dkt. 56-2 at 6-12.

11. **Document 11:** ████████████████████████████████
████████████████████████████████████████████████
████████████████████ Plaintiffs even cited to some of these documents in their
Motion, *See* Ex. 1-B at 10580-585 ██████████████████████████

12. **Document 12:** ████████████████████████████████
████████████████████████████████████████████████
████████ █ ████████████████████████████████████████
████████████████████████████████████████████████
████████████

13. **Document 13:** ████████████████████████████████
████████████████████████ █ ██████████████████████████
██████████████████████████████████ ██████████



14. **Document 14:** ████████████████████████████████████

█████████ These documents fall into three categories – either documents already produced (for instance, the ███████████████████████ responsive documents that Shopify agrees to produce, or documents that are not produceable because they are either non-responsive (some of which contain sensitive and confidential information regarding merchants not at issue in this action) or privileged.

Regrettably, instead of working with Shopify to resolve this dispute during the meet-and-confer process, Plaintiffs chose to file this motion.  Plaintiffs attempt to justify their premature Motion by arguing that these documents should have been produced as of the date of "substantial completion," May 2, 2022.  Mot. at 6-7, 11.  But the proper procedure for such grievances is to meet and confer in good faith.  There can be no serious question that Shopify has engaged in the meet and confer process in good faith for months, affirmatively providing or agreeing to produce documents that are unquestionably relevant and non-privileged.  And when Plaintiffs raised their concerns regarding the hyperlinked documents and identified specific links they believed to be relevant, Shopify *agreed* to respond by explaining which of those documents would or would not be produced.  Rather than wait, Plaintiffs chose to short-circuit the normal meet-and-confer process and burden this Court with a discovery motion that could have been resolved reasonably.

3.   ***Plaintiffs Cannot Compel Production of Privileged Documents.***

Plaintiffs' premature motion to compel renders their arguments regarding privilege inapposite.  Courts in the Fourth Circuit follow a well-established process when it comes to challenging a party's privilege assertions, including that a potential movant first reviews the opposing party's productions and privilege log, and identifies any allegedly deficient designations of privilege, *before* bringing a motion to compel documents.  *See, e.g., Wiav Solutions LLC v.*

11

*Motorola, Inc.,* No. 3:09cv0447, 2011 WL 13238628, at *1 (E.D. Va. Sept. 20, 2011) (describing the process the parties followed after a challenge to a privilege assertion); *Rambus, Inc. v. Infineon Tech. AG*, 220 F.R.D. 264, 274 (E.D. Va. 2004) (ruling on the adequacy of privilege assertion only after the challenging party had reviewed the privilege log, filing of briefing on a motion to compel, and an in camera review).  As noted above, the parties have not yet prepared their privilege logs, agreeing that each side should wait until productions were complete in order to avoid having to produce multiple privilege logs.  Neither party has completed production.  Furthermore, courts in the Fourth Circuit do not order production of documents subject to a claim of privilege without first undertaking an *in camera* review of the documents at issue, in order to make a determination as to whether privilege was validly asserted.  *See Rambus*, 220 F.R.D. at *274; *see also In re Zetia (Ezetimibe) Antitrust Litig*, No. MDL No. 2:18-md-2836, 2019 WL 6122012, at *2, *4-5 (E.D. Va. July 16, 2019) (undertaking *in camera* review); *Wiav Solutions LLC v. Motorola, Inc.,* 2011 WL 13238628, at *1 (same).  In any event, it is indisputable that a privilege challenge necessitates a document-by-document assessment, quite the opposite of Plaintiff's all or nothing "all documents" demand.

Plaintiffs should be required to undertake discovery in the regular fashion and order.  Plaintiffs cannot circumvent this process by sweepingly declaring broad swaths of hundreds of documents—the vast majority of which are never discussed in Plaintiffs' Motion, certainly not with any specificity—categorically "not privileged."  Shopify has or will produce the non-privileged and responsive documents, and will produce an appropriate privilege log, upon the timing that the parties agree for production of their respective privilege logs.  *See* Dkt. 45 at §IV.  If Plaintiffs have concerns at that point, Shopify will meet-and-confer on those concerns, and then Plaintiffs can move, if necessary, with knowledge of which documents have and have not been

produced, and whether Plaintiffs actually need anything further, which will facilitate the eventual *in camera* review.  That alone should warrant rejection of Plaintiffs' generalized, categorical privilege arguments.  In any event, each of Plaintiffs' arguments is unavailing.

> a.   *Documents Regarding the Implementation and Execution of Policies Can Be Privileged.*

Plaintiffs' Motion implies that Shopify is withholding nearly all hyperlinked documents in its core policies as "privileged."  But as Plaintiffs already know, this is entirely false.  Shopify has explained during multiple meet and confers that privilege was just *one* basis on which is was withholding some of the hyperlinked documents (Shopify also explained that some of the hyperlinked documents were publicly available, lacked relevance, or had already been produced).  In reality, the number of hyperlinked documents that will be withheld based on privilege is a narrow subset of these documents.

As to those documents, it is entirely proper to withhold documents regarding the implementation and execution of Shopify's policies as "privileged" under appropriate circumstances.  The key inquiry for privilege determinations is whether the documents contain legal advice.  *See In re Zetia (Ezetimibe) Antitrust Litig*, 2019 WL 6122012, at *2.  Critically, "[w]hen a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice."  *Pritchard v. Cnty. of Erie (In re Cnty. of Erie)*, 473 F.3d 413, 422 (2d Cir. 2007).

As explained above, the hyperlinked documents at issue vary widely.  Some of them are non-privileged, and many have already been produced.  *See supra* at 9-11.  However, others contain communications from Shopify's lawyers with legal advice on creation, implementation, and application of the policies to ensure compliance with a legal obligation—here, those legal

obligations arising under the DMCA.  These types of documents are exactly the type that courts have frequently found to be privileged.  *See In re Cty. of Erie*, 473 F.3d at 422; *see also Yellowstone Women's First Step House, Inc. v. City of Costa Mesa*, No. SACV 14-01852-JVS (JDEx), 2018 WL 6164305, at *4 (C.D. Cal. May 9, 2018) ("the fact that the legal advice was requested and rendered in the context of crafting and implementing policy does not render the communications unprotected"); *Raba v. Suozzi*, No. CV 06-1109 (DRH)(AKT), 2007 WL 128817, at *3-4 (E.D.N.Y. Jan. 11, 2007) (similar).  Plaintiffs' request for any and all documents that are "part of corporate policy documents and manuals" miss the mark:  Shopify *is producing* and has produced its corporate policies, but will not produce privileged legal advice and work product.  *See* Mot. at 11.  That is routine.  Plaintiffs' remaining cited authorities for the proposition that "documents memorializing a company's policies are not privileged" are therefore inapplicable because the hyperlinked documents Plaintiffs are seeking do not simply "memorialize" the policies; they provide legal analysis of or advice related to them.  *See id.* at 8; *see also* Gallant Decl. ¶ 7.[4] Plaintiffs' own authority supports that documents like these are privileged: "[t]here is no disputing that communications between CertainTeed's lawyers and its executives leading up to the adoption of its compliance policy are privileged."  *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2014 WL 5090032, at *4 (E.D. Pa. Oct. 9, 2014).

Equally unhelpful is Plaintiffs' related contention that "written instructions on implementing those policies are not privileged."  Mot. at 8.  This contention ignores that where instructions contain legal advice from counsel, those instructions would be privileged.  *See, e.g.*,

---

[4] Plaintiffs also omit that in *United States v. International Business Machines Corp.*, 66 F.R.D. 206, 210 (S.D.N.Y. 1974), while the court did hold that "[a]s a general rule, communications relating to company policy" are not privileged, the court defined "company policy" as "those general goals and considerations which guide an enterprise in the conduct of its affairs."  *Id.*  A DMCA policy is not like a dress code.

*Freedom of the Press Found. v. United States Dep't of Just.*, 241 F. Supp. 3d 986, 1002 (N.D. Cal. 2017) (finding a training presentation on policies and procedures to be privileged because it "was, at least in part, the method by which [Office of General Counsel] provided FBI employees with legal advice."). Making this privilege determination depends on consideration of the actual content of the instructions and the context for which the instructions were given. *See id.* The courts in each of Plaintiffs' cited authorities regarding "written instructions" engaged in this exercise and as such, their highly specific reasoning would be inapplicable to the documents here. *See* Mot. at 8.[5] Considering each and every responsive document and making a privilege determination based on its specific content is exactly what Shopify has done. Unsatisfied with the results, Plaintiffs instead shoot for the stars and hope for the whole solar system.

Each of Plaintiffs' arguments as to these documents also fails. It is obviously untrue that if documents "were intended to be reviewed and used by non-lawyers" this "alone defeats any claim of privilege." Mot. at 9. The very purpose of the attorney-client privilege is to "encourage full and frank communication *between* attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (emphasis added). Obviously, courts frequently apply the privilege to documents prepared for review by non-attorneys. *See, e.g.*, *In re Cnty. of Erie*, 473 F.3d at 422 (finding emails sent to non-attorney sheriff personnel privileged); *Freedom of the Press Found.*, 241 F. Supp. 3d at 1002 (finding trainings given non-attorney employees privileged). Businesses

---

[5] For example, in *In re Sulfuric Acid Antitrust Litigation*, 432 F. Supp. 2d 794, 796 (N.D. Ill. 2006) the court found a set of hypotheticals offered in the context of an educational manual were not privileged because they did not involve confidential information and their purpose was to inform the sales team on the general type of situations where legal advice *may* be required. *See id.* Here, Plaintiffs are not asking for generalized advice or training materials. Instead, they are requesting confidential communications involving Shopify's Legal Department, where attorneys provided specific legal advice on specific real-word instances of policy application. *See* Gallant Decl. ¶ 7.

could not function if all legal advice became nonprivileged because the internal audience included non-lawyers; providing internal non-lawyers legal advice is what in-house lawyers exist to do.

None of Plaintiffs' cited authorities hold to the contrary. As a threshold matter, many of the cases cited by Plaintiffs predate the seminal *Upjohn* decision, in which the Supreme Court expressly recognized that communications between lower-level corporate employees and corporate counsel "are covered by the attorney-client privilege." 449 U.S. at 397. Plaintiffs either miss, or dubiously ignore, this basic and fundamental Supreme Court decision that defines the boundaries of the in-house privilege, instead relying primarily on earlier decisions made without the benefit of its guidance. Even those cases, however, do not support Plaintiffs' position. In *F.T.C. v. TRW, Inc.,* for example, the court found, when discussing "nonlegal" personnel, that the documents were not privileged for two reasons: they were circulated too widely in the company and they were prepared by an outside research institution. 479 F. Supp. 160, 163 (D.D.C. 1979), aff'd, 628 F.2d 207 (D.C. Cir. 1980). Here the documents or advice at issue were provided by *in-house attorneys* to Shopify personnel charged with the specific responsibilities at issue in each document. *See* Gallant Decl. ¶¶ 2, 7. Further, in both *Giardiana v. Ruth U. Fertel, Inc.* and *United States v. Chevron Corp.*, the courts primarily discussed whether the advice given by dual-role attorneys (those providing legal and business advice) was actually legal in nature. No. 00-1674, 2001 WL 1658183, at *1 (E.D. La. Dec. 21, 2001); No. C 94-1885 SBA, 1996 WL 444597 (N.D. Cal. May 30, 1996). Not so here; for dual-role attorneys, Shopify has *produced* numerous business communications, but is withholding legal ones. *See* Gallant Decl. ¶ 7. Finally, with respect to *International Business Machines Corp.*, the context makes clear that IBM had attempted to assert privilege over a document that was sent *by* nonlegal personnel to both attorneys and non-attorneys. 66 F.R.D. at 210 (S.D.N.Y. 1974). It was this underlying document that was held to be not

"primarily legal." *Id.* Here, in contrast, the documents Shopify has withheld and plans to withhold

on the basis of privilege are specifically meant to give or request legal advice and thus are primarily

legal. *See* Gallant Decl. ¶ 7.[6]

Plaintiffs' further arguments that the policies and guides "do not appear to reveal any client

confidences" nor "contain any legal advice" also fall flat. Mot. at 9. Plaintiffs cannot possibly

know this without knowing which of the hundreds of documents they are seeking are actually

subject to a claim of privilege. Plaintiffs are simply engaging in guesswork concerning the

potential contents of these documents, without the benefit of either a full meet-and-confer process

on those contents or even knowing which documents are withheld based on privilege (which

Shopify proposed to provide), hoping that saying it makes it so. Moreover, each case Plaintiffs

cite for these propositions have little, if any, relation to the actual facts of this case. *See id.*[7] To

avoid any doubt, the all potentially relevant documents that Shopify withholds on the basis of

privilege contain Shopify's confidential or proprietary information and have been prepared by in-

house Shopify attorneys for the purpose of rendering legal advice regarding the DMCA and

addressing intellectual property infringement. *See Raba* 2007 WL 128817, at *3-5 (finding

---

[6] In any event, the involvement of non-attorneys does not defeat the privilege when the purpose of the document remains legal. *See NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 138 (N.D.N.Y. 2007) (investigators and accountants); *H.W. Carter & Sons, Inc. v. William Carter Co.*, No. 95 CIV. 1274, 1995 WL 301351, at *3 (S.D.N.Y. May 16, 1995) (public relations consultants); *U.S. Postal Serv. v. Phelps Dodge Refin. Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (accountants, and non-testifying experts); see also *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217 (S.D.N.Y. 2001); *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y. 2002) ("*IBM* does not stand for the proposition that the mere simultaneous review of a document seeking legal advice by non-legal personnel vitiates the privilege").

[7] In *Hartford Life Insurance Co. v. Bank of America Corp.*, No. 06 Civ. 3805 (LAK)(HBP), 2007 WL 2398824, at *6 (S.D.N.Y. Aug. 21, 2007), the Court found that a PowerPoint containing generic descriptions of the law as it might apply to the securities industry as a whole was not privileged. The privileged documents at issue here contain legal advice particular to Shopify. *See* Gallant Decl. ¶ 7. The inapplicability of *In re Sulfuric Acid Antitrust Litigation* and *Chevron Corp.* are discussed *supra*.

communications "directed to the interpretation of legal principles to guide future conduct" were privileged).  Such documents lie at the heart of the type of documents long protected by courts under the attorney-client privilege and work product doctrines.  *See, e.g.*, *Cooey v. Strickland*, 269 F.R.D. 643, 651 (S.D. Ohio 2010) (finding "emails that contained review of the law concerning strip searches, assessments of the county's current policy, suggested alternatives, and a monitoring of the implementation of the policy changes" were privileged).

       b.    *Shopify's DMCA Defense Does Not Waive Privilege on All Issues Relating to That Defense.*

Plaintiffs' attempt to argue that Shopify's assertion of a DMCA safe harbor defense results in a waiver of all attorney-client communications advising on any aspect of Shopify's DMCA policies is facially absurd.  It is definitively *not* the law that any time a claim or defense is asserted, including a statutory safe harbor, all legal advice concerning that claim or defense is waived. Indeed, Plaintiffs' own authority holds expressly to the contrary.  *See Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010) (finding that the defendants *did not* waive attorney-client privilege despite testimony regarding defendant's defense); *see also Rock River Commc'ns, Inc. v. Universal Music Grp,* No. CV 08-635 CAS (AJWx), 2011 WL 13177750, at *2-3 (C.D. Cal. Jan. 3, 2011) (in a claim arising under 17 U.S.C. § 512(f) defendant did not waive attorney-client privilege by raising California's litigation privilege and a Noerr-Pennington defense as defenses).

Plaintiffs simply misconstrue black-letter privilege law.  As the Court is no doubt aware, a waiver of privilege occurs when a party affirmatively puts the legal advice of counsel at issue, or injects that advice into the case.  For example, if a party defending a patent infringement claim argues there was no willful infringement because an attorney so-advised, a waiver may be found. "Once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived."  *United States ex rel.*

*Drakeford v. Tuomey*, 792 F.3d 364, 391 (4th Cir. 2015) (Wynn, J., Concurring) (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006)).   But here, Shopify is not arguing that it is not liable because its counsel so-advised Shopify.   Rather, Shopify is arguing that it is not liable because it has conducted itself in accordance with the requirements of the DMCA.

Plaintiffs' cited authorities are in accord with these basic principles.   These authorities have to do with instances in which the defendant attempted to raise claims that would *necessarily* require proof through otherwise privileged communications.   *See* Mot. at 10.   For example, the safe harbor in *United States v. Dish Network, L.L.C* required "monitor[ing] and enforce[ing] compliance" to qualify for the safe harbor; because the defendant chose to use counsel to carry out this "monitoring function," defendant could not rely on the adequacy of its "monitoring function" without disclosing how the attorneys themselves had carried out this monitoring function.   283 F.R.D. 420, 423 (C.D. Ill. 2012) (citing 16 C.F.R. § 310.4(b)(3)).   That is, defendant could not use the privilege as a sword and a shield, to assert an adequate monitoring function, but then shield the proof it carried out that monitoring.   *Id.*   In effect, waiver doctrine prevents litigants from forcing their adversaries to accept their say-so by positing that the advice of counsel protects them, but that no one else can check.   But here, Shopify is clearly not attempting to shield discovery about the application of its DMCA policy by claiming a blanket privilege over the activities of the Intellectual Property team that applies it.   To the contrary, Shopify has produced documents reflecting how Shopify removes infringing content and maintains a policy of terminating repeat infringers, as required by 17 U.S.C. § 512(c), including its finalized policies and each of the thousands of tickets showing how Shopify processed Plaintiffs' infringement notices pursuant to the DMCA.   Shopify is only withholding a very small percentage of documents on the basis of

privilege.[8]

Plaintiffs stretch the holdings in *United States v. Bilzerian* and *Cox v. Administrator United States Steel & Carnegie* far beyond their factual circumstances.  926 F.2d 1285, 1292 (2d Cir. 1991); 17 F.3d 1386, 1419 (11th Cir. 1994).  In *Bilzerian*, a criminal securities case that involved no copyright claims, the defendant sought to challenge the trial court's admission of allegedly privileged testimony at trial.  In upholding the lower court's ruling over the motion in limine, the court there found that the defendant waived privilege after he had specifically testified as to his "knowledge of the law" with regards to *mens rea* under criminal law.  926 F.2d at 1292.  And in *Cox*, again in analyzing whether the defendant company had the requisite criminal intent, the court similarly found that the defendant had "injected knowledge of the law" into the case and waived the attorney-client privilege.  17 F.3d at 1419.  Shopify did not and could not have "injected knowledge of the law" into its DMCA defense in the same way.  *See* 17 U.S.C. § 512.  Plaintiffs' arguments regarding waiver are meritless.

### B. Plaintiffs' Requests For Discovery on "Communications with Financial Partners" are Irrelevant and Disproportionate.

#### 1. *Plaintiffs Already Moved on RFP 30; The Court Should Decline to Reconsider Issues Already Resolved by Prior Briefing.*

Plaintiffs already acknowledged that Shopify's existing response to RFP 30, providing "*information sufficient to show* warnings, ratings, risk assessments, or flags for the Accused Shopify Merchants," Dkt. 56-1 at 45-46, was adequate.  On April 15, 2022, Plaintiffs moved to

---

[8] *Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1257 (M.D. Fla. 2014), is also inapposite.  There, plaintiffs alleged defendants acted in bad faith during settlement negotiations and then sought to withhold allegedly privileged documents from the very mediation leading to settlement.  The court required the plaintiffs only to produce the documents *necessary* for the plaintiffs to establish their claims.  *Id.*  Such reasoning is not applicable here.  Moreover, the court makes clear its reasoning applied to an entirely different privilege—the *mediation* privilege and not the attorney-client privilege (which Plaintiffs failed to note in briefing).  *Id.*

compel on this same RFP 30, seeking to expand the temporal range of these materials, but Plaintiffs did not "dispute the adequacy of the categories of responsive information that Shopify has agreed to produce" for RFP "30," *i.e.*, "*information sufficient to show* any infringement-related warnings given to those Alleged Merchants, or risks or flags posted on those Alleged Merchants' accounts . . . ."  Shopify's Response Brief, Dkt. 64 at 3, 16 (emphasis added).  Plaintiffs' reply brief acknowledges the same:  "Shopify has agreed to provide information on 'any infringement-related flags or strikes on the Alleged Merchant accounts from January 1, 2017 onward,'" and thus "*the scope of Shopify's response to RFP 30 is resolved*, including as to time frame."  Dkt. 66 at 1 (emphasis added).  When this issue came up for hearing, Plaintiffs confirmed that RFP 30 was resolved.  Hearing Tr. at 4 (Court: "And I take it from reading the opposition in the reply that docket request 17 and 30 are completely resolved. Is that correct?  MR. ZEBRAK: Yes, Your Honor, that's correct.").  Accordingly, the Court declined to order any further productions on this issue.

The Court should decline to reconsider issues that have previously been briefed and agreed to by the parties, as holding otherwise would stifle compromise if a party could simply renege later on such agreements.  Plaintiffs' decision *not* to move for an expanded range of materials beyond "documents sufficient to show," and affirmation to the Court that "documents sufficient to show" was sufficient for RFP 30, resolves the motion with respect to this request and the Court need not revisit it.  Even were it otherwise, Plaintiffs' proposal that Shopify expand its search to hundreds of custodians, for cumulative documents of limited relevance at best, should be rejected as disproportionate under Rule 26 of the Federal Rules of Civil Procedure.

2.     ***Plaintiffs' Requests Are Overbroad, Irrelevant, and Disproportionate.***

Despite previously agreeing to the scope of Shopify's response to RFP 30, Plaintiffs once again attempt to shift the goalposts, all while unironically asserting Shopify should be punished

for allegedly failing to substantially complete production.  This time, Plaintiffs use RFP No. 30 to justify their new request for all communications with Shopify's third-party financial partners, arguing that they are entitled to such communications because ███████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████   *See* Mot. at 12-14.  But Plaintiffs' request that Shopify undertake the burden of searching for third-party communications across hundreds of otherwise wholly irrelevant custodians that may have triggered notices and communications *that have already been produced to Plaintiffs* is overbroad, irrelevant, disproportionate, and should be denied.

RFP 30 originally sought "[a]ll documents concerning any warnings, ratings, risk assessments, flags, or other fraud, security or infringement risk concerning any Accused Shopify Merchant."  Shopify's Resps. & Objs. to Pls.' First Set of Reqs. for Produc., Dkt. 56-1 at 45-46. Shopify already agreed to produce "non-privileged information from its ticketing system for the tickets associated with each Accused Shopify Merchant . . . regardless of whether the ticket is associated with Plaintiffs' Infringement Notice of a third party's Infringement Notice, which will include information *sufficient to show* warnings, ratings, risk assessments, or flags for the Accused Shopify Merchants."  *Id.* (emphasis added).  And that is consistent with this Court's order.  *See* Hearing Tr. at 15-16 (noting requests for "all documents" on a given subject are, generally speaking, "facially overbroad" and disproportionate).  Plaintiffs even conceded that this was sufficient.  *Supra* at 20-21.  Elsewhere in response to *other* requests, Shopify also agreed to produce all communications *with* Alleged Merchants, regardless of subject matter, and all internal communications *about* the Alleged Merchants related to alleged notices of infringement.  As Plaintiffs acknowledge, Shopify *already produced* all communications *with* the Alleged

Merchants, which included "warnings, ratings, risk assessments or flags."  *See* Mot. at 12 ("Shopify has produced communications with the Pirate Merchants about Shopify's financial partners' concerns").  Since Shopify has already produced the very documents both parties agreed were responsive to this RFP, no further inquiry is necessary here, much less a deep dive into the documents of hundreds of additional custodians from irrelevant departments.

Not satisfied, however, and disregarding the Court's admonition, Plaintiffs argue that because a half-dozen of the documents Shopify produced reference additional communications with third-party financial partners, Shopify must locate and produce "all" such communications *with* those third parties.  Mot. at 13-14.  Such a request is nothing more than a roving fishing expedition, and Plaintiffs should not be permitted to use the motion to compel process to impermissibly expand the scope of discovery to include communications it did not seek in the first instance.  In any event, such communications are—at best—minimally relevant to this case.  As can be seen from Plaintiffs' exhibits themselves, Shopify's communications with its financial partners do not concern actual alleged acts of infringement by Shopify merchants.  Rather, the exhibits show that—for a handful of the Accused Merchants— ███████████████ ███████████████████████████████████████████ ████████████████████████████████ something quite different from a verified infringement complaint, such as would be found in a DMCA notice.  Moreover, Plaintiffs do not allege this was a widespread or commonplace phenomenon.  And, significantly, Shopify has already produced evidence showing each instance where such a notice was received, as Shopify produced the related documentation and the following communications with each Accused Merchant.  *See, e.g.*, Exs. 8-13.  Despite Shopify having already produced *all* communications *with* the Alleged Merchants, Plaintiffs' Motion cites only a handful of examples

23

of ████████████████████████████████████████████████████████████

████████   And Shopify has *already* produced documents showing ███████████████████

██████████ the flags raised, the associated merchants, and Shopify's response.  *See* Exs. 8-13;

*see also* Ex. 6, J. Stebbins Bina 22.05.17 email at 6-7.  There is nothing more Plaintiffs say they

need that they do not already have.

Yet Plaintiffs demand that Shopify go further and search *all* communications with its

financial partners to attempt to locate underlying communications that triggered the notices

*already* produced.  For the communications Plaintiffs point to, if such underlying communications

distinct from what Plaintiffs possess even exist, the documents are not Shopify's to begin with,

and thus do not bear on Shopify's knowledge, process, analysis, or conduct beyond what is already

apparent in the documents already produced to Plaintiffs.  For any others, this demand would place

a tremendous burden on Shopify, without any corresponding likely benefit to Plaintiffs.  *See* Fed.

R. Civ. P. 26.  This is because Plaintiffs' requests cannot be satisfied through a cabined review but

would require a large-scale search across the entire company for any mentions of the Alleged

Merchants.  Gallant Decl. ¶¶ 9, 11-12.  These mentions could be found in any number of

individuals' emails or other documents in any number of departments.  *Id.*

Shopify has already produced thousands of responsive documents from the the Intellectual

Property team—the department responsible for investigating and responding to notices of alleged

infringement—*and* from the larger Trust & Safety department in which that team sits, including

all relevant communications with the Alleged Merchants about infringement.  But many other

Shopify departments—departments *not* involved in responding to infringement notices—regularly

communicate with financial partners.  Gallant Decl. ¶¶ 9, 11-12.  It should go without saying that

an ecommerce company with millions of businesses on its platform has an extremely large number

of communications with ███████████████████████, next to none of which pertain to this action. In order to attempt to locate "all" the communications Plaintiffs demand, Shopify would potentially need to collect documents from hundreds of new custodians across numerous other departments. *Id.* Reviewing such communications would potentially involve extensive collection and review of Slack, email, text messages, and other forms of communication, for a three or four-year period, from these hundreds of additional employees in multiple additional Shopify departments, none of whom are involved in application of its DMCA and trademark policies at all. *Id.* This review is likely to result in very few, if any, additional responsive documents, that will— again, *at best*—███████████████████████████████████ ████████████████████████████ But it is certain to impose significant "time and expense" for document collection and production, as well as substantial "cost[s] of attorney review." *Brink's Co.*, 2021 WL 5083335, at *13. Plaintiffs already possess information sufficient to show the merchants who were flagged and all actions Shopify took in response. They have even already agreed that is sufficient. Shopify has searched and produced material from the team responsible for actioning its DMCA and trademark policies, and its broader parent team. The Court should decline Plaintiffs' demand to boil the ocean for cumulative, diminishing returns.

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter an Order denying Plaintiffs' Motion to Compel in its entirety.

Dated:  May 25, 2022

/s/ *Laura E. Bladow*

Laura E. Bladow (VSB No. 93395)
David L. Johnson (VSB No. 89289)
Sarang Vijay Damle (*pro hac vice*)
Sarah A. Tomkowiak (*pro hac vice*)
Elana Nightingale Dawson (*pro hac vice*)

25

Nicholas L. Schlossman (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax
Email: david.johnson@lw.com
Email: sy.damle@lw.com
Email: sarah.tomkowiak@lw.com
Email: elana.nightingaledawson@lw.com
Email: nicholas.schlossman@lw.com
Email: laura.bladow@lw.com

Andrew M. Gass (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax
Email: andrew.gass@lw.com
Email: joe.wetzel@lw.com

Allison L. Stillman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200 / (212) 751-4864 Fax
Email: alli.stillman@lw.com

Jessica Stebbins Bina (*pro hac vice*)
Elizabeth A. Greenman (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5000 / (424) 653-5501 Fax
Email: jessica.stebbinsbina@lw.com
Email: elizabeth.greenman@lw.com

Melanie J. Grindle (*pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-3990 / Fax (858) 523-5450
Email: melanie.grindle@lw.com

*Attorneys for Defendant Shopify, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 25, 2022, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

<u>*/s/ Laura E. Bladow*</u>

Laura E. Bladow (VSB No. 93395)

27